NAGASHIMA & HASHIMOTO
MARC R. LABGOLD (*pro hac vice*)
mlabgold@labgoldlaw.com
PATRICK J. HOEFFNER (*pro hac vice*)
phoeffner@labgoldlaw.com
12005 Sunrise Valley Drive, Suite 203
Reston, Virginia 20191
Telephone: 877-401-8855
Facsimile:  877-401-8855

NAGASHIMA & HASHIMOTO
TAKAAKI NAGASHIMA (*pro hac vice*)
nagashima@nandhlaw.com
Hirakawa-cho, KS Bldg., 2nd Floor
2-4-14, Hirakawa-cho, Chiyoda-ku
Tokyo 102-0098 Japan
Telephone: +81-3-3239-5750
Facsimile:  +81-3-3239-8538

SHAW KELLER LLP
JOHN W. SHAW (*pro hac vice*)
jshaw@shawkeller.com
JEFFREY CASTELLANO (*pro hac vice*)
jcastellano@shawkeller.com
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
Telephone: 302-298-0700

SEILER EPSTEIN ZIEGLER &
  APPLEGATE LLP
Mark W. Epstein (SBN 143202)
George M. Lee (SBN 172982)
gml@sezalaw.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415-979-0500
Facsimile:  415-979-0511

*Attorneys for Plaintiffs Enplas Display*
*Device Corp. and Enplas (U.S.A.), Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENPLAS DISPLAY DEVICE CORPORATION; ENPLAS TECH SOLUTIONS, INC.; and ENPLAS (U.S.A.), INC.,<br><br>          Plaintiffs/Counterclaim<br>          Defendants,<br><br>     v.<br><br>SEOUL SEMICONDUCTOR CO., LTD;<br><br>          Defendant/Counterclaim<br>          Plaintiff. | CASE NO. 3:13-CV-05038-NC<br><br><br>**EDD'S MOTION TO AMEND TO ADD A DEFENSE OF INEQUITABLE CONDUCT**<br><br>**HEARING DATE AND TIME:**<br><br>**SEPTEMBER 23, 2015 AT 1 P.M.** |

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

I. Introduction ................................................................................................ 1

II. Statement of the Issues to be Decided ..................................................... 3

III. Statement of Facts ................................................................................... 4

    A. U.S. Patent 6,007,209 ("the '209 Patent") ................................... 4

    B. Inventor Dr. David Pelka ............................................................... 5

    C. U.S. Patent No. 5,684,354 ("the Gleckman '354 Patent") ............. 6

    D. The Prosecution of the '209 Patent .............................................. 7

    E. Dr. Pelka Engaged In Inequitable Conduct ................................... 8

IV. Argument ................................................................................................ 13

    A. Legal Standards ............................................................................. 13

        1. Good Cause under Rule 16(b)(4) – Diligence ............................. 13

        2. Amendment under Rule 15(a)(2) - Liberal Amendment Absent 16
           Undue Delay, Bad Faith, Dilatory Motive, Prejudice or Futility16 ............. 14

    B. Amendment Is Proper Under Rule 15 and Rule 16 ........................... 16

        1. EDD Was Diligent and Has Not Delayed in Seeking to Amend ................. 16

        2. EDD Has No Dilatory Motive ................................................ 17

        3. SSC Will Suffer No Prejudice If Amendment Is Permitted ......................... 18

        4. The Amendment Is Not Futile ................................................ 19

V. Conclusion .............................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Case**                                                                                                              **Page(s)**

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,*
989 F. Supp. 1237 (N.D. Cal. 1997) ............................................................................ 16

*Ameranth, Inc. v. Menusoft Sys. Corp.,*
No. 2:07-CV-271, 2011 WL 2080248 (E.D. Tex. May 26, 2011) ............................................ 11

*Chudacoff v. Univ. Med. Ctr. of S. Nevada,*
649 F.3d 1143 (9th Cir. 2011) .................................................................................. 15

*Coleman v. Quaker Oats Co.,*
232 F.3d 1271 (9th Cir. 2000) .................................................................................. 13

*Cypress Semiconductor Corp. v. GSI Tech., Inc.,*
No. 13-CV-02013-JST, 2014 WL 988915 (N.D. Cal. Mar. 10, 2014) ...................................... 22

*Eli Lilly & Co. v. Barr Labs., Inc.,*
251 F.3d 955 (Fed. Cir. 2001) .................................................................................. 12

*Eminence Capital LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003) .................................................................................. 15

*Exergen Corp. v. Wal–Mart Stores, Inc.,*
575 F.3d 1312 (Fed. Cir. 2009) .......................................................................... 15, 16, 22

*Foman v. Davis,*
371 U.S. 178 (1962) ............................................................................................. 15

*Fox Indus., Inc. v. Structural Pres. Sys., Inc.,*
922 F.2d 801 (Fed. Cir. 1990) .................................................................................. 11

*Fujitsu Ltd. v. Nanya Tech. Corp.,*
No. C 06-6613-CW, 2008 WL 962146 (N.D. Cal. Apr. 8, 2008) ............................................ 15

*Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.,*
No. C 06-7477 SI, 2008 WL 2622794 (N.D. Cal. July 1, 2008) ............................................ 22

*Johnson v. Mammoth Recreations, Inc.,*
975 F.2d 604 (9th Cir. 1992) ................................................................................... 14

*J. P. Stevens & Co. v. Lex Tex Ltd.,*
747 F.2d 1553 (Fed. Cir. 1984) ................................................................................. 19

*Morongo Band of Mission Indians v. Rose,*
893 F.2d 1074 (9th Cir.1990) ................................................................................... 15

*Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.,*
No. C 04-04675 MHP, 2006 WL 3826726 (N.D. Cal. Dec. 27, 2006) ...................................... 17

*Senza-Gel Corp. v. Seiffhart,*
803 F.2d 661 (Fed. Cir. 1986) .................................................................................. 15

*Sierra Club v. Union Oil of California*,
813 F.2d 1480 (9th Cir. 1987)..................................................................... 18

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011)................................................................... 15

*Trimble Navigation Ltd. v. RHS, Inc.*,
No. C 03-1604 PJH, 2007 WL 2727164 (N.D. Cal. Sept. 17, 2007)............... 14, 15, 17

*United States v. Webb*,
655 F.2d 977 (9th Cir.1981)........................................................................ 15

**Statutes**

35 U.S.C. § 102 ........................................................................................6, 18

35 U.S.C. § 103 ......................................................................................11, 18

**Other Authorities**

Fᴇᴅ. R. Cɪᴠ. P. 15(a)(2) ..........................................................................1, 4, 14

Fᴇᴅ. R. Cɪᴠ. P. 16(b)(4)..........................................................................1, 3, 13

2 Mᴏᴏʀᴇ's Fᴇᴅᴇʀᴀʟ Pʀᴀᴄᴛɪᴄᴇ § 9.03[1][b] (2015) ........................................ 18

3 Mᴏᴏʀᴇ's Fᴇᴅᴇʀᴀʟ Pʀᴀᴄᴛɪᴄᴇ § 16.14[1][c] (2015) ...................................... 14

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on September 23, 2015 at 1 p.m., before the Honorable Nathanael Cousins, United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 7, 4th Floor, Plaintiff Enplas Display Device Corporation ("EDD") will, and hereby does, move this Court pursuant to Fed. R. Civ. P. 16(b)(4) and Fed. R. Civ. P. 15(a)(2) for leave to file a Second Amended Answer to SSC's Counterclaims[1] (Dkt. No. 11) to add a defense of inequitable conduct in connection with the prosecution of U.S. Patent No. 6,007,209 ("the '209 Patent").

