| | |
|---|---|
| NAGASHIMA & HASHIMOTO<br>MARC R. LABGOLD (*pro hac vice*)<br>mlabgold@labgoldlaw.com<br>PATRICK J. HOEFFNER (*pro hac vice*)<br>phoeffner@labgoldlaw.com<br>12005 Sunrise Valley Drive, Suite 203<br>Reston, Virginia 20191<br>Telephone: 877-401-8855<br>Facsimile: 877-401-8855<br><br>NAGASHIMA & HASHIMOTO<br>TAKAAKI NAGASHIMA (*pro hac vice*)<br>nagashima@nandhlaw.com<br>Hirakawa-cho, KS Bldg., 2nd Floor<br>2-4-14, Hirakawa-cho, Chiyoda-ku<br>Tokyo 102-0098 Japan<br>Telephone: +81-3-3239-5750<br>Facsimile: +81-3-3239-8538<br><br>*Attorneys for Plaintiffs Enplas Display Device Corp. and Enplas (U.S.A.), Inc.* | SHAW KELLER LLP<br>JOHN W. SHAW (*pro hac vice*)<br>jshaw@shawkeller.com<br>JEFFREY CASTELLANO (*pro hac vice*)<br>jcastellano@shawkeller.com<br>300 Delaware Avenue, Suite 1120<br>Wilmington, Delaware 19801<br>Telephone: 302-298-0700<br><br>SEILER EPSTEIN ZIEGLER &<br>  APPLEGATE LLP<br>Mark W. Epstein (SBN 143202)<br>George M. Lee (SBN 172982)<br>gml@sezalaw.com<br>601 Montgomery Street, Suite 2000<br>San Francisco, California 94111<br>Telephone: 415-979-0500<br>Facsimile: 415-979-0511 |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ENPLAS DISPLAY DEVICE CORPORATION;<br>ENPLAS TECH SOLUTIONS, INC.; and<br>ENPLAS (U.S.A.), INC.,<br><br>        Plaintiffs,<br><br>        v.<br><br>SEOUL SEMICONDUCTOR CO., LTD;<br><br>        Defendant. | **Case No. 3:13-CV-05038-NC**<br><br>**PLAINTIFF ENPLAS DISPLAY DEVICE CORPORATION'S SECOND AMENDED ANSWER TO SSC'S COUNTERCLAIM**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Enplas Display Device Corporation ("EDD"), by and through its undersigned counsel, hereby submits this Second Amended Answer to SSC's Counterclaims (Dkt. No. 11) only as to EDD unless otherwise indicated. EDD denies each allegation of SSC's Answer and Counterclaim that is not expressly admitted.

## NATURE OF THE ACTION[1]

1. EDD admits that the United States Patent & Trademark Office ("USPTO") assignment records indicate that United States Patent No. 6,473,554 ("the '554 Patent") and United States Patent No. 6,007,209 ("the '209 Patent") (collectively, the "Patents-in-Suit") are assigned to SSC.

2. Paragraph 2 of SSC's Counterclaim states a legal conclusion to which no response is required. EDD denies it has infringed and/or willfully infringed the Patents-in-Suit.

3. Admitted.

## THE PARTIES

4. Upon information and belief, SSC is a company organized and existing under the laws of the Republic of Korea, having its principle place of business at 1B-25, 727, Wonsi-dong, Danwon-gu, Ansan-city, Gyeonggi-do, Korea 425-851.

5. Admitted.

6. Admitted.

7. Admitted.

8. Paragraph 8 of SSC's Counterclaim does not require any response. To the extent a response is required, EDD admits that Paragraph 8 states that the terms "Counterclaim Defendant Enplas" and "Enplas" are intended to refer to EDD, ETS and Enplas USA collectively.

## JURISDICTION AND VENUE

9. Paragraph 9 of SSC's Counterclaim states legal conclusions to which no responses are required. To the extent any response is required, EDD denies this action is intended to redress infringement of the Patents-in-Suit because no such infringement has occurred.

