NAGASHIMA & HASHIMOTO
MARC R. LABGOLD (*pro hac vice*)
mlabgold@labgoldlaw.com
PATRICK J. HOEFFNER (*pro hac vice*)
phoeffner@labgoldlaw.com
12005 Sunrise Valley Drive, Suite 203
Reston, Virginia 20191
Telephone: 877-401-8855
Facsimile:  877-401-8855

NAGASHIMA & HASHIMOTO
TAKAAKI NAGASHIMA (*pro hac vice*)
nagashima@nandhlaw.com
Hirakawa-cho, KS Bldg., 2nd Floor
2-4-14, Hirakawa-cho, Chiyoda-ku
Tokyo 102-0098 Japan
Telephone: +81-3-3239-5750
Facsimile:  +81-3-3239-8538

*Attorneys for Plaintiffs Enplas Display Device Corp., Enplas Tech Solutions, Inc. and Enplas (U.S.A.), Inc.*

SHAW KELLER LLP
JOHN W. SHAW (*pro hac vice*)
jshaw@shawkeller.com
JEFFREY CASTELLANO (*pro hac vice*)
jcastellano@shawkeller.com
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
Telephone:  302-298-0700

SEILER EPSTEIN ZIEGLER &
  APPLEGATE LLP
MARK W. EPSTEIN (SBN 143202)
GEORGE M. LEE (SBN 172982)
gml@sezalaw.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415-979-0500
Facsimile: 415-979-0511

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

ENPLAS DISPLAY DEVICE CORPORATION;
ENPLAS TECH SOLUTIONS, INC.; and
ENPLAS (U.S.A.), INC.,

         Plaintiffs/Counterclaim
         Defendants,

    v.

SEOUL SEMICONDUCTOR CO., LTD.,

         Defendant/Counterclaim
         Plaintiff.

**CASE NO. 3:13-cv-05038-NC**

**JURY TRIAL DEMANDED**

**EDD'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF CLAIMS 1, 2, 30, 31, 33-39, 41-43 AND 45-48 OF THE '554 PATENT AS ANTICIPATED UNDER § 102(b)**

Date:    December 9, 2015
Time:    1:00 p.m.
Court:   San Jose Courthouse,
         Courtroom 7 - 4th Floor
Judge:  Hon. Nathanael Cousins

# TABLE OF CONTENTS

NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ............................................ 1

POINTS AND AUTHORITIES ............................................................................................ 1

I.     STATEMENT OF ISSUES TO BE DECIDED .................................................... 1

II.    FACTUAL BACKGROUND ............................................................................. 1

     A.     The '554 Patent ................................................................................ 1

     B.     The Stanley Prior Art Reference ........................................................ 2

     C.     The Johnson Prior Art Reference ....................................................... 3

III.   LEGAL STANDARDS ..................................................................................... 4

IV.    ARGUMENT ................................................................................................... 5

     A.     Claims 30, 31, 36, 38, 39, 41, 46 and 48 are Anticipated by Stanley ..................... 5

          1.     Stanley is Prior Art to the '554 Patent ........................................ 5

          2.     Stanley Discloses Every Element of Claim 30 ............................. 5

               a)     Stanley discloses "a light emitting diode (LED)" ........................... 6

               b)     Stanley discloses "an optical element having top and bottom opposing sides and an edge extending between the top and bottom opposing sides" ................................................................ 6

               c)     Stanley discloses "said LED mounted at a predetermined location beneath a central portion of said optical element such that light from the LED enters the optical element" ............... 7

               d)     Stanley discloses the remaining elements of Claim 30 ................... 7

          3.     Stanley Discloses Every Element of Claims 31 and 36 ................ 9

               a)     Claim 31 ........................................................................... 9

               b)     Claim 36 ........................................................................... 9

          4.     Stanley Discloses Every Element of Claim 38 ............................. 9

               a)     Stanley discloses "a light emitting diode (LED)" ........................... 9

               b)     Stanley discloses "an optical element positioned to receive light from the light emitting diode" ................................................ 10

c) Stanley discloses "said element comprised of a refractive index interface having a curved shape that is symmetrical about an axis and converges to a location in a central portion of the optical element" .................................................................... 10

d) Stanley discloses "said location and said light emitting diode lying substantially on said axis" ........................................... 10

e) Stanley discloses "said interface being shaped and positioned relative to said LED to reflect a substantial portion of light from said LED in a direction transverse to said axis" .................................................................................... 11

5. Stanley Discloses Every Element of Claims 39, 41, 46 and 48 ................. 12

a) Claim 39 ................................................................................ 12

b) Claim 41 ................................................................................ 12

c) Claim 46 ................................................................................ 12

d) Claim 48 ................................................................................ 12

B. Claims 1, 2, 30, 31, 33-39, 41-43 and 45-48 are Anticipated by Johnson ............ 12

1. Johnson is Prior Art to the '554 Patent ........................................ 12

2. Johnson Discloses Every Element of Claim 1 ........................................... 13

a) Johnson discloses "a waveguide having an illumination coupler embedded in an interior region of said waveguide".......... 13

b) Johnson discloses the claimed "illumination coupler".................... 14

3. Johnson Discloses Every Element of Claim 2 ........................................... 15

4. Johnson Discloses Every Element of Claim 30 ........................................ 15

a) Johnson discloses "a light emitting diode (LED)" ........................ 15

b) Johnson discloses "an optical element having top and bottom opposing sides and an edge extending between the top and bottom opposing sides" .................................................... 16

c) Johnson discloses "said LED mounted at a predetermined location beneath a central portion of said optical element such that light from the LED enters the optical element"............. 16

d) Johnson discloses the remaining elements of Claim 30................. 17

5. Johnson Discloses Every Element of Claims 31 and 33-37...................... 18

a) Claim 31 ................................................................................ 18

