UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ENPLAS DISPLAY DEVICE
CORPORATION, et al.,

           Plaintiffs,

    v.

SEOUL SEMICONDUCTOR
COMPANY, LTD.,

          Defendant.

Case No. 13-cv-05038 NC

**ORDER RE: *DAUBERT* MOTIONS**

Re: Dkt. Nos. 174, 176

      In this patent infringement case, both plaintiff Enplas Display Device ("Enplas") and defendant Seoul Semiconductor Company, Ltd. ("SSC") move to exclude expert testimony. The expert testimony of Dr. Moore, SSC's infringement expert; Julie Davis, SSC's damages expert; and Dr. Pollock, Enplas' infringement expert, are all at issue. Because the Court finds that the parties' concerns relate to disputes of fact and the credibility of the experts, the Court DENIES the motions. However, consistent with the Court's prior order excluding the "other Enplas lenses" from this case, the Court similarly excludes any opinion on the infringement of those lenses from the expert reports and testimony.

# I.    BACKGROUND

      On August 28, 2015, SSC submitted expert reports on infringement, from Moore, and on damages, from Davis. On November 12, 2015, SSC supplemented the expert

Case No. 13-cv-05038 NC

reports, correcting a data entry error.  Enplas moved to strike the supplemental reports, arguing that they were untimely.  On December 21, 2015, the Court denied Enplas' motion to strike.  Now, the Court considers the parties' *Daubert* motions.  In their motions, the parties included deposition testimony and excerpts of the expert reports.  On December 9, 2015, the Court held a hearing on the motions.

## II.   STANDARD OF REVIEW

"A district court's decision to admit expert testimony under *Daubert* in a patent case follows the law of the regional circuit."  *GPNE Corp. v. Apple, Inc.*, No. 12-cv-02885 LHK, 2014 WL 1494247, at *1 (N.D. Cal. Apr. 16, 2014) (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003)).

Federal Rule of Evidence 702 provides that an expert witness may testify in the form of an opinion if "the testimony is the product of reliable principles and methods." "The duty falls squarely upon the district court to 'act as a gatekeeper to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards.'"  *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)).  Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrel Dow Pharm.*, 509 U.S. 579, 597 (1993).

The Court's duty is to evaluate the soundness of the expert's methodology, not the correctness of the expert's conclusions.  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Id.*  The Court has broad discretion and flexibility in assessing an expert's reliability.  *Estate of Barabin*, 740 F.3d at 463.

While pretrial "Daubert hearings" are commonly used, they are not required. *United States v. Jawara*, 474 F.3d 565, 582 (9th Cir. 2007).

//

### III.  DISCUSSION

Three expert reports are at issue: (A) Moore; (B) Davis, and (C) Pollock.  The Court considers each expert's testimony in turn.

### A.    Moore

Preliminarily, the Court notes that it considers Moore's supplemental expert report for this motion.  The Court previously admitted Moore's supplemental report.  Thus, the Court will analyze the testimony and expert opinions that Moore intends to offer to the jury, not the erroneous opinions in the original report.  The Court finds that no additional briefing is necessary, as the parties considered Moore's supplemental report in preparation for the hearing.  Also, the Court determined that Moore's revisions are related to data entry errors, not changes in methodology, so the parties' arguments made on the original reports are equally applicable.

Moore is SSC's infringement expert.  Enplas asserts that Moore's opinion does not follow reliable methodology because (1) Moore used third party Breault Research Organization ("BRO")'s data, which he did not personally review; (2) BRO made several errors: in measuring the thickness of the lenses, an incorrect lens-to-LED gaps, incorrect LED dimensions, and the wrong lens shape; and (3) Moore is not qualified to opine on the meaning of claims.  Enplas argues that Moore's data is not reproducible, in part because Enplas does not have the data inputs for the ray trace simulations.  Enplas also argues that Moore's testimony regarding the "other Enplas lenses" should be excluded.

In response, SSC argues that BRO is listed on the patents as a preferred organization to perform ray trace simulations, and that BRO tested the actual lenses found in LCD screens sold in the United States.  SSC also argues that BRO's "errors" are simply differences of opinion between SSC and Enplas as to what data inputs should be used.  Finally, SSC states that Moore is qualified as a person of ordinary skill in the art, so he can opine about the patent claims.

//

### 1.    Moore's Use of BRO Data

First, Moore's use of a third-party organization to perform the ray trace simulations appears to be a routinely used methodology, as BRO's software is specifically listed in the '554 patent.  Enplas contends that any diligent expert would have been more involved in overseeing the simulation process.  However, Federal Rule of Evidence 703 envisions the likelihood that an expert would receive data from a party or a third-party.  The rule permits an expert to "base an opinion on any facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  Enplas' arguments go to the credibility of Moore's conclusions, not the appropriateness of his methodology.

### 2.    BRO's Data Errors

Second, the Court finds that Enplas' arguments as to BRO's calculation errors go to the weight of Moore's testimony and the facts upon which he bases his conclusion, not Moore's methodology.  In essence, Enplas argues that Moore's measurements are incorrect, not his method of calculation.  For example, both parties use ray trace simulations, which Enplas states are commonly used in the field of light optics to show how light emitted from a light source passes through an illuminated structure.  Both parties acknowledge that this is the appropriate method for analyzing infringement, and both parties agree on the basic variables that should be input to create a ray trace simulation.  Whether SSC measured correctly or used the appropriate inputs are factual questions for a jury to decide.  The Court finds that Enplas' motion raises questions of fact, not an issue of methodology.