**POINTS AND AUTHORITIES**

**I.    Introduction**

This litigation arose when counsel for SSC sent a letter, dated October 16, 2013, to EDD (and others) asserting infringement of two patents, including the '209 Patent. (Dkt. No. 1, Exh. C).   In response, EDD initiated this action. In its Counterclaim, SSC again confirmed its accusation of infringement against EDD. (Dkt. No. 11, Counterclaim ¶¶ 5, 8, 35-64). At the time EDD answered SSC's counterclaims, EDD had not discovered facts necessary to support a *prima facie* defense of inequitable conduct.  To the contrary, EDD only just discovered the requisite facts during the deposition of the sole named inventor of the '209 Patent – Dr. David Pelka ("Dr. Pelka").   Since the deposition, EDD has acted quickly to (a) expedite the delivery of the deposition transcript, (b) assemble the requisite facts and confirm that those facts provide a good faith basis for asserting the defense of inequitable conduct, and (c) meet and confer with SSC's counsel concerning the motion and confidentiality concerns SSC raised concerning Dr. Pelka's testimony.

EDD submits that amendment is proper in this case.  Although EDD sought Dr. Pelka's deposition long before the discovery cutoff, he was not available for deposition during the fact

---

[1]   EDD's proposed Second Amended Answer to SSC's Counterclaims ("SAA") is attached as Exhibit A to the Declaration of Jeffrey T. Castellano in Support of EDD's Motion to Amend.  All citations to exhibits in this motion, unless otherwise noted, are citations to exhibits to the fact Castellano Declaration.

1    discovery period due to his recovery from surgery.  Enplas took his deposition on the earliest date

2    offered by SSC's counsel, July 29, 2015.

3         Dr. Pelka (the sole named inventor of the '209 Patent) admitted at his recent deposition

4    that during the prosecution of the '209 Patent, he was aware of material prior art that was not

5    disclosed to the Patent Office, knew it was highly material to the prosecution of the '209 Patent,

6    and was in the unique situation of deciding whether to disclose that prior art to the Patent Office.

7    The prior art in question is a patent with named inventor Philip Gleckman, U.S. Patent No.

8    5,684,354 ("the Gleckman '354 Patent").  Dr. Gleckman was an employee of the small company

9    Dr. Pelka founded – TIR Technologies, Inc. – and worked under the supervision of Dr. Pelka.

10   The Gleckman application was also assigned to Dr. Pelka's company, where Dr. Pelka reviewed

11   all potential patent applications and was the final authority on which inventions would be sent to

12   attorneys to pursue patenting.

13        Dr. Pelka knew that Figures 3 and 4 of his '209 Patent were derived from Figures 12 and

14   13 of the Gleckman '354 Patent.  He confirmed that the only material difference between the two

15   sets of figures was the addition of certain light sources in the '209 Patent figures (elements 13 in

16   Figures 3 and 4).  Yet despite that knowledge, Dr. Pelka never brought the Gleckman '354 Patent

17   to the attention of the Patent Office.  Dr. Pelka also acknowledged that claim 16 of the Gleckman

18   '354 Patent and asserted claim 20 of the '209 Patent are nearly identical.  In addition. Dr. Pelka

19   admitted that the Gleckman '354 Patent discloses embodiments that would anticipate, or at least

20   render obvious, the asserted claim of the '209 Patent.

21        Despite his knowledge of the Gleckman '354 Patent and his recognition of its materiality,

22   he offered no plausible explanation for his failure to disclose the Gleckman '354 Patent to the

23   Patent Office.  He had multiple opportunities to do so, and in fact submitted a less-material

24   Gleckman patent related to the '354 Patent.  The reasonable inference from these facts is that Dr.

25   Pelka withheld material prior art with the intent to deceive the Patent Office.

26        EDD has not unduly delayed its motion.  EDD moved as diligently and quickly as it could

27   to present this motion to the Court after it obtained Dr. Pelka's critical testimony on July 29,

28   2015, obtained the certified copy of the transcript on August 5, 2015, and completed the requisite

2

meet and confer process on August 11, 2015.  EDD's motivation in bringing this motion is preventing the enforcement of a patent obtained by fraud, not delay of this case; EDD is not requesting, nor does it expect to request, any extension of the Court's scheduled dates in connection with this motion.

There is no prejudice to SSC, given that expert reports have not yet been served and trial is more than seven months away.  Neither EDD nor SSC require any additional discovery, and EDD is not requesting any.  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  As a result, SSC and its counsel were likely aware of the facts underlying this motion well before EDD learned of them just two weeks ago.  If anything, EDD will be prejudiced if SSC continues to assert a fraudulently obtained patent in this litigation.

Finally, EDD's amendment is not futile: each of the elements of inequitable conduct has been adequately pleaded, including Dr. Pelka's knowledge of material prior art that anticipates or at least renders obvious claim 20 of the '209 Patent, and his failure to disclose it to the Patent Office with the intent of securing unpatentably broad claims.[2]

In light of these facts, as set forth in more detail below, EDD respectfully submits that it has met the good cause standard for modification of the scheduling order under Rule 16(b)(4) and the liberal standard for amendment under Rule 15(a)(2).

## II.     Statement of the Issues to be Decided

1. Whether EDD has shown diligence in seeking to amend its Answer to SSC's Counterclaim to add an additional affirmative defense beyond those it sought in its declaratory judgment complaint and thus has established good cause to amend the scheduling order under Fed. R. Civ. P. 16(b)(4).

---

[2]     In addition, the withholding of the Gleckman '354 Patent resulted in an illegal patent extension.  Claim 20 of the '209 Patent would have been rejected for obviousness-type double patenting had the withheld prior art (and in particular its claim 16) been brought to the attention of the Patent Office Examiner.  At a minimum, the '209 Patent would have been subject to the same terminal disclaimer as the Gleckman '354 Patent and would have expired on October 5, 2013.  (SAA ¶ 119; Exh. E at 060-61, 69).