---

[1] The headings track those employed by SSC in its Counterclaim and are solely for the purpose of ease of reference.

10. Admitted.

11. Denied.

12. Paragraph 12 contains legal conclusions to which no response is required. To the extent a response is required, EDD does not contest personal jurisdiction by this Court for purposes of this action regarding the products accused in SSC's September 2013 and October 2013 letters only. EDD does not contest that ETS is a California corporation with its principal place of business in this District. EDD denies the remaining allegations contained in Paragraph 12 of SSC's Counterclaim.

**FACTUAL BACKGROUND**

13. EDD admits that an LED is a semiconductor device that converts electrical energy into light, and that LEDs are used as light sources in a variety of products. The remaining allegations in Paragraph 13 of SSC's Counterclaim are statements of opinion to which no response is required. To the extent a response is required, EDD is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 13 of SSC's Counterclaim and on that basis denies those allegations.

14. EDD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of SSC's Counterclaim, and on that basis denies each and every such allegation.

15. EDD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of SSC's Counterclaim, and on that basis denies that allegation.

16. EDD does not dispute that the '554 Patent is entitled "Lighting Apparatus Having Low Profile" and indicates on its face that it was issued on October 29, 2002. EDD is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16 of SSC's Counterclaim, and on that basis denies each and every such allegation.

17. Paragraph 17 of SSC's Counterclaim is an attempt to characterize the contents of a document that speaks for itself and to which no response is required. To the extent Paragraph 17

of SSC's Counterclaim states a legal conclusion, no response is required. If a response is required, EDD denies the allegations in Paragraph 17 of SSC's Counterclaim.

18. EDD admits that the USPTO assignment records indicate that the '554 Patent was assigned to SSC. To the extent Paragraph 18 of SSC's Counterclaim states a legal conclusion, no response is required. EDD is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 18 of SSC's Counterclaim, and on that basis denies each and every such allegation.

19. EDD does not dispute that the '209 Patent is entitled "Light Source For Backlighting" and indicates on its face that it was issued on December 28, 1999. EDD is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19 of SSC's Counterclaim, and on that basis denies each and every such allegation.

20. Paragraph 20 of SSC's Counterclaim is an attempt to characterize the contents of a document that speaks for itself and to which no response is required. To the extent Paragraph 20 of SSC's Counterclaim states a legal conclusion, no response is required. If a response is required, EDD denies the allegations in Paragraph 20 of SSC's Counterclaim.

21. EDD admits that the USPTO assignment records indicate that the '209 Patent was assigned to SSC. To the extent Paragraph 21 of SSC's Counterclaim states a legal conclusion, no response is required. EDD is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21 of SSC's Counterclaim, and on that basis denies each and every such allegation.

22. EDD admits that since April 2, 2012, it has manufactured and supplied lenses to SSC, which on information and belief, SSC combines with LEDs and other components for use in LCD televisions and monitors. EDD denies the remaining allegations of Paragraph 22 of SSC's Counterclaim, including but not limited to the allegation that said lenses utilize the patented technology of the '554 Patent.

23. Denied. EDD was first aware of the '554 Patent on or about April 2, 2012.

24. Denied.

3

ENPLAS DISPLAY DEVICE CORPORATION'S
SECOND AMENDED ANSWER TO SSC'S
COUNTERCLAIM

25. EDD admits that it has manufactured and sold lenses for use in LED backlights for LCD televisions and monitors. EDD denies that it has manufactured or sold any such lenses in the United States, or with knowledge or intent that such lenses be imported into the United States. EDD is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 25 of SSC's Counterclaim, and on that basis denies each and every such allegation.

26. The second, third, fourth and sixth sentences of Paragraph 26 of SSC's Counterclaim are an attempt to characterize the contents of documents that speak for themselves and to which no response is required. EDD admits that the fifth and seventh sentences of Paragraph 26 of SSC's Counterclaim purport to attach copies of a webpage from Enplas Corporation's website and a webpage from Enplas USA's website. EDD denies the remaining allegations of Paragraph 26 of SSC's Counterclaim.