|  |  |  |  |
|---|---|---|---|
| | b) | Claim 33 | 19 |
| | c) | Claim 34 | 19 |
| | d) | Claim 35 | 20 |
| | e) | Claims 36 and 37 | 20 |
| 6. | | Johnson Discloses Every Element of Claim 38 | 20 |
| | a) | Johnson discloses "a light emitting diode (LED)" | 20 |
| | b) | Johnson discloses "an optical element positioned to receive light from the light emitting diode" | 20 |
| | c) | Johnson discloses "said element comprised of a refractive index interface having a curved shape that is symmetrical about an axis and converges to a location in a central portion of the optical element" | 21 |
| | d) | Johnson discloses "said location and said light emitting diode lying substantially on said axis" | 21 |
| | e) | Johnson discloses "said interface being shaped and positioned relative to said LED to reflect a substantial portion of light from said LED in a direction transverse to said axis" | 22 |
| 7. | | Johnson Discloses Every element of Claims 39, 41-43 and 45-48 | 22 |
| | a) | Claim 39 | 22 |
| | b) | Claim 41 | 23 |
| | c) | Claim 42 | 23 |
| | d) | Claim 43 | 23 |
| | e) | Claim 45 | 23 |
| | f) | Claim 46 | 24 |
| | g) | Claim 47 | 24 |
| | h) | Claim 48 | 24 |
| V. | CONCLUSION | | 255 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

EDD MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF THE '554 PATENT

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................... 4

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474 (9th Cir. 2000).................... 5

*In re NTP, Inc.*, 654 F.3d 1279 (Fed. Cir. 2011)................................................................ 5

*Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991) ............................ 5

*Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709 (Fed. Cir. 1998)................................................. 5

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)......................................... 11

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).......................................................... 11, 16

**Statutes**

35 U.S.C. § 102 ......................................................................................... passim

35 U.S.C. § 112 ............................................................................................. 1, 15

35 U.S.C. § 282 ................................................................................................. 5

**Rules**

Fed. R. Civ. P. 56 ............................................................................................. 1, 4

## NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT

PLEASE TAKE NOTICE that on December 9, 2015 at 1:00 p.m., before the Honorable Nathanael Cousins, United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 7, 4th Floor, Plaintiff/Counterclaim Defendant Enplas Display Device Corporation ("EDD") will, and hereby does, move this Court pursuant to Fed. R. Civ. P. 56(a) for an order granting summary judgment finding Claims 1, 2, 30, 31, 33-39, 41, 43 and 45-48[1] of U.S. Patent No. 6,473,554 ("the '554 Patent") invalid as anticipated under 35 U.S.C. § 102(b) in EDD's favor on the grounds set forth herein.

## POINTS AND AUTHORITIES

## I.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Claims 30, 31, 36, 38, 39, 41, 46 and 48 of the '554 Patent are invalid under 35 U.S.C. § 102(b) as anticipated by Japanese Published Patent Application No. H06-011365 ("Stanley").

2.   Whether Claims 1, 2, 30, 31, 33-39, 41-43 and 45-48 of the '554 Patent are invalid under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 3,774,021 ("Johnson").

3.   Whether Claim 2 is invalid under 35 USC § 112, ¶4 for failure to "set forth and then specify a further limitation of the subject matter claimed."

## II.   FACTUAL BACKGROUND

### A.   The '554 Patent

The '554 patent, entitled "Lighting Apparatus Having Low Profile," is directed to a low profile lighting apparatus for use as a backlight for illuminating a display.  (Exh. 1 at Abstract).[2] The lighting apparatus includes a waveguide coupled to a light source for injecting light into the waveguide.  (*Id.*)  The waveguide includes a plurality of elongate structures for ejecting light propagating within the waveguide through a predetermined surface of the waveguide.  (*Id.*)

---

[1]   Although SSC has provided a covenant not to sue with respect to certain asserted claims, EDD believes that the Court retains jurisdiction to decide issues of invalidity with respect to all asserted claims. (*See* Dkt. No. 153 at 4-6).

[2]   In this motion, "Exh. ___" refers to exhibits to the Declaration of Jeffrey T. Castellano, filed contemporaneously herewith.

Another embodiment of the waveguide includes a central region of reduced thickness that redirects light propagating within the waveguide. (*Id.*)  While the claims vary in their required elements, as named inventor, Dr. David Pelka testified, they all include a common element—total internal reflection or "TIR." (Exh. 2 at 99:12-16).[3]  The remaining elements of the claims at issue are discussed below in context.

### B.    The Stanley Prior Art Reference

Stanley discloses an apparatus for redirecting and distributing light from an LED in all circumferential directions. (Exh. 3 at Constitution).  The Stanley optical apparatus comprises an LED (**2**), mounted in a housing (**3**) below horizontal plane (**H**), an optical lens (**31**), which is comprised of two lens elements – **31a** and **31b**. (*See, e.g.*, *id.* at Figs. 1 and 2, shown annotated below).



The two elements of optical lens **31** have different structures and perform different functions. Refractive lens part **31a**, is made of a high refractive index material and a convex curved surface **D** configured to refract and diffuse incident light. (*See, e.g.*, *id.* at [0006]-[0007]).  In contrast, reflective lens part **31b** is made of a high refractive index material and has a curved surface **E**

---

3    Total internal reflection occurs when light passing through a medium hits a boundary between that medium and one with a lower index of refraction (the "refractive index interface").  If the angle at which the light hits the refractive index interface (the "angle of incidence") is equal to or greater than the "critical angle," the light is totally internally reflected. (Exh. 1 at 7:39-49).  If the angle of incidence is less than the critical angle, the light passes through the interface and is refracted. (*Id.*). While Claim 1 of the '554 patent discusses the critical angle with respect to a horizontal line (as opposed to "the normal" or vertical line), Dr. Pelka confirmed the language of Claim 1 is a different way of saying the same thing. (Exh. 2 at 85:11-87:18).

(having a vertical axis centered on the LED), which is configured to totally reflect the incident light so that it propagates in the direction of the edge wall of lens element **E**.  (*See, e.g., id.* at [0009]; *see also id.* at Figure 2, shown annotated below).