### 3.    Claim Construction Opinions

Third, Enplas argues that Moore gives legal opinions on claim construction, while SSC responds that Moore is simply interpreting the patent as a person of ordinary skill in the art.  The construction of terms found in patent claims is a question of law to be determined by the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  A disputed claim term should be construed in light of its "ordinary and customary meaning," which is "the meaning that the

United States District Court
Northern District of California

term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  To the extent that Moore intends to testify on claim construction, this testimony is excluded.  However, Moore is permitted to testify as a person of ordinary skill in the art would interpret the patent or find infringement.

### 4.   "Other Enplas Lenses"

The Court has already determined that the "other Enplas lenses" are not at issue in this case.  As such, the Court agrees with Enplas that Moore should be excluded from opining on infringement of those lenses.

In conclusion, the Court DENIES Enplas' motion to exclude Moore's testimony; however, Moore may not testify on claim construction and on the "other Enplas lenses."

At the hearing, Enplas alleged that Moore's methodology is not reproducible because SSC has never provided Enplas with BRO's raw data.  SSC responded that this data is useless, as it is simply an input for the ray trace simulation.  However, SSC proffered to provide Enplas with the raw data.  As with the Court's prior order, the Court is amenable to including further production of BRO data or the data used by Moore.  The parties must meet and confer, and stipulate to or request the necessary additional discovery by January 6, 2016.

### B.   Davis

Julie Davis is SSC's damages expert.  Enplas moves to exclude her report because (1) it is based on Moore's opinions; and (2) it includes consideration of the "other Enplas lenses."  Because the Court finds Moore's testimony admissible, Davis' testimony is also admissible.

As to the "other Enplas lenses," the Court has already excluded infringement findings and expert opinions on these lenses because they are not part of this case.  Davis' opinion as to the damages in this case relies on the factors outlined in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) to determine a reasonable royalty for licensing the patents-in-suit.

United States District Court
Northern District of California

The *Georgia-Pacific* factors are used in the "hypothetical negotiation" approach to determining a reasonable royalty. The hypothetical negotiation approach "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). "The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement." *Id.* at 1325. *Georgia-Pacific* lists fifteen factors for an expert to consider, including, "the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use," and "the amount which a prudent license—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit." *Georgia-Pacific*, 318 F. Supp. at 1120.

Davis has two damages opinions in her expert report. First, she assumes that in the hypothetical negotiation between the parties, Enplas would want a license that covers all of its accused and potentially infringing lenses. This analysis considers Enplas' entire product line, including the "other Enplas lenses." In Davis' second damages opinion, she excludes all mention of the other lenses, and considers the reasonable royalty for only the seven lenses in the lawsuit. Enplas argues that only Davis' second opinion is appropriate.

The Court finds that the *Georgia-Pacific* factors are a reasonable methodology for Davis to employ, and that those factors require Davis to consider pragmatically a hypothetical negotiation between the parties. Such a hypothetical negotiation might include consideration of an accused infringer's entire line of product. Thus, to the extent that Davis' testimony is premised on the assumption that Enplas' other lenses are infringing, this testimony is excluded. However, the Court denies Enplas' request to exclude Davis' testimony regarding the other lenses entirely. Because at this stage, the Court has a limited view of the case as the parties intend to present it, the Court finds that such careful carving of Davis' permissible testimony is more appropriate for a motion in

limine.

### C.    Pollock

Pollock is Enplas' infringement and invalidity expert.  SSC moves to exclude Pollock's testimony because Pollock (1) improperly ignored the Court's construction of the term "waveguide"; (2) incorrectly interpreted the term "leaky"; and (3) incorrectly determined that the accused Enplas lenses are "flat."  Enplas responds that (1) Pollock applied the Court's interpretation of waveguide; (2) Pollock's interpretation of the term "leaky" is consistent with the understanding of a person of ordinary skill in the art; and (3) Pollock's opinion does not depend on the "flatness" of the lens surface.  Enplas also argues that SSC fails to identify the specific portion of Pollock's report that it seeks to exclude.

As to SSC's first argument, the Court finds that SSC's concerns are unfounded because Pollock states in his deposition that he applies the Court's claim construction to the term waveguide.

Second, the Court has not construed the term "leaky."  Thus, the Court finds that Pollock is admissible as a person of ordinary skill in the art, and he may apply that term as it is generally used.  In the context of claim 33 of the '554 patent, the Court agreed with SSC's interpretation of the term "totally internally reflecting" and concluded that the proper construction is "reflecting by total internal reflection."  The Court expects Pollock's testimony to be consistent with the Court's construction of claim 33.  On the present record, Pollock testified that he applies the Court's claim construction throughout his expert report.

As to Pollock's conclusion that the lenses are flat, the Court finds that this is an issue of fact and a question of Pollock's conclusions, not his methodology.

Thus, the Court DENIES SSC's motion to exclude Pollock's testimony.

## IV.   CONCLUSION

In conclusion, the Court DENIES Enplas' motion to exclude Moore, but excludes his testimony on claim construction and the "other Enplas lenses."  The Court partially DENIES Enplas' motion to exclude the testimony of Davis, but excludes any assumption

made by Davis that the "other Enplas lenses" are infringing, as there is no basis for this assumption.  The Court DENIES SSC's motion to exclude Pollock's testimony.

The Court has already permitted the parties an opportunity to extend discovery as to Moore's supplemental expert report.  To the extent that the parties wish for further limited discovery of the underlying data that Moore relies on, the parties must stipulate to or propose such discovery by January 6, 2016.  The Court does not intend to move the pretrial conference date or trial date, so any additional discovery must occur by February 10, 2016, when pretrial motions will be due.

**IT IS SO ORDERED.**

Dated:  December 22, 2015



NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California