2. Whether EDD has satisfied the liberal standard for amendment of its pleadings under Fed. R. Civ. P. 15(a)(2).

**III.** **Statement of Facts**

**A.** **U.S. Patent 6,007,209 ("the '209 Patent")**

The '209 Patent issued on December 28, 1999 from U.S. Patent Application 08/820,097 (the '097 Application), entitled "Light Source for Backlighting," which was filed on March 19, 1997. (Exhibit B). SSC is the current assignee of the '209 Patent. (Dkt. No. 11, Counterclaim ¶ 21). Claim 20 is the only claim that continues to be asserted by SSC in this litigation. (SAA ¶ 78; Exh. I). There were no rejections of any claims during prosecution, and claim 20 was not amended by either the applicant or the Examiner during prosecution. (SAA ¶¶ 76-77; Exhibit C at EDD13-78).

The '209 Patent is directed to an apparatus and methods for backlighting a display, such as an LCD. (SAA ¶ 79; Exh. B at 1:44-2:62). In particular, the '209 Patent provides that the invention encompasses "a method of backlighting a display panel comprising the step of producing illumination from a substantially lambertian light source having a cavity with internal side walls, an internal bottom wall, and an aperture. The 'producing step' of the claimed method comprises the step of directing light rays emitted by plural light sources mounted on the cavity bottom surface and around the perimeter of the aperture into the cavity such that the light exiting the aperture is substantially uniform in intensity and color." (SAA ¶ 80; Exh. B at 2:44-52).

The subject method is claimed in claim 20 of the '209 Patent, which reads:

> 20. A method of backlighting a display panel, comprising:
>
> producing illumination from a substantially lambertian light source comprising a cavity with internal side walls, an internal bottom wall, and an aperture, said step of producing illumination comprising the step of directing light rays emitted by plural light sources mounted on said internal bottom wall and around the perimeter of the aperture into the cavity such that the light exiting the aperture is substantially uniform in intensity and color;
>
> using a diffuser to diffuse light from said substantially lambertian light source;

4

using a brightness enhancing film to concentrate the diffused light into a predetermined angular range without significantly reducing the uniformity of the diffused light; and

directing the concentrated, diffused light onto said display panel.

(SAA ¶ 81; Exh. B at 9:18-10:8).

### B.    Inventor Dr. David Pelka

David Pelka is the sole named inventor of the '209 Patent.  (SAA ¶ 69; Exh. B; Exh. F (Pelka Tr.) at 10:18-11:8, 19:21-25)  Dr. Pelka has a Master's degree and a Ph.D. in Physics from the University of California.  (SAA ¶ 70; Exh. G at SSC1071; Exh. F (Pelka Tr.) at 8:22-25).  After he obtained his Ph.D., Dr. Pelka founded several companies in the areas of optics, LEDs, and LCD backlighting technologies.  (SAA ¶ 71; Exh. G at SSC1071; Exh. F (Pelka Tr.) at 9:7-25).  In particular, he founded TIR Technologies, Inc. in 1992 to "pursue some of [his] patents related to LED lighting systems and LCD backlights" and technologies using total internal reflection ("TIR"). (SAA ¶ 71; Exh. G at SSC1072; Exh. F (Pelka Tr.) at 9:23-10:17).  Dr. Pelka assigned his interest in the '097 Application to TIR Technologies, Inc. on March 17, 1997.  (SAA ¶ 74; Exh. H at SSC428).

In early April 2015, nearly three months before the end of the discovery period, EDD sought the deposition of Dr. Pelka.[3]  (Exh. J).  After offering dates in late May for Dr. Pelka's deposition, which EDD's counsel accepted, counsel for SSC indicated that Dr. Pelka would not be available on those dates due to his recovery from back surgery.  (Exh. K).  In early July, counsel for SSC informed EDD that Dr. Pelka was well enough for a deposition, and the deposition was thereafter scheduled for July 29, 2015.  (Exh. L).

At his deposition, Dr. Pelka revealed that he was the person responsible for patent application filings within TIR Technologies.  (SAA ¶ 86; Exh. F (Pelka Tr.) at 13:25-14:8).  This was a manageable task because TIR Technologies was a small company with approximately 20 employees at its peak and three owners:  Dr. Pelka and his two co-founders.  (SAA ¶ 72; Exh. F (Pelka Tr.) at 10:7-10, 13:16-24).  Dr. Pelka was in a position to have a complete understanding of all of the patent applications filed on behalf of TIR Technologies, explaining he was

---

[3]    Although Dr. Pelka is a third party and not "employed" by SSC, he was identified in SSC's initial disclosures as a witness that should be contacted through SSC's counsel.  (Exh. M at 3).

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

responsible for "deciding whether an idea was good enough to pursue a patent." (SAA ¶ 87; Exh. F (Pelka Tr.) at 14:12-21). For both his own inventions and the inventions of "other people in the company," Dr. Pelka "made the decision as to whether [the company] would make an investment of going to a patent attorney, filing a provisional application or a full application, depending on [his] opinion as to the value of the technology that was involved." (SAA ¶ 88; Exh. F (Pelka Tr.) at 14:12-15:2). He would also meet with the company's outside patent attorneys – Knobbe, Martens, Olson and Bear ("Knobbe") – in order to explain the basic ideas and concepts that TIR Technologies was seeking to patent. (SAA ¶ 89; Exh. F (Pelka Tr.) at 15:3-8). He testified that he was familiar with the patent prosecution process. (SAA ¶ 90; Exh. F (Pelka Tr.) at 15:9-16).

### C.     U.S. Patent No. 5,684,354 ("the Gleckman '354 Patent")

U.S. Patent No. 5,684,354 ("Gleckman") issued on November 4, 1997 from a continuation-in-part of U.S. Application 131,659, filed October 5, 1993. (SAA ¶ 97; Exh. D; Exh. F (Pelka Tr.) at 30:13-19).

The Gleckman '354 Patent issued in November 1997 – more than two years before the '209 patent issued on December 28, 1999. The Gleckman '354 Patent is prior art to the '209 Patent under at least pre-AIA 35 U.S.C. § 102(e) (precluding patent where the invention was described in "a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent . . . .").

The sole named inventor of the Gleckman '354 Patent, Philip L. Gleckman, was an employee of Dr. Pelka's TIR Technologies, and his application and the resulting patent were assigned to TIR Technologies. (SAA ¶¶ 102-103; Exh. F (Pelka Tr.) at 27:21-24; Exh. D; Exh. N).