27. EDD denies the first sentence of Paragraph 27 of SSC's Counterclaim. The remaining allegations of Paragraph 27 of SSC's Counterclaim are an attempt to characterize the contents of documents that speak for themselves and to which no response is required. If a response is required, EDD denies the remaining allegations of Paragraph 27 of SSC's Counterclaim.

28. EDD admits that it has made lenses that can be used with an LED as a light flux control member, but denies that any such activity has ever occurred within the United States. EDD denies the remaining allegations of Paragraph 28 of SSC's Counterclaim.

29. EDD admits that it has made lenses that can be used with an LED as light flux control member in conjunction with flat panel displays but denies that any such activity has ever occurred within the United States. EDD denies the remaining allegations of Paragraph 29 of SSC's Counterclaim.

30. Denied.

31. Denied.

32. Denied.

33. To the extent Paragraph 33 of SSC's Counterclaim states a legal conclusion, no

response is required. To the extent a response is required, EDD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of SSC's Counterclaim, and on that basis denies each and every such allegation.

34. To the extent Paragraph 34 of SSC's Counterclaim states a legal conclusion, no response is required. The remaining allegations of Paragraph 34 of SSC's Counterclaim are an attempt to characterize the contents of documents that speak for themselves and to which no response is required. To the extent a response is required, EDD admits that Enplas received three letters dated October 16, 2013, purporting to be from Lawrence J. Gotts, Esq., a partner with the firm of Latham & Watkins, LLP, in his capacity as counsel for Defendant SSC, which letters were captioned "Re Notice of Seoul Semiconductor Corporation's LED Patents" and alleged infringement of the Patents-in-suit, and EDD denies the remaining allegations of Paragraph 34 of SSC's Counterclaim.

**ANSWER TO COUNT I**

35. Paragraph 35 of SSC's Counterclaim does not require any response. To the extent Paragraph 35 is deemed to require a response, EDD incorporates the responses set forth in Paragraphs 1 through 34, *supra*, in their entirety.

36. Denied.

37. Denied.

38. Denied. EDD was first aware of the '554 Patent on or about April 2, 2012.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

| | |
|---|---|
| 1 | 48. To the extent Paragraph 48 of SSC's Counterclaim states a legal conclusion, no response is required. To the extent a response is required, EDD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 of SSC's Counterclaim, and on that basis denies each and every such allegation. |
| 5 | 49. Denied. |

### ANSWER TO COUNT II

50. Paragraph 50 of SSC's Counterclaim does not require any response. To the extent Paragraph 50 is deemed to require a response, EDD incorporates the responses set forth in Paragraphs 1 through 49, *supra*, in their entirety.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. To the extent Paragraph 63 of SSC's Counterclaim states a legal conclusion, no response is required. To the extent a response is required, EDD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 of SSC's Counterclaim, and on that basis denies each and every such allegation.

64. Denied.

///

///

EDD denies each allegation of SSC's Answer and Counterclaim (Dkt. No. 11) that is not expressly admitted, and denies that SSC is entitled to any relief, including but not limited to the relief requested in its prayer for relief.

**AFFIRMATIVE DEFENSE OF INEQUITABLE CONDUCT**

65. EDD incorporates the factual allegations of paragraphs 1-38 of the First Amended Complaint (Dkt. No. 7).

66. Inventor David Pelka, Ph.D. ("Dr. Pelka") committed inequitable conduct during the prosecution of asserted patent U.S. Patent No. 6,007,209 (the '209 Patent).

67. Dr. Pelka knowingly withheld material prior art from the U.S. Patent Office with the intent to deceive the Patent Office.

**CLAIM 20 OF THE '209 PATENT**

68. U.S. Patent 6,007,209 ("the '209 Patent") issued on December 28, 1999 from U.S. Patent Application 08/820,097 (the '097 Application), titled "Light Source for Backlighting" which was filed on March 19, 1997. (Dkt. No. 1, Exh. B).