### C.    The Johnson Prior Art Reference

Johnson is directed to, *inter alia*, an optical apparatus for directing light from an LED into a waveguide.  The Johnson devices employ total internal reflection so that a predominant portion of the light emitted from at least one LED is totally internally reflected in a transverse direction, thereby efficiently coupling the reflected light into the waveguide.  (Exh. 4 (Johnson) at 1:23-29; 3:19-47; *see also* Exh. 4 at 4:36-68 (Claim 1)).

A preferred embodiment of what Johnson describes as the light emitting device module is shown in Figure 1.  (Exh. 4 at 1:33-37, Figure 1).[4]



---

[4]    Johnson states that the use of two LEDs (as depicted in the figures) is a preferred embodiment and is "in no way essential to the invention."  (Exh. 4 at 1:49-55).  Rather, as evidenced by the language of Claim 1, Johnson only requires a single LED.  (*Id.* at 4:48 ("at least one light emitting diode")).

Light emitted by the LED, which is incident upon the curved refractive index interface at an angle greater than the critical angle, is totally internally reflected (*see, e.g., id.* at Figure 1, elements b, c and d).  Once reflected, the light passes out the sidewall of the light emitting device module and is coupled into a waveguide.  (*Id.* at Figure 5 (shown below), 3:47-66; Exh. 5 at 85:11-22, 67:19-22; 78:10-14).



*FIG. 5*

Johnson teaches that a "predominant portion" of the light incident on this TIR surface will be reflected and coupled into the waveguide.  (Exh. 4 at 3:33-37).  As such, Johnson provides for a leaky TIR surface.  (*See, e.g.*, *id.* at Figure 1, element "a").  This "leakiness" is also expressly encompassed within the scope of Johnson's claimed invention; Claim 1 includes the express requirement that the approximately conically shaped depression have a contour "such that all of the light incident on the dome ***except that essentially at the apex*** will be internally reflected and coupled" into the waveguide.  (*Id.* at 4:61-65 (emphasis added)).

### III.  LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In support of its factual positions, the movant may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Once the moving party has met the initial burden of showing the absence of any genuine dispute, the burden shifts to the opposing party to present "'significant

1
2
3

probative evidence tending to support its claim or defense.'" *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 481 (9th Cir. 2000) (quoting *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991)).

4
5
6
7
8
9
10
11
12
13
14
15

A person shall not be entitled to a patent if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (Pre-AIA). A party challenging the validity of a patent bears the burden of proof by clear and convincing evidence. 35 U.S.C. § 282; *Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709, 719 (Fed. Cir. 1998). To be valid, the claims of the patent (*i.e.*, the invention) must be novel. 35 U.S.C. § 102. The anticipation analysis involves two steps. First, the court must construe the claims of the patent as a matter of law. *Key Pharms.*, 161 F.3d at 714. Second, the properly construed claims must be compared to the prior art. (*Id.*) Where the prior art describes or embodies, either expressly or inherently, each and every limitation of a patent claim, the claim is not novel and is said to be "anticipated." *In re NTP, Inc.,* 654 F.3d 1279, 1302 (Fed. Cir. 2011).

16

## IV.   ARGUMENT

17

### A.   Claims 30, 31, 36, 38, 39, 41, 46 and 48 are Anticipated by Stanley

18

#### 1.   Stanley is Prior Art to the '554 Patent

19
20
21
22
23

The critical date for whether a prior art publication qualifies as prior art to the '554 patent under §102(b) is more than one year before its priority date of December 12, 1996. Japanese Patent Application H06-011365 ("Stanley") was published February 10, 1994, well before the critical date and, therefore, qualifies as a prior art publication under 35 U.S.C. § 102(b). SSC does not contest that Stanley is prior art.

24

#### 2.   Stanley Discloses Every Element of Claim 30

25
26

Because Stanley discloses each element of Claim 30 of the '554 Patent the claim is invalid under 35 U.S.C. §102(b).[5] Claim 30 is directed to an optical apparatus.[6] Stanley is directed to an

27
28

---

[5] A detailed claim chart showing how each and every element of Claims 30, 31, 36, 38, 39, 41, 46 and 48 of the '554 Patent are met by Stanley is appended hereto as Exhibit 6.

1
2
3

optical apparatus—*i.e.*, a device comprising an LED (**2**) and two lens elements (**31a** and **31b**), of which **31b** totally internally reflects light from the LED to "the entire periphery in a horizontal direction."  (Exh. 3 at [0001]).

4

### a)      Stanley discloses "a light emitting diode (LED)"

5
6
7

The optical devices disclosed in the Stanley reference all comprise an LED.  (*See, e.g., id.* at [0001], [0005], [Claim 1]).  The LED (**2**) is also depicted in the embodiment shown in Stanley at Figures 1 and 2.  SSC does not contest that Stanley discloses this claim element.

8
9

### b)      Stanley discloses "an optical element having top and bottom opposing sides and an edge extending between the top and bottom opposing sides"

10
11
12
13

Stanley expressly discloses an "optical element having top and bottom opposing sides and an edge extending between the top and bottom opposing sides."  The two lens elements 31a and 31b can be either integrally formed or, alternatively, as two separate lens elements joined and coupled together:

14
15
16
17

> Here, since the refractive lens part 31a and the reflective lens part 31b are provided so as to be closely adjacent to each other, the light distribution by the two lens parts 31a and 31b can be continuous without interruption. Also, ***when the two lens parts 31a and 31b are coupled***, it is desirable to adjust the ***joining section*** to have illumination consistency, for example, such that both have the same luminosity.

18
19

(*Id.* at [0010] (emphasis added); *see also id.* at Figures 1 and 2, shown annotated below).  SSC does not contest that Stanley discloses this claim element.

20
21
22
23
24
25
26
27

 

28

_____

[6]  The preambles of the '554 Patent claims are non-limiting and SSC does not assert otherwise.