Like the '209 Patent, the Gleckman '354 Patent is directed to an apparatus and method for backlighting a display such as an LCD panel. (SAA ¶ 116; Exh. D at 1:45-2:60). Claim 16 of the Gleckman '354 Patent reads:

> 16. A method of backlighting a display panel, comprising:
>
> producing illumination from a substantially lambertian light source comprising a cavity with internal walls and an aperture, said step of producing illumination comprising the step of directing light rays

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

from the perimeter of the aperture into the cavity such that the light exiting the aperture is substantially uniform in intensity and color;

using a diffuser to diffuse light from said substantially lambertian light source;

using a brightness enhancing film to concentrate the diffused light into a predetermined angular range without significantly reducing the uniformity of the diffused light; and

directing the concentrated, diffused light onto said display panel.

(SAA ¶ 120; Exh. D at 10:24-40).  Claim 16 of the Gleckman '354 Patent was one of the originally filed claims and was not amended during prosecution. (SAA ¶ 117; *Compare* Exh. D at 10:24-40 *with* Exh. E at 023).

### D.    The Prosecution of the '209 Patent

On March 17, 1997, in connection with the prosecution of the '209 Patent, Dr. Pelka submitted a signed declaration to the U.S. Patent Office in which he swore under penalty of perjury that, *inter alia*:

(a)    He was the "original, first and sole inventor of the subject matter which is claimed and for which a patent is sought in the invention entitled "LIGHT SOURCE FOR BACKLIGHTING . . . ." (SAA ¶ 91; Exh. C at EDD34);

(b)    He had "reviewed and underst[ood] the contents of the above identified specification, including the claims . . . ." (SAA ¶ 92; Exh. C at EDD34; Exh. F (Pelka Tr.) at 46:15-19); and

(c)    He "acknowledge[d] the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56; . . ." (SAA ¶ 93; Exh. C at EDD34).

At his deposition in this case, Dr. Pelka again confirmed his understanding that he was required to provide to the patent examiner all material prior art of which he was aware during prosecution of his patent applications.  (SAA ¶ 94; Exh. F (Pelka Tr.) at 20:1-15, 43:21-44:16). As part of his responsibilities for managing the patent portfolio at TIR Technologies, Dr. Pelka testified he would "attend many scientific conferences and look at various patents and things. And if my invention in some way I thought related to those references, I would make that known

1   to the -- whoever was prosecuting the patent on behalf of myself at that time."  (SAA ¶ 95; Exh. F

2   (Pelka Tr.) at 20:16-21:9).

3          During the prosecution of the '209 Patent, at least three Information Disclosure

4   Statements (IDS's) were filed with the Patent Office, informing the examiner of prior art the

5   applicant considers relevant.  (SAA ¶¶ 98-99; Exh. C at EDD45-50, EDD52-55, EDD56-58).

6   Although two of the IDS's were filed after the Gleckman '354 Patent issued as a patent in

7   November of 1997, and included other patents that issued during the prosecution of the '209

8   Patent, the Gleckman '354 Patent was never disclosed.  (*Id.; see also* Exhibit F (Pelka Tr.) at

9   37:12-41:12).

10         None of the prior art submitted during the prosecution of the '209 Patent is cumulative of

11   the disclosures of the Gleckman '354 Patent.  The Gleckman '354 Patent is unlike any of the

12   disclosed prior art in that it discloses method of backlighting using plural light sources mounted

13   around the perimeter of a cavity to form a lambertian light source, and it does so using an

14   apparatus that is near-identical to the one described and depicted in the '209 Patent.  Moreover, it

15   is the only prior art that claims the same exact method as claim 20 of the '209 Patent.

### E.   Dr. Pelka Engaged In Inequitable Conduct

17         Given his role in the oversight and decision-making with respect to the patent filings at

18   TIR Technologies, a reasonable fact-finder could conclude that Dr. Pelka would have been aware

19   of the Gleckman '354 Patent.  There is no need for supposition, however, as his testimony

20   revealed his direct knowledge.  When he was being cross examined with respect to Figures 3 and

21   4 of the '209 Patent (reproduced below), he volunteered they were:

22              . . . taken from a prior patent, if I recall correctly.  I think the
                attorneys were being cost effective.  And as I recall, these figures
23              were similar to ones taken from a Gleckman patent.

24   (SAA ¶ 84; Exh. F (Pelka Tr.) at 26:24-27:6).  Dr. Pelka's recollection and referral to the

25   "Gleckman patent" were unprompted, and demonstrate his recognition of the materiality of the

26   "Gleckman patent" to the claims of the '209 Patent.  Dr. Pelka then confirmed his reference to a

27   "Gleckman patent" was a reference to the Gleckman '354 Patent. (SAA ¶¶ 110-111; Exh. F

28   (Pelka Tr.) at 27:7-20).

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

The relevant figures from the Gleckman '354 Patent and the '209 patent are shown below:



Gleckman '354 Patent

Pelka '209 Patent

The overlap between the Gleckman '354 Patent and the '209 Patent does not end at the figures, however.  The only claim currently asserted from the '209 Patent–claim 20–is a nearly word-for-word reproduction of claim 16 of the issued Gleckman '354 Patent (the red underlined text below indicates the semantic differences).

| 16. A method of backlighting a display panel, comprising: | 20. A method of backlighting a display panel, comprising: |
|---|---|
| producing illumination from a substantially lambertian light source comprising | producing illumination from a substantially lambertian light source comprising |
| a cavity with internal walls and an aperture | a cavity with internal side walls, an internal bottom wall, and an aperture |
| said step of producing illumination comprising the step of directing light rays from the perimeter of the aperture into the cavity | Said step of producing illumination comprising the step of directing light rays emitted by plural light sources mounted on said internal bottom wall and around the perimeter of the aperture into the cavity |
| such that the light exiting the aperture is substantially uniform in intensity and color; | such that the light exiting the aperture is substantially uniform in intensity and color; |
| using a diffuser to diffuse light from said substantially lambertian light source; | using a diffuser to diffuse light from said substantially lambertian light source; |
| using a brightness enhancing film to concentrate the diffused light into a predetermined angular range without significantly reducing the uniformity of the | using a brightness enhancing film to concentrate the diffused light into a predetermined angular range without significantly reducing the uniformity of the |

| diffused light; and | diffused light; and |
|---|---|
| directing the concentrated, diffused light onto said display panel. | directing the concentrated, diffused light onto said display panel. |

Dr. Pelka acknowledged that he would review the claims of patent applications by inventors at TIR Technologies. (SAA ¶ 92; Exh. F (Pelka Tr.) at 46:15-24). At his deposition, he confirmed that he understood all of the elements of claim 20 of the '209 Patent, consistent with the declaration he submitted to the Patent Office. (SAA ¶ 122; Exh. F (Pelka Tr.) at 49:6-54:13; Exh. C at EDD34). Nonetheless, despite the nearly identical wording of these claims, Dr. Pelka did not disclose the existence of the Gleckman '354 Patent to the Patent Office. (SAA ¶ 124; Exh. F (Pelka Tr.) at 32:10-21, 42:15-23).