69. David G. Pelka is the sole named inventor of the '209 Patent.

70. Dr. Pelka has a Master's degree and a Ph.D. in Physics from the University of California.

71. Dr. Pelka co-founded TIR Technologies, Inc. in 1992 to "pursue some of [his] patents related to LED lighting systems and LCD backlights" and technologies using total internal reflection ("TIR").

72. TIR Technologies, Inc. was a small company, with three owners and 20 employees at its peak.

73. The "TIR" in the name TIR Technologies, Inc. is a reference to "Total Internal Reflection."

74. Dr. Pelka assigned his interest in the '097 Application to TIR Technologies, Inc. on March 17, 1997.

75. The '097 Application, as filed, included 22 claims.

76. Claim 20 of the '209 Patent was one of the originally filed claims.

77. There were no rejections of any claims during the prosecution of the '209 Patent and claim 20 was not amended during prosecution.

78. Claim 20 is the only remaining claim of the '209 Patent that SSC asserts is infringed by Plaintiffs' activities.

79. The '209 Patent is directed to an apparatus and methods for backlighting a display, such as an LCD.

80. In particular, the '209 Patent provides that the invention encompasses "a method of backlighting a display panel comprising the step of producing illumination from a substantially lambertian light source having a cavity with internal side walls, an internal bottom wall, and an aperture. The producing step comprises the step of directing light rays emitted by plural light sources mounted on the cavity bottom surface and around the perimeter of the aperture into the cavity such that the light exiting the aperture is substantially uniform in intensity and color."

81. Claim 20 of the provides:

> 20. A method of backlighting a display panel, comprising:
>
> producing illumination from a substantially lambertian light source comprising a cavity with internal side walls, an internal bottom wall, and an aperture, said step of producing illumination comprising the step of directing light rays emitted by plural light sources mounted on said internal bottom wall and around the perimeter of the aperture into the cavity such that the light exiting the aperture is substantially uniform in intensity and color;
>
> using a diffuser to diffuse light from said substantially lambertian light source;
>
> using a brightness enhancing film to concentrate the diffused light into a predetermined angular range without significantly reducing the uniformity of the diffused light; and
>
> directing the concentrated, diffused light onto said display panel.

82. The '209 Patent issued with seven figures. Figures 3 and 4 are reproduced below.



83. Dr. Pelka confirmed during his deposition that Figure 3 of the '209 Patent depicts an embodiment having the light sources (elements 12) mounted around the perimeter on the top surface of the cavity, however neither the specification's description of the method of backlighting nor claim 20 preclude these light sources from being mounted on the side of the cavity or even the bottom of the cavity, provided they are mounted around the perimeter of the cavity.

84. Dr. Pelka attributed the fact that the light sources (elements 12) of Figure 3 were depicted as they are, on the fact that Figures 3 and 4 of the '209 Patent were "taken from a prior patent, if I recall correctly. I think the attorneys were being cost effective. And as I recall, these figures were similar to ones taken from a Gleckman patent."

85. The plain language of claim 20 of the '209 Patent requires "plural light sources mounted on said internal bottom wall and around the perimeter of the aperture into the cavity . . . ." Thus, the plain language of claim 20 encompasses plural light sources mounted on the bottom of the cavity that are mounted around the perimeter of the aperture, because those lights would be "mounted on said internal bottom wall and around the perimeter of the aperture."

**DR. PELKA'S ROLE IN PROSECUTION AT TIR TECHNOLOGIES, INC.**

86. In addition to being the named inventor of the '209 Patent, Dr. Pelka was the person primarily responsible for patent application filings within TIR Technologies, Inc.

87. Dr. Pelka was responsible for "deciding whether an idea was good enough to pursue a patent."

88. Both for his own inventions and the inventions of "other people in the company," Dr. Pelka "made the decision as to whether [the company] would make an investment of going to a patent attorney, filing a provisional application or a full application, depending on sort of my opinion as to the value of the technology that was involved."