6        EDD MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY OF THE '554 PATENT

1

2

c)     Stanley discloses "said LED mounted at a predetermined location beneath a central portion of said optical element such that light from the LED enters the optical element"

3

4

5

Stanley expressly discloses this element.  As shown in Stanley Figures 1 and 2 (shown annotated below), LED **2** is centered on vertical axis **V**, and in alignment with the cusp formed by parabolic curves **E.**

6

7

8

9

10

11

12



13

14

During his deposition, SSC's expert, Dr. Moore, identified the "central portion" of the optical element shown in Figure 16A of the '554 Patent by circling it as shown below:

15

16

17

18

19

20



21

(*See* Exh. 5 at 64:23-65:6).  Thus, Stanley expressly teaches this element of Claim 30.

22

d)     **Stanley discloses the remaining elements of Claim 30**

23

Stanley teaches each of the remaining elements of Claim 30, which SSC does not contest.

24

25

26

27

28

<u>**First**</u>, Stanley teaches an "optical element including a TIR surface spaced from said bottom side and extending from a point above the LED outwardly towards said edges."  The Court has construed the term "TIR surface" to mean "a surface angled with respect to a light source to produce total internal reflection within a device."  (Dkt. No. 81 at 28).  Stanley expressly teaches this element as defined by the Court:

1

2
> *. . . the reflective lens part 31b has a shape formed by rotating a*
> *parabolic curve E about the vertical axis V*, similarly to the case of
> forming the refractive lens part 31a, *where the parabolic curve E has a*
> *focal point lying on the LED chip 2* and an optical axis direction

3
> horizontally oriented. In this case, the inner side of *the parabolic curve E*
> *is filled with a high refractive index material* such as an epoxy resin, etc.,

4
> *so that the light emitted from the LED chip 2 is totally reflected on the*
> *parabolic curve E and then radiated as parallel light rays in the*

5
> *horizontal axis direction H toward the entire circumference*.

6
(Exh. 3 at [0009] (emphasis added)).  This passage also teaches that the TIR surface defined by

7
parabolic curve **E**, extends from a point above the LED, which point is defined by the cusp lying

8
on vertical axis **V**.  (*See Id*. at Figure 2, shown in annotated form below).

9

10

11

12

13


14

15

16

17
**Second**, Stanley discloses the "TIR surface is positioned to receive light from the LED."

18
(*See*, *e.g.*, *id.* at [0009] and Figure 2, shown annotated above).

19
**Third**, Stanley discloses the "TIR surface curving towards the LED so as to form a cusp

20
above the LED."   (*See*, *e.g.*, *id.* at [0009] and Figure 2, shown annotated below).

21

22

23

24


25

26

27

28

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Fourth**, Stanley discloses the "curving TIR surface totally internally reflecting light rays such that reflected light rays propagate from the TIR surface towards the edge of the optical element."   (*See id.* at [0009] and Figure 2 shown annotated below).



Accordingly, Stanley teaches each and every element of Claim 30, rendering this claim invalid as anticipated under § 102(b).

### 3.  Stanley Discloses Every Element of Claims 31 and 36

#### a)  Claim 31

Claim 31 depends from Claim 30, adding the limitation "wherein said refractive index interface is circularly symmetric."  This additional element is disclosed by Stanley and is readily apparent from Stanley Figure 1.  SSC does not contest that Stanley discloses this claim element.

#### b)  Claim 36

Claim 36 depends from Claim 30, adding the limitation "wherein said optical element comprises polymeric material."  As discussed in detail above, Stanley teaches the optical device is made of "a high refractive index material such as an epoxy resin, etc."  (Exh. 3 at [0009]). Accordingly, Stanley anticipates Claim 36. SSC does not contest that Stanley discloses this claim element.

### 4.  Stanley Discloses Every Element of Claim 38

#### a)  Stanley discloses "a light emitting diode (LED)"

As discussed in the context of Claim 30, the optical devices disclosed in the Stanley reference all comprise an LED.  (*See, e.g.*, Exh. 3 at [0001], [0005] and Figures 1 and 2). SSC does not contest that Stanley discloses this claim element.

1

**b)      Stanley discloses "an optical element positioned to receive light from the light emitting diode"**

2

3

Stanley expressly discloses this element.  As discussed above in the context of Claim 30,

optical element **31b** is positioned to receive light from the LED, which is then reflected off of its

4

curved TIR surfaces **E**.

5

> the light emitted from the LED chip 2 is totally reflected on the parabolic
> curve E and then radiated as parallel light rays in the horizontal axis
> direction H toward the entire circumference.

6

7

(*Id.* at [0009]). SSC does not contest that Stanley discloses this claim element.

8

**c)      Stanley discloses "said element comprised of a refractive index interface having a curved shape that is symmetrical about an axis and converges to a location in a central portion of the optical element"**

9

10

This element of Claim 38 is expressly disclosed in the Stanley specification:

11

> . . . lens part 31b has a shape formed by rotating a parabolic curve E about
> the vertical axis V, . . .

12

13

(*Id.* at [0009]).

14

Lens element **31b** is made of a material having sufficiently "high refractive index material

15

such as an epoxy resin, etc., so that the light emitted from the LED chip 2 is totally reflected on

16

the parabolic curve E and then radiated as parallel light rays in the horizontal axis direction H

17

toward the entire circumference."  (*Id*. at [0009]; *see also id.* at Figures 1 and 2). SSC does not

contest that Stanley discloses this claim element.

18

19

**d)      Stanley discloses "said location and said light emitting diode lying substantially on said axis"**

20

The claimed "*location*" in this phrase finds antecedent basis in the prior text and refers to

21

the location of convergence of the parabolic curves forming the TIR surface.  Not only is this

22

element readily apparent from the Figures (shown in annotated form below), it is also expressly

23

stated in the Stanley specification:

24

> . . . *the reflective lens part 31b has a shape formed by rotating a
> parabolic curve E about the vertical axis V*, similarly to the case of
> forming the refractive lens part 31a, *where the parabolic curve E has a
> focal point lying on the LED chip 2* and an optical axis direction
> horizontally oriented.

25

26

27

(*Id.* at [0009] (emphasis added); *see also id.* at Figure 2, annotated below).  SSC does not contest

28

that Stanley discloses this claim element.