At his deposition, Dr. Pelka confirmed the materiality of the Gleckman `354 Patent (and in particular, claim 16) to claim 20 of the '209 Patent. (SAA ¶ 123; Exh. F (Pelka Tr.) at 55:11-59:11). With respect to the first textual difference in the table above–*i.e.*, the clause pertaining to the cavity walls–Dr. Pelka confirmed that the Gleckman '354 Patent discloses a cavity having "internal side walls, an internal bottom wall and an aperture." (SAA ¶¶ 126-127; Exh. F (Pelka Tr.) at 51:14-52:7, 57:9-58:6). Thus, Dr. Pelka confirmed that the "internal walls" of claim 16 of the Gleckman '354 Patent would read on the "internal side walls, an internal bottom wall" of claim 20 of the '209 Patent. (*Id.*)

With respect to the second textual difference–*i.e.*, the clause pertaining to the step of producing illumination–Dr. Pelka explained that the term "perimeter" just refers to "the light sources that are along the edges of the cavity," and does not require the light sources be mounted on any particular surface (top, side or bottom). (SAA ¶ 128; Exh. F (Pelka Tr.) at 24:15-23). In particular, Dr. Pelka stated that the lights should simply be "in the outermost region of the cavity" and could be mounted on the side or bottom of the cavity and still be around the perimeter. (SAA ¶ 128; Exh. F (Pelka Tr.) at 26:9-27:1, 59:6-22). This arrangement would be covered by claim 20, which requires that the lights are "mounted on said internal bottom wall and around the perimeter of the aperture."

Dr. Pelka's testimony is consistent with the plain meaning of the claims of the Gleckman '354 Patent and the '209 Patent, both of which claim a method of backlighting using an apparatus

1  with lights around the perimeter of the aperture on the bottom surface of the cavity.  The

2  Gleckman '354 Patent therefore anticipates claim 20 of the '209 Patent and, as such, is *per se*

3  material to its patentability.  *See Fox Indus., Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d 801, 804

4  (Fed. Cir. 1990) ("A finding that a withheld reference anticipates a claim in a patent satisfies the

5  most stringent standard of materiality."); *Ameranth, Inc. v. Menusoft Sys. Corp.*, No. 2:07-CV-

6  271, 2011 WL 2080248, at *2 (E.D. Tex. May 26, 2011) ("Thus, considering that the jury found

7  the claims to be invalid both as anticipated by the prior art and for obviousness, the court

8  concludes that the Withheld References meet the but-for materiality standard.").

9     Dr. Pelka testified that the Gleckman '354 Patent differs from the '209 Patent in that the

10  '209 Patent discloses baffles on bottom-mounted lights; in particular, he asserted that one cannot

11  extrapolate from "a single source that's baffled to a multiplicity of sources located on the bottom

12  and claiming the baffles would be exactly the same.  And I disagree with that. And that's where

13  the difference in the two patents exactly reside[s]."  (SAA ¶ 131; Exh. F (Pelka Tr.) at 64:1-6).

14  But unlike the other claims of the '209 Patent, claim 20 does not contain a limitation requiring

15  baffles, shielding, or shielding elements.  (SAA ¶ 132; Exh. B at 9:16-10:8).  Thus, claim 20 of

16  the '209 Patent does not claim the point of novelty Dr. Pelka – the sole inventor – testified was

17  "where the difference in the two patents exactly reside[s]."  (SAA at ¶ 133).

18     Even if claim 20 of the '209 Patent required that the lights on the bottom surface be within

19  the aperture (which it does not) and be shielded (which it does not), the Gleckman '354 Patent

20  discloses such an embodiment, and thus would anticipate or at a minimum render obvious claim

21  20 of the '209 Patent.  (SAA ¶ 134; Exh. D at Figure 8, Figure 9 (depicting light source within the

22  aperture shielded by baffle 56)).




11

And even in the best light for SSC, and assuming *arguendo* that the Gleckman '354 Patent does not anticipate claim 20 of the '209 Patent, claim 16 of the Gleckman '354 Patent renders claim 20 both invalid as obvious under pre-AIA 35 U.S.C. § 103 and unenforceable under the judicially created doctrine of obviousness-type double patenting. *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967-68 (Fed. Cir. 2001) ("The judicially-created doctrine of obviousness-type double patenting cements that legislative limitation by prohibiting a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent. . . . A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim."). Thus, regardless of how claim 20 of the '209 Patent is interpreted, it is beyond reasonable dispute that the Gleckman '354 Patent is material to the patentability of at least claim 20.

Dr. Pelka's failure to disclose the Gleckman '354 Patent is even more glaring in light of the fact that another patent issued to inventor Philip Gleckman ("the Gleckman '197 Patent") was identified in an IDS during prosecution of the '209 Patent. The Gleckman '354 Patent issued from application 08/371,209, a continuation-in-part of earlier-filed application 08/131,659. (SAA ¶ 97; Exh. D). That earlier-filed patent application (08/131,659) issued as the Gleckman '197 Patent on August 8, 1995. [4]  (SAA ¶ 100; Exh. O). Dr. Pelka testified that he disclosed the Gleckman '197 Patent because he believed it was "sufficiently relevant that it should be brought to the examiner's attention." (SAA ¶ 107; Exh. F (Pelka Tr.) at 34:5-10). Dr. Pelka made that decision despite the fact that the '197 Patent is substantially less material to the patentability of the '209 Patent than the Gleckman '354 Patent. (SAA ¶ 97; Exh. F (Pelka Tr.) at 32:10-21)).

For example, the Gleckman '197 Patent **does not** contain, *inter alia*, the following information that was added to the Gleckman '354 Patent continuation-in-part application: (i) Figures 12 and 13 or any similar figure, (ii) plural light sources around the perimeter of the aperture that may be located on the bottom surface, or (iii) a claim directed to a method of

---

[4] Another Gleckman patent, U.S. Patent No. 5,892,325, issued on April 6, 1999, from a divisional application of the 08/371,209 application (which issued as the Gleckman `354 Patent). (Exh. V; SAA ¶ 101).

backlighting using such light sources.  (SAA ¶¶ 113-114; *compare* Exh. O at Figures 1-11, *with* Exh. D at Figures 12-13; *compare* Exh. O at 7:50-10:33, *with* Exh. D at 8:64-10:44).[5]  Thus, the Gleckman '354 Patent is not merely cumulative of the Gleckman '197 Patent, but instead is far more material prior art.