89. Dr. Pelka would also meet with the company's outside patent attorneys – Knobbe, Martens, Olson and Bear ("Knobbe") – in order to explain the basic ideas/concepts that TIR Technologies was seeking to patent.

90. Dr. Pelka is familiar with the patent prosecution process.

91. On March 17, 1997, in connection with the '097 Application, Dr. Pelka submitted a signed declaration to the U.S. Patent Office stating that he was the "original, first and sole inventor of the subject matter which is claimed and for which a patent is sought in the invention entitled "LIGHT SOURCE FOR BACKLIGHTING . . . ."

92. In his declaration, Dr. Pelka stated "I have reviewed and understand the contents of the above identified specification, including the claims . . . ."

93. In his declaration, Dr. Pelka "acknowledge[d] the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56 . . ."

94. Dr. Pelka understood that he was required to provide to the patent examiner all material prior art of which he was aware during prosecution of his patent applications.

95. As part of his responsibilities for managing the patent portfolio at TIR Technologies, Dr. Pelka would "attend many scientific conferences, and look at various patents and things. And if my invention in some way I thought related to those references, I would make that known to the -- whoever was prosecuting the patent on behalf of myself at that time."

96. Dr. Pelka's role and involvement in the patent prosecution of the `209 or Gleckman `354 patent applications did not change after the sale of TIR Technologies to Teledyne.

### GLECKMAN '354 PATENT WAS MATERIAL PRIOR ART

97. U.S. Patent No. 5,684,354 ("the Gleckman '354 Patent") issued on November 4, 1997 from U.S. Patent Application 08/317,209 filed on October 3, 1994, which application was a

continuation-in-part ("CIP") of U.S. Patent Application 08/131,659 ("the '659 Application), filed October 5, 1993.

98. During the prosecution of the '097 Application, at least three Information Disclosure Statements (IDS's) were filed with the Patent Office, informing the examiner of prior art the applicant considered relevant.

99. Although two of the IDS's were filed *after* the Gleckman '354 Patent issued as a patent in November of 1997, none of them included the Gleckman '354 Patent.

100. U.S. Patent No. 5,440,197 ("the Gleckman '197 Patent") issued on August 8, 1995 from the '659 Application.

101. U.S. Patent No. 5,892,325 issued on April 6, 1999. The `325 patent is a divisional application of the 08/371,209 application (that issued as the `354 Gleckman Patent).

102. Philip L. Gleckman ("Dr. Gleckman") is the sole named inventor of both the Gleckman '354 Patent and the Gleckman '197 Patent. Dr. Gleckman assigned his rights to the claimed invention to TIR Technologies, Inc.

103. Dr. Gleckman was an employee of TIR Technologies, Inc., and worked under Dr. Pelka's Direction.

104. The Gleckman '354 Patent is prior art to the '209 Patent under at least pre-AIA 35 U.S.C. 102(e) (precluding patent where the invention was described in "a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, . . .").

105. The Gleckman '354 Patent was *per se* material prior art that Dr. Pelka was aware of and was obligated under 37 C.F.R. § 1.57 to bring to the Examiner's attention.

106. As stated above, the Gleckman '354 Patent issued from a CIP patent application of an earlier-filed patent application. (*See*, ¶ 97, *supra*). That earlier-filed patent application issued as the Gleckman '197 Patent.

107. Dr. Pelka testified that he brought the Gleckman '197 Patent to the Examiner's attentions because it was "sufficiently relevant that it should be brought to the examiner's attention."

108. The earlier-filed patent application (which issued as the Gleckman '197 Patent), was amended to add, *inter alia*, Figures 12 and 13 (reproduced below); this application was the CIP that led to the 'Gleckman '354 Patent.



FIG. 12     FIG. 13

109. As part of his management of the patent filings at TIR Technologies, Dr. Pelka knew of the application for the Gleckman '354 Patent.