1

2

3

4

5

6

7

8



9

10

   e)  **Stanley discloses "said interface being shaped and positioned relative to said LED to reflect a substantial portion of light from said LED in a direction transverse to said axis"**

11   Stanley expressly discloses this element.  For example, the embodiment shown in Figure 2

12 depicts a curved TIR surface (**E**), which is shaped and positioned relative to the LED (**2**), such

13 that a substantial portion of the light from said LED is reflected in a direction transverse to the

14 vertical axis (*i.e.,* parallel to horizontal axis **H**).

15   . . . LED chip 2 [being] ***totally reflected on the parabolic curve E* and**

16 ***then radiated as parallel light rays in the horizontal axis direction H*** toward the entire circumference.

17 (*Id.* at [0009] (emphasis added)).  Accordingly, Stanley teaches each and every element of Claim

18 38, thereby rendering the claim invalid as anticipated under § 102(b).  To the extent Dr. Moore

19 argues that this claim element is not met because "substantial" does not encompass "all" (Exh. 8

20 at 57-58), his argument is counter to basic tenets of claim construction - including the canon that

21 claim terms are given their plain and ordinary meaning and the doctrine of claim differentiation.

22 *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005); *Liebel-Flarsheim Co. v. Medrad,*

23 *Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("doctrine of claim differentiation is at its strongest"

24 where "the limitation sought to be 'read into' an independent claim already appears in the

25 dependent claim").  Thus, "a substantial portion of light" includes all light.

26

27

28

**5.**     **Stanley Discloses Every Element of Claims 39, 41, 46 and 48**

**a)**     **Claim 39**

Claim 39 depends from Claim 38, adding the limitation "wherein said refractive index interface is circularly symmetric."  SSC does not contest that this additional element is disclosed by Stanley.

**b)**     **Claim 41**

Claim 41 depends from Claim 38, adding the limitation "wherein said refractive interface surface converges to form a cusp which terminates at said location."  As shown with respect to Claim 38 at section 4(c) above, this additional element is expressly disclosed by Stanley. Specifically, the parabolic curves **E** which form the TIR surface, converge to a cusp aligned with LED **2** on vertical axis **V** at a central location of the optical element.  (*See, e.g.*, Exh. 3 at [0009] and Figures 1 and 2).  SSC does not contest that Stanley discloses this claim element.

**c)**     **Claim 46**

Claim 46 of the '554 Patent depends from Claim 38, adding the limitation "wherein said optical element comprises polymeric material."  As shown with respect to Claim 36 above, this additional element is expressly disclosed by Stanley.  SSC does not contest that Stanley discloses this claim element.

**d)**     **Claim 48**

Claim 48 of the '554 Patent depends from Claim 46, adding the limitation "wherein said refractive index interface comprises an air/polymer interface." Parabolic curve E is formed in reflective lens part 31b. The parabolic curve E creates the interface that is air on one side and a high refractive index material such as an epoxy resin (*i.e.*, a polymer) on the other.  (*See, e.g.*, Exh. 3 at [0009] and Figures 1 and 2).  SSC does not contest that Stanley discloses this claim element.

**B.**     **Claims 1, 2, 30, 31, 33-39, 41-43 and 45-48 Are Anticipated by Johnson**

**1.**     **Johnson is Prior Art to the '554 Patent**

Johnson issued on November 20, 1973, well before the '554 Patent's critical date of December 12, 1996 and, therefore, qualifies as a prior art publication under 35 U.S.C. § 102(b).

**2.**     **Johnson Discloses Every Element of Claim 1[7]**

Claim 1 claims an illumination device.  As discussed above, Johnson is directed to an illumination device comprising an illumination coupler that totally internally reflects light from an LED incident upon its inclined refractive index interface, thereby coupling the reflected light into a waveguide.  In the exemplary embodiment, such coupling allows the light from an LED to travel through a telephone faceplate waveguide and illuminate the individual numbers on the phone keypad.

   **a)**     **Johnson discloses "a waveguide having an illumination coupler embedded in an interior region of said waveguide"**

Johnson expressly teaches this element.  The waveguide and its illumination coupler are exemplified in, for example Figures 4 and 5, which are described as follows:

> FIG. 4 is a plan view of the ***planar light guide*** which, for the particular application illustrated, is a faceplate for a pushbutton telephone dial; and
>
> FIG. 5 is a front section through 5—5 of FIG. 4 showing the ***interface coupling the light from the light emitting device into the light guide*** and from the light guide into a pushbutton to be illuminated.

(Exh. 4 at 1:42-48 (emphasis added)).[8]

Claim 1 only requires the illumination coupler comprise the "refractive index interface," which results in the light being totally internally reflected in the transverse direction.  This is consistent with the '554 specification, which, as Dr. Moore acknowledges, states:

> Upon illumination through the waveguide 132c and the waveguiding cylinders 302, and in combination with ***illumination couplers, such as a TIR region described above,*** the extractive display elements 300 produce a particularly bright, point-like (or line-like) light pattern at the apexes (or vertexes) of the solid polygons. ('554 Patent, 17:20-25) (discussing the curvilinear TIR portion of the illumination coupler)

(Exh. 8 at 11 (emphasis added)).  Johnson discloses the illumination coupler embedded in an interior region of the waveguide at for example, Figures 4 and 5, shown annotated below.

---

[7]  A detailed claim chart showing how each and every element of Claims 1, 2, 30, 31, 33-39, 41-43, and 45-48 of the '554 Patent is met by Johnson is appended hereto as Exhibit 7.

[8]  Although the planar light guide of Johnson is a waveguide as claimed in claim 1, EDD maintains its remaining contentions that under the court's interpretation of "waveguide," the Johnson dome element itself satisfies the "waveguide" element and anticipates claim 1.

Illumination coupler (i) embedded in an interior region of the waveguide and (ii) adapted to receive light from the LEDs within the interior region

FIG. 5

LED point sources

**b)** **Johnson discloses the claimed "illumination coupler"**

The remainder of claim 1 is directed to the limitations with respect to the illumination coupler: it must be adapted to receive light from a point source within the interior region of the waveguide and direct light between generally parallel top and bottom surfaces and outside the interior region of the waveguide and be comprised of a refractive index interface which is inclined relative to at least one of the top and bottom surfaces of the waveguide, resulting in TIR of the light such that it is captured and propagated into the coupled waveguide. Johnson meets each of these limitations.