The only explanations Dr. Pelka offered for his failure to disclose the more material Gleckman '354 Patent were that it was "winding its way through the Patent Office and that's why it wasn't referenced" (Exh. F (Pelka Tr.) at 32:10-21) ██████████████████████████
████████████████████████████████████  These excuses, however, were readily dispelled during his cross examination.  Even after the Gleckman '354 Patent issued, Dr. Pelka did not make any effort to bring it to the examiner's attention.  (SAA ¶ 124; Exh. F (Pelka Tr.) at 42:15-23).  ███████████████████████████████████████████████████████████████
██████████████████████████████████  and that his long-time counsel continued to handle the prosecution after the issuance of the Gleckman '354 Patent.  (SAA ¶¶ 98-99; Exh. F (Pelka Tr.) at 36:5-41:22; Exh. C at EDD52-53).  Moreover, Dr. Pelka confirmed his role and involvement in patent prosecution did not change after the sale of the TIR Technologies to its successor-in-interest, Teledyne.  (SAA ¶ 96; Exh. F (Pelka Tr.) at 13:1-15).

**IV.**  **Argument**

**A.**  **Legal Standards**

**1.**  **Good Cause under Rule 16(b)(4) - Diligence**

Under Fed. R. Civ. P. 16(b)(4), a court-ordered schedule "may be modified only for good cause and with the judge's consent."  Because the deadline for amendment of pleadings has passed, EDD provides the following analysis under Rule 16(b)(4).  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (party seeking amendment after deadline must show good cause to modify schedule).

---

[5] Despite not having Figures 12 and 13 in common, the '354 Patent was required to be terminally disclaimed over the Gleckman '197 Patent.  (Exh. E at 060-61, 69).  Both the Gleckman '197 Patent and, because of the terminal disclaimer, the Gleckman '354 Patent, expired on October 5, 2013.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment of the scheduling order. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The standard for good cause is likely to be met "when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party."  3 MOORE'S FEDERAL PRACTICE § 16.14[1][c] (2015) "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."  Advisory committee notes, 1983 amendment of FED. R. CIV. P. 16.  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Johnson*, 975 F.2d at 609.

Courts have found good cause to amend under Rule 16(b) to add inequitable conduct defenses where the party seeking amendment uncovered evidence during discovery that was necessary to plead the defense.  *See, e.g., Trimble Navigation Ltd. v. RHS, Inc.*, No. C 03-1604 PJH, 2007 WL 2727164, at *10 (N.D. Cal. Sept. 17, 2007) (finding diligence and good cause where party filed motion to amend five months after learning of possible basis for inequitable conduct claim through discovery; "the court cannot say that defendants lacked diligence in pursuing amendment. . . . as defendants themselves noted at the hearing on this matter, they were guided by the knowledge that inequitable conduct based on fraud must be alleged with particularity, and it was defendants' desire to be sure of all necessary facts in as reasonable a time as possible, before seeking leave to amend."); *Fujitsu Ltd. v. Nanya Tech. Corp.*, No. C 06-6613-CW, 2008 WL 962146, at *1 (N.D. Cal. Apr. 8, 2008) ("The Court finds that good cause exists to permit amendment of Nanya's inequitable conduct defense because the new allegations are based at least in part on information that was obtained through recently completed discovery.").

### 2.      Amendment under Rule 15(a)(2) - Liberal Amendment Absent Undue Delay, Bad Faith, Dilatory Motive, Prejudice or Futility

Federal Rule of Civil Procedure 15(a)(2) states that courts presented with a motion to amend "should freely give leave when justice so requires."  The Supreme Court has held that

14

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

unless there is some reason to deny the request, such as "undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party, . . . futility of amendment, etc.,"  leave should be freely granted.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also United States v. Webb*, 655 F.2d 977, 980 (9th Cir.1981) (applying same factors).  In the Ninth Circuit, courts permit amendment with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The party opposing amendment bears the burden of showing why amendment should not be granted. *See Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986).

Applying this liberal standard, courts have permitted leave to amend the pleadings after the deadline for amendment or after discovery has closed. *See*, *e.g.*, *Trimble Navigation*, 2007 WL 2727164, at *11 (finding Rule 15 factors favored allowing amendment after deadline because "defendants have acted reasonably diligently in bringing their motion to amend, thereby obviating any concerns over unreasonable delay"); *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1152 (9th Cir. 2011) (overturning a denial of leave to amend after summary judgment was granted to correct procedural issue in pleading).

The relevant elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application failed to disclose material information and (2) the individual did so with a specific intent to deceive the PTO. *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009).  Where the inequitable conduct involves failure to disclose prior art to the examiner, the accused infringer must establish that but for that failure, the claim would not have issued. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011).

In order to adequately plead inequitable conduct under Fed. R. Civ. P. 9(b), "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328.  With regard to the knowledge and intent elements of inequitable conduct, Fed. R. Civ. P. 9(b) is satisfied where these elements

1   are pleaded generally as long as the pleading includes "sufficient allegations of underlying facts

2   from which a court may *reasonably infer* that a specific individual (1) knew of the withheld

3   material information . . . , and (2) withheld . . . this information with a specific intent to deceive

4   the PTO." *Id.* at 1328–29 (emphasis added).

5       **B.    Amendment Is Proper Under Rule 15 and Rule 16**

6           **1.    EDD Was Diligent and Has Not Delayed in Seeking to Amend**

7           EDD has been diligent and has not delayed in bringing its motion to amend to SSC's and

8   the Court's attention.  EDD could not have pleaded a defense of inequitable conduct earlier since

9   it did not have the requisite basis to plead the defense prior to the deposition of the inventor of the

10  '209 Patent, Dr. David Pelka, on July 29, 2015.  During that deposition, Dr. Pelka provided

11  testimony that establishes critical elements of the defense of inequitable conduct, including his

12  central role as the individual at TIR Technologies that decided which patents would be pursued,

13  awareness of a prior art patent from another inventor in the company he owned that he failed to

14  submit to the Patent Office, his recognition that the prior art in question was material to the

15  patentability of the asserted claim of the '209 Patent, and his implausible and rebuttable excuses

16  for knowingly withholding the material prior art in question.  EDD did not know and, indeed,

17  could not possibly have known these facts prior to Dr. Pelka's deposition.

18          Although Dr. Pelka's deposition was held after the close of fact discovery, that delay was

19  not attributable to EDD; rather, EDD sought his deposition months before the close of discovery.

20  In fact, the deposition was originally scheduled for dates in May.  Those dates, however, were

21  cancelled due to Dr. Pelka's spinal surgery and attendant recovery period.  As such, according to

22  counsel for SSC, he was not available for deposition during the fact discovery period.  (Exh. P).