110. During his deposition, Dr. Pelka provided the unprompted recollection that "Figures 3 and 4 were taken from a prior patent, if I recall correctly. I think the attorneys were being cost effective. And as I recall, these figures were similar to one taken from a Gleckman patent."

111. Dr. Pelka's unprompted reference to a "Gleckman patent" during his deposition was a reference to the Gleckman '354 Patent.

112. Dr. Pelka made the decision to disclose the Gleckman '197 Patent but not the Gleckman '354 patent, despite the fact that the '354 Patent is substantially more material to the patentability of the '209 Patent.

113. For example, the '197 Patent does not contain Gleckman '354 patent's peripheral arrangement of plural light sources or a claim directed to a method of backlighting using peripheral light sources.

114. For at least these reasons, the Gleckman '354 Patent is not merely cumulative of the Gleckman '197 Patent.

115. Both the Gleckman '197 Patent and, because of the terminal disclaimer, the Gleckman '354 Patent expired on October 5, 2013.

116. Like the '209 Patent, the Gleckman '354 Patent is directed to an apparatus and method for backlighting a display such as an LCD panel.

117. Claim 16 of the Gleckman '354 Patent was one of the originally filed claims.

118. Claim 16 of the Gleckman '354 Patent was not amended during prosecution.

119. Claim 16 of the Gleckman '354 Patent is specifically directed to the same method as Claim 20 and, as such, is an improper double patenting, which resulted in the extension of the patent monopoly by at more than three years. Despite not having Figures 12 and 13 of the '354 Patent in common, the '354 Patent was required to be terminally disclaimed over the Gleckman '197 Patent. Had the Examiner known of the Gleckman '354 Patent, the claims of the '209 patent would have been unpatentable as anticipated, obvious, and subject to an obviousness-type double patenting rejection.

120. Claim 16 of the Gleckman '354 Patent claims the following method:

> 16. A method of backlighting a display panel, comprising:
>
> producing illumination from a substantially lambertian light source comprising a cavity with internal walls and an aperture, said step of producing illumination comprising the step of directing light rays from the perimeter of the aperture into the cavity such that the light exiting the aperture is substantially uniform in intensity and color;
>
> using a diffuser to diffuse light from said substantially lambertian light source;
>
> using a brightness enhancing film to concentrate the diffused light into a predetermined angular range without significantly reducing the uniformity of the diffused light; and
>
> directing the concentrated, diffused light onto said display panel.

121.   Claim 20 of the '209 Patent is a nearly word-for-word reproduction of claim 16 of the Gleckman '354 Patent (red underlining indicating any differences in text):

| 16. A method of backlighting a display panel, comprising: | 20. A method of backlighting a display panel, comprising: |
|---|---|
| producing illumination from a substantially lambertian light source comprising | producing illumination from a substantially lambertian light source comprising |
| a cavity with <u>internal walls</u> and an aperture | a cavity with <u>internal side walls, an internal bottom wall</u>, and an aperture |
| said step of producing illumination comprising the step of directing light rays <u>from</u> the perimeter of the aperture into the cavity | said step of producing illumination comprising the step of directing light rays <u>emitted by plural light sources mounted on said internal bottom wall and around</u> the perimeter of the aperture into the cavity |
| such that the light exiting the aperture is substantially uniform in intensity and color; | such that the light exiting the aperture is substantially uniform in intensity and color; |
| using a diffuser to diffuse light from said substantially lambertian light source; | using a diffuser to diffuse light from said substantially lambertian light source; |
| using a brightness enhancing film to concentrate the diffused light into a predetermined angular range without significantly reducing the uniformity of the diffused light; and | using a brightness enhancing film to concentrate the diffused light into a predetermined angular range without significantly reducing the uniformity of the diffused light; and |
| directing the concentrated, diffused light onto said display panel. | directing the concentrated, diffused light onto said display panel. |

122.   Dr. Pelka understood all of the elements of claim 20 of the '209 Patent, consistent with the sworn declaration he submitted to the Patent Office when the application for the '209 Patent was filed.