As depicted for example in Figures 1 and 5, Johnson teaches a refractive index interface inclined with respect to the top and bottom surfaces of the waveguide. This structure is claimed in Johnson Claim 1 as:

> . . . the top surface having a depression therein extending toward the light emitting diode to form an approximately conically shaped, internally reflecting surface with respect to the light emitting diode.

(Exh. 4 at 4:56-61).

Johnson further expressly teaches that the refractive index interface is configured to reflect light rays emitted by the point source which propagate along a line that forms less than the critical angle of total internal reflection with respect to a line lying in one of said top and bottom surfaces, such that light rays which would otherwise pass out of said waveguide are captured for propagation between said top and bottom surfaces.[9]

---

[9]   Named inventor Pelka confirmed during his deposition that the claim language of Claim 1 of the '554 Patent was simply an alternative way of saying the surface resulted in the total internal reflection of the light off of the inclined refractive index interface.  (*See* Exh. 2 at 85:22-87:18).

1

2      This is both expressed in the text (*see, e.g.*, Exh. 4 at 3:38-45) as well as explicitly

exemplified by rays "b", "c" and "d" in Figure 1 which are captured for propagation between the

3      top and bottom surfaces of the waveguide, as shown in Figure 5.

4              **3.      Johnson Discloses Every Element of Claim 2**

5      Claim 2 of the '554 Patent depends from Claim 1, adding the limitation "wherein said

6      illumination coupler comprises a surface configured for total internal reflection of light incident

7      thereon."  As noted above, Dr. Pelka confirmed Claim 1 requires total internal reflection. (*See*

8      Exh. 2 at 85:22-87:18).  As such, Claim 2 is invalid under 35 USC § 112(d) for failure to "set

9      forth and then specify a further limitation of the subject matter claimed."

10     Regardless, it is undisputed that Johnson teaches total internal reflection.  (*See, e.g.*, Exh.

11     5 at 67:19-22, 82:16-83:2).  As such, in addition to being improperly dependent, Claim 2 is

12     anticipated.

13             **4.      Johnson Discloses Every Element of Claim 30**

14                 **a)      Johnson discloses "a light emitting diode (LED)"**

15     The optical devices disclosed in the Johnson reference all comprise at least one LED.

16     (*See*, *e.g.*, Exh. 4 at 1:33-37, 1:49-54, Figures 1-2, Figures 4-5).  Of particular importance, the

17     claimed invention of Johnson comprises "at least one light emitting diode." (*Id.* at 4:44-47).  SSC

18     does not contest that Johnson discloses this claim element.

19

20

21

22

23

24

25

26

27

28

### b) Johnson discloses "an optical element having top and bottom opposing sides and an edge extending between the top and bottom opposing sides"

Johnson teaches this element as show in, for example, Figure 1 (shown annotated below).



Thus, Johnson discloses this element of Claim 30.  SSC does not contest that Johnson discloses this claim element.

### c) Johnson discloses "said LED mounted at a predetermined location beneath a central portion of said optical element such that light from the LED enters the optical element"

During his deposition, SSC's expert, Dr. Moore, identified the "central portion" of the optical element shown in Figure 16A of the '554 Patent by circling it as shown below:



(*See* Exh. 5 at 64:23-65:6).

Because claim terms must be construed consistently throughout a single claim and across all claims, the phrase "central portion of the optical element" in Claim 38 must refer to the same region as when it is used in Claim 30. This element depends on the definition of the "central portion of the optical element." *Phillips*, 415 F.3d at 1314-1315 (when a term is not expressly

defined in the specification, reference to that term's usage in other claims is instructive such that "claim terms are normally used consistently throughout the patent, [therefore,] the usage of a term in one claim can often illuminate the meaning of the same term in other claims.").  Using Dr. Moore's definition of the term, Johnson clearly teaches that the LED is mounted beneath a central portion of the optical element.



(Exh. 4. at Figure 1 (annotations added); *see also* Exh. 4 at Claim 1).  Thus, Johnson discloses this element of Claim 30.

> **d)**   **Johnson discloses the remaining elements of Claim 30**

**First**, Johnson teaches "said optical element including a TIR surface spaced from said bottom side and extending from a point above the LED outwardly towards said edges."  This element is readily apparent from the Figure 1, below, with the TIR surface shown as the lower surface of the area shaded in yellow, which surface is spaced from the bottom surface (see Figure 5 above) and extending outwardly toward the edges (as shown in the annotated version of Figure 1 below).  SSC does not contest that Johnson discloses this claim element.



**Second**, Johnson teaches "said TIR surface positioned to receive light emitted by the LED."  This element is depicted in the figures and expressly stated in the specification and

claims.  The top surface of the optical element has a "depression extending toward the light emitting diode to form an approximately conically shaped, internally reflecting surface with respect to the [LED]. . . ." (Exh. 4. at 4:58-61).  The "conically shaped surface ha[s] an apex angle such that all of the light incident on the dome except that essentially at the apex will be internally reflected[.]" (*Id.* at 4:61-64).  The objective of this dome design is to minimize loss of light through this surface.  (*Id.* at 2:13-18).  Light reflected from the depression has a high probability of exiting the dome through the sidewall 18, the ultimate goal.  (*Id.* at 2:6-29).  The LEDs are designed according to principles of internal reflection so that the predominant portion of the light produced in each diode is emitted in a confined plane and with a uniform flux over 360°. (*Id.* at 1:22-29).  SSC does not contest that Johnson discloses this claim element.

**Third**, Johnson teaches "said TIR surface curving towards the LED so as to form a cusp above the LED."  This element is expressly disclosed in the text of the Johnson specification, figures and claims.  For example, Claim 1 of Johnson reads (in relevant part):  "[the] top surface [of the optical element has] a depression . . . ***extending toward the light emitting diode*** to form an approximately conically shaped, internally reflecting surface with respect to the light emitting diode . . . ." (*Id.* at 4:56-61 (emphasis added); Exh. 5 at 86:3-21).