23  EDD repeatedly inquired with SSC's counsel to obtain a date for Dr. Pelka's deposition, and then

24  conducted the deposition on the first available dates offered after Dr. Pelka was well enough to

25  testify.  (Exh. L).

26          Courts have found no undue delay where a party seeks to amend after obtaining critical

27  evidence such as inventor testimony that is used to establish the elements of inequitable conduct.

28  *See*, *e.g.*, *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 989 F. Supp. 1237, 1247

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   (N.D. Cal. 1997) (finding no undue delay where "SciMed seeks to amend to raise a new theory

2   based on a new set of facts only recently confirmed by SciMed," and explaining that "because the

3   legal theory implicates Federal Rule of Civil Procedure 9(b), requiring pleading of fraud with

4   particularity, SciMed was entitled to confirm factual allegations before amending to include the

5   inequitable conduct defense."); *Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics*

6   *Corp.*, No. C 04-04675 MHP, 2006 WL 3826726, at *3 (N.D. Cal. Dec. 27, 2006) (finding no

7   undue delay where significance of documents supporting inequitable conduct claim "was not

8   apparent until after defendants were able to obtain testimony regarding the documents . . . . Only

9   then were defendants able to sufficiently formulate their additional defenses for inclusion in

10  amended answers and counterclaims. . . . With respect to inequitable conduct in particular,

11  defendants would not have been able to plead inequitable conduct with sufficient specificity prior

12  to obtaining witness testimony and without falling afoul of Federal Rule of Civil Procedure 11.");

13  *Trimble Navigation*, 2007 WL 2727164, at *11 (no undue delay where party proceeded with

14  diligence after uncovering facts supporting inequitable conduct, even though motion filed after

15  amendment deadline).

16          **2.      EDD Has No Dilatory Motive**

17          The trial in this case is set for March 14, 2016, more than seven months from now.  (Dkt.

18  No. 97).   EDD's amendment requires no additional discovery by either side, nor will the

19  amendment otherwise delay the trial date or any other dates in the schedule.  Moreover, the prior

20  extensions of the schedule have been stipulated extensions, requested by SSC, and thus SSC

21  cannot claim that EDD has shown any pattern of delay.

22          Furthermore, as set forth below, SSC and its counsel have been aware that EDD believes

23  the Gleckman '354 Patent to be an invalidating prior art reference since July of 2014, ████

24  ████████████████████████████████████████████████████████

25  ████████████████        and as such, if any party has delayed the resolution of the inequitable

26  conduct issue, it is SSC, not EDD.

27

28

17

**3.      SSC Will Suffer No Prejudice if Amendment Is Permitted**

There will be no prejudice to SSC in permitting amendment.  Trial is more than seven months away, and expert reports have not yet been served.  (Dkt. No. 97; Exh. Q).

EDD identified the Gleckman '354 Patent as anticipatory prior art more than a year ago in its invalidity contentions.  (Exh. R at 8-9; Exh. S).  Thus, SSC has been on notice for more than a year that the Gleckman '354 Patent, assigned to a company owned by the named inventor of the '209 Patent, was anticipatory prior art to the asserted claims of the '209 Patent, including currently asserted claim 20.

Moreover, documents produced for the first time on the day of Dr. Pelka's deposition show that ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████ (Exh. F (Pelka Tr.) at 68:24-70:4; Exhibit T).   Thus, SSC has ample opportunity to develop any rebuttal it may have to the inequitable conduct allegations made by EDD given that all facts are uniquely within its possession, custody or control.

Coupled with the prior assertion of the Gleckman '354 Patent as prior art to the '209 Patent, SSC and its counsel should have been aware of the facts underlying the inequitable conduct defense, and should be prepared to defend against them.  "[W]here a defendant is on notice of the facts contained in an amendment to a complaint, there is no serious prejudice to defendant in allowing the amendment." *Sierra Club v. Union Oil of California*, 813 F.2d 1480, 1493 (9th Cir. 1987) *vacated on other grounds by* 485 U.S. 931 (1988); 2-9 MOORE'S FEDERAL PRACTICE § 9.03[1][b] (2015) ("Courts also allow the plaintiff extra leeway in pleading when the necessary information is under the exclusive control of the defendant. Otherwise, defrauders might be rewarded for successfully concealing the details of their fraud.").  Similarly, if SSC felt that it needed to take party or non-party discovery related to the Gleckman '354 Patent, which is already asserted under 35 U.S.C. §§ 102 and 103, it has had over a year to do so and, presumably, its retained expert is already prepared to respond to the technical issues pertaining thereto.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  If EDD is prevented from raising this defense now, it will be prejudiced, as will be the

2  public at large.  The only other proceeding in which the '209 Patent was asserted against products

3  allegedly containing EDD lenses has now been dismissed (Exh. U), and therefore this is the only

4  forum in which EDD might challenge the enforceability of the '209 patent.  *J. P. Stevens & Co. v.*

5  *Lex Tex Ltd.*, 747 F.2d 1553, 1561 (Fed. Cir. 1984) ("Once a court concludes that inequitable

6  conduct occurred, all the claims—not just the particular claims in which the inequitable conduct

7  is directly connected—are unenforceable.").  It is therefore in the public interest to allow EDD to

8  advance its newly discovered defense, and EDD would be prejudiced if deprived the opportunity

9  to assert the defense.

10  ### 4.      The Amendment Is Not Futile

11  EDD's amendment is not futile.  Here, EDD has stated a claim for inequitable conduct

12  under the applicable pleading standard of Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a

13  party must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

14  knowledge, and other conditions of a person's mind may be alleged generally.").  EDD has

15  alleged particularized facts establishing that Dr. Pelka, the sole named inventor admittedly subject

16  to the duty of disclosure, knowingly withheld material invalidating prior art (the patent of one of

17  his employees, Philip Gleckman, which was assigned to his company) of which he was aware

18  during the prosecution of the '209 Patent, with the specific intent to deceive the Patent Office and

19  secure the issuance of unpatentable claims.  Given the clear materiality, the knowledge of the

20  relationship and shared features of the figures, the near identical wording of claim 16 of the prior

21  art and claim 20 of the '209 Patent, and the unique role Dr. Pelka played in deciding which

22  inventions made at TIR Technologies would warrant the expense of patent protection, this is the

23  most reasonable inference from the facts.

24  EDD's Second Amended Answer identifies the "who" (inventor Dr. Pelka, subject to the

25  duty of disclosure) (SAA ¶¶ 97-105), the "what" (the invalidating prior art Gleckman '354

26  Patent) (SAA ¶¶ 86-96), the "when" (during the prosecution of the '209 Patent, and in particular,

27  after the issuance of the Gleckman '354 Patent on November 4, 1997) (SAA ¶¶ 97-135), the

28  "where" (at TIR Technologies, original assignee of the '209 Patent, and Teledyne, where Dr.