123.   Dr. Pelka confirmed that claim 16 and claim 20 are identical in all material respects, with the possible exception of the light sources.

124.   Dr. Pelka did not disclose the existence of the Gleckman '354 Patent to the Patent Office.

125.   Dr. Pelka did not instruct his patent attorneys to disclose the Gleckman '354 Patent to the Patent Office during the prosecution of the '209 Patent.

126. With respect to the first textual difference in the table above – *i.e,* the clause pertaining to the cavity walls – Dr. Pelka confirmed that the Gleckman '354 Patent discloses a cavity having "internal side walls, an internal bottom wall and an aperture."

127. Thus, Dr. Pelka confirmed that the "internal walls" of claim 16 of the Gleckman '354 Patent would read on the "internal side walls, an internal bottom wall" of the '209 Patent claim 20.

128. With respect to the second textual difference – *i.e,* the clause pertaining to the step of producing illumination – Dr. Pelka testified that the term "perimeter" "just means the light sources are along the edges of the cavity," and does not require that they are mounted on any particular surface (top, side or bottom). In particular, Dr. Pelka stated that the lights should simply be "in the outermost region of the cavity" and could be mounted on the side or bottom of the cavity and still be around the perimeter.

129. Dr. Pelka confirmed multiple times that claim 16 of the Gleckman patent would cover embodiments with bottom-mounted perimeter light sources, which clearly falls within the scope of claim 20 of the '209 Patent.

130. As admitted by Dr. Pelka, both the Gleckman patent and the '209 Patent disclose and claim a method of backlighting using lights around the perimeter of the cavity on the bottom surface of the cavity.

131. Dr. Pelka testified that the difference between what is claimed and disclosed in the Gleckman '354 Patent and the '209 Patent is the extrapolation from "a single source that's baffled to a multiplicity of sources located on the bottom and claiming the baffles would be exactly the same. And I disagree with that. And that's where the difference in the two patents exactly resides."

132. Unlike the other claims of the '209 Patent, Claim 20 does not contain a limitation requiring baffles, shielding or shielding elements.

133. Thus, Claim 20 of the '209 Patent does not claim the point of novelty Dr. Pelka – the sole inventor – testified was "where the difference in the two patents exactly resides."

15

ENPLAS DISPLAY DEVICE CORPORATION'S
SECOND AMENDED ANSWER TO SSC'S
COUNTERCLAIM

134. Even if claim 20 of the '209 Patent required that the lights on the bottom surface be within the aperture (which it does not) and be shielded (which it does not), the Gleckman '354 Patent discloses such an embodiment, and thus would anticipate or at a minimum render claim 20 of the '209 Patent invalid as obvious.

 

135. Thus, regardless of how claim 20 of the '209 Patent is interpreted, the Gleckman '354 patent is *per se* material prior art to the patentability of at least claim 20 of the '209 Patent – material prior art that was intentionally withheld from the Examiner.

136. The '209 Patent is, therefore, unenforceable due to inequitable conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, EDD prays that judgment be entered in its favor and against SSC including:

    A.    The relief described in the Prayer for Relief in the First Amended Complaint (Dkt. No. 7);

    B.    Judgment that the '209 Patent is unenforceable due to inequitable conduct;

    C.    That SSC's Counterclaims be dismissed in their entirety, with SSC taking nothing thereunder;

    D.    That this case be declared an exceptional case pursuant to, *inter alia*, 35 U.S.C. § 285, and EDD be awarded no less than its attorneys' fees, costs, and expenses incurred in defending itself against the baseless allegations presented by SSC in this action; and

    E.    Such other and further relief as this Court deems is just and proper.

## **DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), EDD demands a trial by jury on all of EDD's claims and SSC's counterclaims in this action so triable.

Dated: August 13, 2015

NAGASHIMA & HASHIMOTO

*/s/ Marc R. Labgold*
_____
Marc R. Labgold, Ph.D.

Attorneys for Plaintiff-Counterclaim Defendant
*Enplas Display Device Corporation*