**Fourth**, Johnson teaches "the curving TIR surface totally internally reflecting light rays such that reflected light rays propagate from the TIR surface towards the edge of the optical element."  This too is depicted in the figures and expressly stated in the specification and claims. For example, Johnson teaches light emitting devices designed according to principles of internal reflection so that the predominant portion of the light produced in each diode is emitted in a confined plane and with a uniform flux over 360°. (Exh. 4. at 1:22-29). The light can thereby be coupled efficiently into the waveguide.  (*Id.* at 3:37-46, Claim 1, Figure 1; *see also* Exh. 5 at 67:19-22, 82:16-83:2).  SSC does not contest that Johnson discloses this claim element.

### 5.     Johnson Discloses Every Element of Claims 31 and 33-37

#### a)     Claim 31

Claim 31 depends from Claim 30, adding the limitation "wherein said refractive index interface is circularly symmetric."  This additional element is disclosed by Johnson and is readily

apparent from Figure 2.  Thus, Johnson discloses the additional element of Claim 31, which SSC does not contest.

### b)  Claim 33

Claim 33 depends from Claim 30, adding the limitation "wherein said TIR surface is leaky such that some light emitted by the LED is transmitted therethrough."  This additional element is disclosed by Johnson.  As discussed above, Johnson provides for a TIR surface having a degree of "leakiness."  (*See, e.g.*, Exh. 4 at Figure 1, element "a").  This leakiness is achieved by the specific contour of the "apex" or tip of the cusp.  For example, Johnson Claim 1 includes the express requirement that the "the conically shaped surface hav[e] an apex angle such that all of the light incident on the dome *except that essentially at the apex* will be internally reflected and coupled" into the waveguide.  (Exh. 4 at 1:61-65 (emphasis added)).  The detailed description of Figure 1 of Johnson provides:

> FIG. 1 is a front-sectional view of a light emitting device module combining the usual diode chip with an encapsulating dome that directs a *predominant portion* of the light emitted from the diode into the horizontal plane normal to the section.

(*Id.* at 1:33-37 (emphasis added); *see also id*. at Claim 1 ("the conically shaped surface having an apex angle such that all of the light incident on the dome except that essentially at the apex will be internally reflected")).  Thus, Johnson expressly teaches leakage through the rounded cusp of the TIR surface.  (*See id.* at Figure 1, shown annotated below; Exh. 5 at 86:3-21).



Accordingly, Johnson discloses the additional element of Claim 33.

### c)  Claim 34

Claim 34 depends from Claim 30, adding the limitation "wherein said cusp is contoured to permit leakage of light through said central portion of said refractive index interface."  This too is

expressly depicted in the figures and recited in the specification and claims.  (*See, e.g.*, Exh. 4 at Figure 1, shown annotated above, and 4:61-65 ("the conically shaped surface having an apex angle such that all of the light incident on the dome except that essentially at the apex will be internally reflected"); Exh. 5 at 86:3-21).   Thus, Johnson discloses the additional element of Claim 34.

### d)      Claim 35

Claim 35 depends from Claim 30, adding the limitation "wherein said cusp is rounded to permit leakage of light through said TIR surface."  This is expressly depicted in the figures and recited in the specification and claims.  (*See, e.g.*, Exh. 4 at Figure 1 (shown annotated above disclosing rounded cusp allowing leakage of light ray "a"), 4:61-65; Exh. 5 at 86:3-21).   Thus, Johnson discloses the additional element of Claim 35.

### e)      Claims 36 and 37

Claim 36 depends from Claim 30, adding the limitation "wherein said optical element comprises polymeric material," with Claim 37 further limiting the polymeric material to "material selected from the group comprising acrylic, polycarbonate, and silicone."   Johnson expressly teaches the optical element can be any of several optically transparent materials, such as a silicone, epoxy or acrylic resin.  (Exh. 4 at 1:65-67).   Thus, Johnson discloses the additional elements of both Claims 36 and 37, which SSC does not contest.

### 6.      Johnson Discloses Every Element of Claim 38

### a)      Johnson discloses "a light emitting diode (LED)"

As demonstrated with respect to Claim 30 above, the optical devices disclosed in the Johnson reference all comprise at least one LED.  SSC does not contest that Johnson discloses this claim element.

### b)      Johnson discloses "an optical element positioned to receive light from the light emitting diode"

Johnson expressly teaches this element.  Specifically, Johnson teaches an optical element – the TIR surface formed from the depression in the top surface of the dome, positioned to receive light from the LED.  (*See, e.g.*, Exh. 4 at 4:51-65).  SSC does not contest that Johnson discloses this claim element.

1

### c) Johnson discloses "said element comprised of a refractive index interface having a curved shape that is symmetrical about an axis and converges to a location in a central portion of the optical element"

2

3   This element is described in the forgoing passage from Johnson Claim 1 and depicted in,

4   for example, Figure 1 (shown annotated below).



5
6
7
8
9
10

11   As discussed above, during his deposition Dr. Moore identified the "central portion" of

12   the optical element shown in Figure 16A of the '554 Patent by circling it as shown below:

13



14
15
16
17
18
19
20

21   (*See* Exh. 5 at 64:23-65:6).  Thus, it is undisputed that the Johnson refractive index interface has a

22   curved shape, is symmetrical about its central axis and converges to "a location in a central

23   portion of the optical element."  (*See, e.g.*, Exh. 4. at Figures 1 and 2, 2:2-6, 2:30-38, 4:51-65,

24   64:12-65:18).

25   ### d) Johnson discloses "said location and said light emitting diode lying substantially on said axis"

26   The claimed "location" of the claim element finds antecedent basis in the prior text and

27   refers to the location of convergence of the curved surfaces that form the refractive index

28

interface (*i.e.,* the TIR surface), with the location and LED lying substantially on the symmetrical axis.   This element is expressly disclosed by Johnson.  Specifically, Johnson Claim 1 comprises:

> . . . ***at least one light emitting diode***,
>
> . . .
>
> the top surface having a depression therein ***extending toward the light emitting diode*** to form an approximately conically shaped, internally reflecting surface with respect to the light emitting diode . . . .