1   Pelka worked after he sold TIR, both entities involved in the prosecution of the '209 Patent)

2   (SAA ¶¶ 98-99), the "how" (failing to disclose the known prior art patent to the examiner despite

3   multiple opportunities to do so in IDS's filed after the Gleckman '354 Patent issued) (SAA ¶¶ 66-

4   67) and the "why" (seeking to obtain unpatentably broad claims by withholding material, non-

5   cumulative prior art) (SAA ¶ 66-67, 93-95).[6]

6          To the extent Dr. Pelka's knowledge of the Gleckman application and patent is not

7   outright established by the alleged facts, it can be reasonably inferred.  Dr. Pelka was primarily

8   responsible for patent application filings at TIR Technologies, a small company of no more than

9   20 employees at its peak with just three owners.  (SAA ¶¶ 72, 86-90).  He was the sole authority

10  regarding whether a patent would be filed, for his own inventions and inventions of others.  (SAA

11  ¶¶ 87-88).  He would decide which type of application to file for each invention, and was familiar

12  with the patent prosecution process.  (SAA ¶¶ 87-88).  He met with patent attorneys to explain

13  each invention, and he reviewed issued claims.  (SAA ¶¶ 89).  Dr. Pelka stated that although he

14  had not looked at the '209 Patent for at least 10 years prior to this litigation, he recalled that the

15  figures were "similar to ones taken from a Gleckman patent."  (SAA ¶¶ 84).  He confirmed that

16  he was referring to the Gleckman '354 Patent.  (SAA ¶¶ 84).  The Gleckman '354 Patent was

17  invented by an employee of Dr. Pelka's company (TIR Technologies, Inc.) and was assigned to

18  TIR Technologies as well.  (SAA ¶¶ 102-103).  In fact, a related (but less material) Gleckman

19  patent was disclosed to the Patent Office during the prosecution of the '209 Patent, while the

20  Gleckman '354 Patent was withheld.  (SAA ¶¶ 112-115).

21         Dr. Pelka did not contest that the withheld Gleckman '354 Patent was material–in fact, he

22  acknowledged that the figures and method claims of the Gleckman '354 Patent and the '209

23  Patent are nearly identical, and he recognized that the disclosures of the Gleckman '354 Patent

24  would read on claim 20 of the '209 Patent, rendering it obvious if not anticipated.  (SAA ¶¶ 126-

25  130).  The Gleckman '354 Patent was not cumulative of other prior art disclosed to the patent

26  office.  The closest disclosed prior art, the Gleckman '197 Patent, did not disclose certain key

27  _____

28  [6]    To the extent the Court interprets the "how" and "why" as questions focused on how the
examiner would have used the withheld prior art, and why it is material and non-cumulative, facts
answering those questions are pleaded as well.  (*See* SAA ¶¶ 86-135).

features that the Gleckman '354 Patent described.  (SAA ¶¶ 113-114).  The Gleckman '354 Patent was not cumulative of the prior art submitted to the Patent Office.  (SAA ¶¶ 113-114).

There are just two textual distinctions between claim 16 of Gleckman and claim 20 of the '209 Patent.  (SAA ¶¶ 126-129).  As confirmed by Dr. Pelka, the first (pertaining to the internal walls of the cavity) is a distinction without a difference.  (SAA ¶¶ 126-127).  As for the second, Dr. Pelka confirmed that claim 16 of the Gleckman '354 Patent would cover embodiments with bottom-mounted perimeter light sources, which clearly falls within the scope of claim 20 of the '209 Patent (which requires light sources "mounted on said internal bottom wall and around the perimeter" and would thus be satisfied by light sources on the bottom wall around the perimeter).  (SAA ¶¶ 128-129).

Similarly, to the extent Dr. Pelka's intent to deceive the Patent Office is not established by the pleaded facts, it can be reasonably inferred.  It is not disputed that the Gleckman '354 Patent was never disclosed to the Patent Office by Dr. Pelka or anyone else.  (SAA ¶¶ 98-99, 124-125).  As Dr. Pelka conceded, there is substantial overlap in the claims and disclosures of the '209 Patent and the Gleckman '354 Patent, such that at least claim 20 of the '209 Patent would not have issued if the Gleckman '354 Patent had been before the examiner.  (SAA ¶¶ 122-123, 126-135).

Dr. Pelka offered no plausible reason for his decision not to disclose the Gleckman '354 Patent during prosecution of the '209 Patent.  His claim that he did not disclose the Gleckman '354 Patent to the examiner because it had not yet issued as a patent is demonstrably untrue.  The Gleckman '354 Patent issued on November 4, 1997, a full two years before the '209 Patent eventually issued, on December 29, 1999.  (SAA ¶¶ 97-99).  Dr. Pelka simply failed to notify the Patent Office of this material prior art, and failed to instruct his patent counsel to do so.  (SAA ¶¶ 124-125).  Dr. Pelka's intent to withhold Gleckman for the purposes of obtaining an unpatentably broad claim is established or at least reasonably inferable from these facts.

EDD's proposed amendment thus alleges facts supporting the materiality and intent elements of inequitable conduct.  EDD does not need to prove inequitable conduct at this stage; it only needs to provide facts from which the Court may draw a reasonable inference that Dr. Pelka

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

knew about the patent and intentionally withheld it from the Patent Office and, hence, the claim is not futile.  *See Exergen*, 575 F.3d at 1328–29. The foregoing facts plainly demonstrate the newly discovered inequitable conduct defense is not futile.  Further, making factual findings regarding the evidence would be inappropriate on this motion.  *See Golden Hour Data Sys., Inc. v. Health Servs. Integration, Inc.*, No. C 06-7477 SI, 2008 WL 2622794, at *3 (N.D. Cal. July 1, 2008) (declining to engage in "inappropriate" fact finding regarding intent and materiality on a motion to amend to add inequitable conduct); *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-CV-02013-JST, 2014 WL 988915, at *5 (N.D. Cal. Mar. 10, 2014) ("The question of whether prior art that was not disclosed is cumulative is a factual issue that should not be resolved at the pleading stage.").

**V.**   **Conclusion**

For the reasons set forth above, EDD respectfully submits that the Court should grant its Motion to Amend.


Dated:  August, 13, 2015                                  NAGASHIMA & HASHIMOTO

                                                          */s/ Marc R. Labgold*
                                                         Marc R. Labgold, Ph.D.

                                                         Attorneys for Plaintiffs/Counterclaim-
                                                         Defendants
                                                         *Enplas Display Device Corporation*