(*Id*. at 4:47-61 (emphasis added); *see also* Exh. 9 at 242:8-22; Exh. 5 at 69:7-69:25).[10]

> **e)    Johnson discloses "said interface being shaped and positioned relative to said LED to reflect a substantial portion of light from said LED in a direction transverse to said axis"**

Johnson describes the curved TIR surface as shaped and positioned relative to the LED, such that a predominant portion (*i.e.,* substantial portion) of the light from said LED is totally internally reflected in a direction transverse to the vertical axis resulting in the reflected light exiting through sidewall 18 into coupled waveguide 5.   (Exh. 4 at 1:33-37, 1:64-2:6, Figure 1).

As with Stanley, Dr. Moore's only basis for arguing Claim 38 is not anticipated is based upon an incorrect construction of the claim term "substantial portion of light" that would exclude the reflection of "all light."  (Exh. 8 at 17).  However, Johnson does not teach reflection of "all" light, but instead expressly teaches reflection of a "predominant portion" of the light, with the apex of the TIR cusp be contoured to allow the transmission of light (*i.e.,* leakage).  (*See, e.g.*, Exh. 4 at 1:33-37, 4:61-63; *see also id.* at Figure 1, element "a"; Exh. 5 at 86:3-21).

> **7.    Johnson Discloses Every element of Claims 39, 41-43 and 45-48**

> **a)    Claim 39**

Claim 39 depends from Claim 38, adding the limitation "wherein said refractive index interface is circularly symmetric."  This additional element is disclosed by Johnson as shown in, for example, Figure 2.  (Exh. 4. at Figure 2).  This element is also expressly claimed in Johnson Claims 2 and 3.  (*Id*. at 5:1-7).  Accordingly, Johnson anticipates Claim 39.  SSC does not contest that Johnson discloses this claim element.

---

[10]   Johnson is not limited to the embodiment shown in the figures, depicting two LEDs.  Rather, Johnson explicitly states that the figures depict a preferred embodiment and that use of two LEDs is "in no way essential to the invention."  (Exh. 4 at 1:49-56).

### b)      Claim 41

Claim 41 depends from Claim 38, adding the limitation "wherein said refractive interface surface converges to form a cusp which terminates at said location."  This additional element is disclosed by Johnson.  As shown in, for example, Figure 1, shown annotated below:



(Exh. 4 at Figure 1 (annotations added)).  Accordingly, Johnson anticipates Claim 41.  SSC does not contest that Johnson discloses this claim element.

### c)      Claim 42

Claim 42 depends from Claim 41, adding the limitation "wherein said cusp is contoured to permit leakage of light through said central portion of said refractive index interface."  This additional element is disclosed by Johnson for the same reasons as discussed with respect to Claim 33 above.  (Exh. 5 at 86:3-21.)  Accordingly, Johnson anticipates Claim 42.

### d)      Claim 43

Claim 43 depends from Claim 42, adding the limitation "wherein said cusp is rounded to permit leakage of light through said central portion of said refractive index interface."  As discussed with Claim 35 above, Johnson teaches a rounded cusp.   (Exh. 5 at 86:3-21).  Accordingly, Johnson anticipates Claim 43.

### e)      Claim 45

Claim 45 depends from Claim 38, adding the limitation "wherein said refractive index interface is leaky such that some light emitted by the light emitting diodes transmitted therethrough."  This element is met for the reasons set forth with respect to Claims 33, 42 and 43.  (Exh. 5 at 86:3-21).  Accordingly, Johnson anticipates Claim 45.

### f)      Claim 46

Claim 46 depends from Claim 38, adding the limitation "wherein said optical element comprises polymeric material."  Johnson discloses this additional element.  Specifically:

> The dome encapsulant **17** is molded around the lead frame and the diodes in a conventional manner.  The encapsulant can be any of several optically transparent materials, such as a silicone, epoxy or acrylic resin.

(Exh. 4. at 1:65-67).  Accordingly, Johnson anticipates Claim 46.  SSC does not contest that Johnson discloses this claim element.

### g)      Claim 47

Claim 47 depends from Claim 46, adding the limitation "wherein said optical element comprises material selected from the group comprising acrylic, polycarbonate, and silicone."  As shown with respect to Claim 46, Johnson teaches the optical element can be made from "silicone, epoxy or acrylic resin."  (Exh. 4 at 1:65-67).  Accordingly, Johnson anticipates Claim 47.  SSC does not contest that Johnson discloses this claim element.

### h)      Claim 48

Claim 48 depends from Claim 46, adding the limitation "wherein said refractive index interface comprises an air/polymer interface."  Johnson discloses this additional element. The dome encapsulant can be any of several optically transparent materials, such as a silicone, epoxy or acrylic resin.  (Exh. 4 at 1:65-67).  The refractive index interface creates an interface that is air on one side and a high refractive index material such as a silicone, epoxy or acrylic resin (*i.e.*, a polymer) on the other. (*See, e.g.*, *id.* at and Figure 1).  Accordingly, Johnson anticipates Claim 48. SSC does not contest that Johnson discloses this claim element.

1

## V.   __CONCLUSION__

2

3       For the foregoing reasons, EDD respectfully requests the Court grant EDD's Motion for

4   Summary Judgment of Invalidity of Claims 1, 2, 30, 31, 33-39, 41, 43 and 45-48 of the '554

    Patent as Anticipated under § 102(b).  A proposed order is submitted herewith.

5                                              Respectfully submitted by,

6
    Dated:  October 30, 2015                   NAGASHIMA & HASHIMOTO
7

8                                              _/s/ Marc R. Labgold_
                                               Marc R. Labgold, Ph.D.
9                                              Attorneys for Plaintiffs / Counterclaim
                                               Defendants _Enplas Display Device_
10                                             _Corporation_

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28