LATHAM & WATKINS LLP
Ryan R. Owens (Bar No. 269370)
*ryan.owens@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

LATHAM & WATKINS LLP
Charles H. Sanders (*pro hac vice*)
*charles.sanders@lw.com*
John Hancock Tower, 27th Floor
200 Clarendon Street
Boston, Massachusetts 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001

LATHAM & WATKINS LLP
Lawrence J. Gotts (*pro hac vice*)
*lawrence.gotts@lw.com*
555 Eleventh Street, N.W. Suite 1000
Washington, D.C. 2004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

LATHAM & WATKINS LLP
Michelle P. Woodhouse (260669)
*michelle.woodhouse@lw.com*
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600

Attorneys for Defendant
SEOUL SEMICONDUCTOR CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ENPLAS DISPLAY DEVICE CORPORATION; ENPLAS TECH SOLUTIONS, INC.; and ENPLAS (U.S.A.), INC.,

Plaintiff and Counterclaim Defendants,

v.

SEOUL SEMICONDUCTOR CO., LTD.,

Defendant and Counterclaim Plaintiff.

CASE NO. 3:13-CV-05038-NC

**DEFENDANT SSC'S MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF CLIFFORD R. POLLOCK, PH.D REGARDING NON-INFRINGEMENT**

Assigned to Hon. Nathanael M. Cousins

Date: March 2, 2016
Time: 1:00 p.m.
Location: Courtroom 7, 4th Floor, San Jose

## TABLE OF CONTENTS


| | | | Page |
|---|---|---|---|
| I. | | INTRODUCTION | 1 |
| II. | | STATEMENT OF FACTS | 3 |
| | A. | SSC Promptly Gave Notice Of Its Intention To Correct Prof. Moore's Report; EDD Denied Any Need To Correct Prof. Pollock's Report | 3 |
| | B. | EDD Delayed Notifying SSC Of Its Intention To Seek Further Discovery And To Supplement Prof. Pollock's Report Until After The January 6, 2016 Deadline | 5 |
| | C. | Without Conferring With SSC And Seeking Leave Of Court, EDD Served A Supplemental Pollock Report That Goes Well Beyond The Scope Of The Limited Corrections To Prof. Moore's Report | 6 |
| III. | | LEGAL STANDARD | 7 |
| IV. | | ARGUMENT | 9 |
| | A. | Despite The Court's Instructions, EDD Failed To Meet And Confer And Seek The Court's Permission To Serve A Supplemental Expert Report | 9 |
| | B. | EDD's Supplemental Expert Report Is Not A Proper Supplementation Under Rule 26(e) | 10 |
| | C. | SSC Would Be Prejudiced By EDD's Late And Improper Supplementation | 12 |
| | D. | EDD Cannot Show Good Cause To Modify The Scheduling Order To Allow Its Untimely Rebuttal Report | 13 |
| V. | | CONCLUSION | 13 |

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Coles v. Perry*,
217 F.R.D. 1 (D. D.C. 2003) .......... 8

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
No. 12-CV-04967-WHO, 2014 WL 1899616 (N.D. Cal. May 12, 2014) .......... 8

*Gerawan Farming, Inc. v. Rehig Pacific Co.*,
2013 WL 1982797 (E.D. Cal. May 13, 2013 .......... 7

*Holzhauer v. Golden Gate Bridge, Highway & Transportation Dist.*,
Case No. 13-cv-02862-JST (N.D. Cal. June 11, 2015) .......... 8

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) .......... 13

*Keener v. United States*,
181 F.R.D. 639 (D. Mont. 1998) .......... 8

*Levinson v. Westport Nat. Bank*,
2013 WL 3280013 (D. Conn. June 27, 2013) .......... 8, 12

*Luke v. Family Care & Urgent Med. Clinics*,
323 F. App'x 496 (9th Cir. 2009) .......... 8

*Rodman v. Safeway, Inc.*,
2015 WL 5315940 (N.D. Cal. Sept. 11, 2015) .......... 12

*Sigliano v. Mendoza*,
642 F.2d 309 (9th Cir. 1981) .......... 10

### OTHER AUTHORITIES

Advisory Comm. Notes to Rule 26(e) 1993 Amendments .......... 7

### RULES

Fed. R. Civ. P. 16(b)(4) .......... 13

Fed. R. Civ. P. 26(a)(3) .......... 6

Fed. R. Civ. P. 26(e) .......... passim

## I. INTRODUCTION

Seoul Semiconductor Co., Ltd. ("SSC") moves to strike the untimely and improper Supplemental Rebuttal Expert Report of Clifford R. Pollock, Ph.D. Regarding Non-Infringement ("Supplemental Pollock Report") served on SSC last week without any explanation, any meet and confer, and not even a request for leave of this Court. Last month, Enplas Display Device Corporation ("EDD") told SSC that it would not be supplementing Dr. Pollock's non-infringement expert report to correct errors and told the Court that Dr. Pollock would only "potentially" supplement his report after reviewing the corrected ray traces in Prof. Moore's expert report. Thus, it came as a surprise to SSC when, just days after the Court's January 6, 2016 deadline for EDD to request additional discovery, EDD announced for the first time that it planned to supplement Dr. Pollock's report, without providing any details on the nature or scope of the intended supplementation. In its January 11, 2016 status report to the Court, SSC objected to allowing EDD to provide supplementation this late in the case given that it might require a further deposition of Dr. Pollock, the reopening of discovery, and a delay in pre-trial deadlines. On January 13, 2016, this Court denied EDD's request for further discovery since it had not met the January 6th deadline. The Court also indicated that given the "tight curve" before trial, the parties would need to meet and confer with each other and then provide a stipulation or motion to the Court before serving a supplemental expert report. EDD has ignored this Court's instructions and served a broad-based Supplemental Pollock Report on January 19, 2016, without conferring with SSC or seeking leave of this Court.

Even were it not untimely, the Supplemental Pollock Report is not a proper supplementation under Rule 26(e). Although it purports to be a "response" to Prof. Moore's corrected report, the Supplemental Pollock Report is, in fact, devoted almost entirely to bolstering Dr. Pollock's initial rebuttal report, served October 7, 2015, and to providing opinions that expand upon attorney arguments made in EDD's October and November 2015 briefing in its *Daubert* motion and motion to strike. For example, Dr. Pollock devotes several pages of his 17-page supplemental report to criticizing Prof. Moore's LED-to-lens gap measurements and providing new opinions and arguments based upon information purportedly recently obtained

from EDD's in-house employee, Mr. Akiyama, in an attempt to rehabilitate Dr. Pollock's own flawed gap analysis. (*See* Ex. 1[1] at ¶¶27-29, 57-66.) But Prof. Moore's corrected report made no changes to his LED-to-lens analysis, and nothing in Prof. Moore's corrected report prompts, justifies, or warrants Dr. Pollock's new opinions that could have been offered at the time of his initial expert report. Every other section of the Supplemental Pollock Report similarly appears to either re-hash and/or seek to expand upon opinions in Dr. Pollock's original rebuttal report, or to be cribbed from EDD's *Daubert* brief and unrelated to Prof. Moore's thickness correction in his supplemental report. Rather than "supplementing" Dr. Pollock's expert report, the Supplemental Pollock Report attempts to provide wholesale new opinions and evidence that should have been included in Dr. Pollock's original report. EDD appears to take the position that a proper response to Prof. Moore's correction is to provide any opinion on any issue that Prof. Moore *failed* to address in his corrected report. However, the time to point out purported deficiencies in Prof. Moore's original report (that EDD contends were *not addressed* in Prof. Moore's corrected report) was in Dr. Pollock's original rebuttal report. Any other conclusion leads to the absurd notion that anything and everything that is not in Prof. Moore's corrected report is "responsive" to Prof. Moore's correction.

SSC has consistently made clear that it opposed any such supplemental report, and that additional discovery and relief from other Court deadlines would be required in the event of any such supplementation. SSC never contemplated that EDD would seek a "do over" and wholesale rebuttal largely unrelated to Prof. Moore's specific corrections. EDD's broad rebuttal—unprompted by the specific and limited corrections made by Prof. Moore—is untimely and should not be permitted at this late stage of the case. This is particularly so in light of EDD's own protests in November 2015 that supplemental experts were not warranted, and its representations to SSC that it would not be supplementing Dr. Pollock's expert report. There is no time under the current pretrial deadlines in the case for SSC to depose Dr. Pollock on these new theories and facts—which could have been included in Dr. Pollock's original report—and to

[1] References to "Ex." refer to Exhibits to the accompanying Declaration of Ryan R. Owens.

adapt its trial preparation accordingly. SSC should not be prejudiced on the eve of trial by EDD's failure to timely supplement.

## II. STATEMENT OF FACTS

### A. SSC Promptly Gave Notice Of Its Intention To Correct Prof. Moore's Report; EDD Denied Any Need To Correct Prof. Pollock's Report

As has been discussed in other briefing, Breault Research Organization ("BRO") made a data entry error in some of the ray tracings relied upon by Prof. Moore in his opening infringement expert report. The same day SSC learned of the error—October 28, 2015—SSC's counsel informed EDD's counsel by email of the error in the BRO analysis and of SSC's plan to correct the error, offering EDD an opportunity re-depose Prof. Moore and extend the summary judgment and *Daubert* deadlines:

> Following last Friday's deposition of Prof. Moore, we raised with BRO the fact raised by you at the deposition that at least some of the lenses appeared to have the same thickness between the top and bottom indentations. BRO went back to their computer simulations of the lenses and determined that there was in fact an error in the thickness for some of the computer simulations. According to BRO, although the thickness of each lens was separately measured by ACT, BRO inadvertently used the measured thickness for the #9854D lens in its simulations of other lenses. They have now corrected that in their simulations and are providing us with new analyses for lenses other than #9854D (which included the correct thickness and is unchanged).
>
> We plan to supplement Prof. Moore's expert report with these corrected analyses once we receive them. Once supplemented, we will also provide Prof. Moore for deposition in D.C. at SSC's expense on the supplemental information, if you desire.
>
> We are mindful of the upcoming deadline for summary judgment and Daubert motions, and would have no objection to jointly stipulating to an extension of Enplas's deadlines for the filing of its motions to the extent it has any concerns that such motions could be impacted by Prof. Moore's supplementation.

(Dkt. 173 at Ex. C.)

EDD did not respond to this email before it filed its summary judgment motions and motions to exclude on October 30, 2015. On November 2, 2015, EDD finally responded to SSC's emails from the prior week arguing that "[t]he rules do not permit the supplementation you apparently intend to submit" and "we object to any attempt to supplement." (Dkt. 254 at Ex. 5.) The email also noted that "[u]nder the current CMS, the deadlines for expert reports, expert discovery and dispositive motions has passed" and that they would "oppose any motion for leave

you might file." (*Id*.)

Following its identification of the error discussed above, BRO corrected the erroneous data entry point in its models and performed corrected ray tracings on November 4th and 5th, 2015. Based on this corrected data, SSC and Prof. Moore replaced the ray tracings in Exhibits C, D, E, H, and I to his infringement expert report and made other minor corrections in his corrected report, served November 11, 2015. Prof. Moore did not add any new opinions, expand his previous opinions, or add opinions in rebuttal to Prof. Pollock's rebuttal non-infringement expert report. The only changes were confined to correcting the ray tracing data entry point.

EDD sought to exclude Prof. Moore's testimony on the grounds that EDD had purportedly provided the "correct" data for the accused lenses and that Prof. Moore should have relied upon this allegedly correct data rather than the BRO analysis. (Dkt. 174 at 10-14.) But SSC responded by pointing to the extensive errors and inconsistencies in the allegedly "correct" data that Prof. Pollock had relied upon in his report. (Dkt. 208 at 7-13.) On November 30, 2015, SSC's counsel sent EDD's counsel an email regarding the errors in the data relied upon by Prof. Pollock in his report. This email concluded by stating:

> At this juncture, EDD has been on notice of these serious issues for at least nearly three weeks, and to date, has failed to make efforts to correct the aforementioned errors in its discovery responses, document production, and expert's report, consistent with its duty to do so, or even to acknowledge them in the face of our direct inquiries. We request that you immediately acknowledge these errors and confirm that you will supplement, and provide us with a date certain when you will supplement your document production, interrogatory responses, Rule 30(b)(6) testimony and expert report. **Also, please let us know if you intend to move for leave to provide such supplementation[] in light of the arguments you have made (which we dispute) in your motion to strike Prof. Moore's corrected expert report.**

(Ex. 2 (emphasis added).) In response, EDD's counsel stated on December 2, 2015 that "[w]e have carefully reviewed each of the points you raised and **have not identified anything that is incorrect, inconsistent or <u>requiring supplementation</u>**." (*Id*. (emphasis added).) Notably, EDD's December 2nd email response asserting no supplementation was required came three weeks after service on November 11, 2015 of Prof. Moore's corrected expert report. SSC relied on EDD's representation that it would not be supplementing Dr. Pollock's expert report.

### B. EDD Delayed Notifying SSC Of Its Intention To Seek Further Discovery And To Supplement Prof. Pollock's Report Until After The January 6, 2016 Deadline

On December 15, 2015, EDD indicated in its reply in support of its motion to strike that it would only "potentially" need to provide a supplemental Pollock expert report, but that any such supplementation would be narrowly focused on the corrected ray tracings: "Dr. Pollock's current report is based on Dr. Moore's original ray trace diagrams; he will need to review the new diagrams and ***potentially*** issue a new report." (Dkt. 264 at 3 (emphasis added).) On December 21, 2015, the Court denied EDD's motion to strike the supplemental expert report of Prof. Moore holding that "BRO and Moore made a data entry error that changed Moore's opinion on one lens, but did not affect his methodology or conclusions on the other lenses" and that "SSC's error was one warranting supplementation of the expert reports." (Dkt. 277 at 2.) The Court also held that it was "amenable to permitting limited scope additional discovery for Dr. Moore's deposition" provided that the "parties must meet and confer, and stipulate to or request the necessary additional discovery by January 6, 2016." (*Id.*) Similarly, in denying EDD's motion to exclude testimony of Dr. Moore, the Court held that "[t]o the extent that the parties wish for further limited discovery of the underlying data that Moore relies on, the parties must stipulate to or propose such discovery by January 6, 2016." (Dkt. 281 at 8.)

But EDD neither requested further discovery nor indicated it was providing further expert discovery by the January 6, 2016 deadline. Thus, the Court ordered the parties on January 7, 2016 to submit a status update by January 11, 2016 and attend a telephonic case management conference on January 13, 2016. On January 9, 2016, EDD stated in an email *for the first time* that Dr. Pollock was preparing a supplemental expert report. (Dkt. 287 at Ex. B.) In SSC's January 11, 2016 status update, SSC stated the following:

> Enplas' January 9th email also announced for the first time that its expert, Dr. Pollock, "is preparing" a "supplemental report." [] SSC does not know what sort of supplementation Enplas proposes, nor does SSC believe any such supplementation is in order. Enplas has denied any need to correct Dr. Pollock's report, and SSC is aware of no other basis that Enplas has for supplementation at this juncture. Again, if Enplas wanted to submit a supplemental report from Dr. Pollock in conjunction with any additional discovery it proposed from SSC, Enplas should have met and conferred with SSC about this prior to January 6th, so

> that Enplas could have filed a stipulation or request by January 6th. Enplas failed to do so, and thus waived any ability it might have had to submit a supplemental report.

(Dkt. 287 at 6.) Furthermore, in response to the Court's request to explain whether the parties anticipated any further scheduling issues, SSC stated the following in its status report:

> If Enplas is permitted to serve a supplemental report from Dr. Pollock, this will raise further scheduling issues. SSC at least will need an opportunity to depose Dr. Pollock and may need to supplement its own expert reports in response, depending upon the nature of any such permitted supplementation (which is presently unknown to SSC). Other discovery may be appropriate depending on the nature of the supplementation, which to date Enplas has not explained. Enplas also has not stated when such a supplemental report would be served, if permitted. At this point, it seems likely that adjustment of other pretrial deadlines, or permission for SSC to supplement its pretrial disclosures, would be necessary if Enplas were allowed to serve this report.

(*Id.*) At the conclusion of the January 13 conference, the Court stated the following:

> And if there are further discussions between the parties about Dr. Pollock's supplemental report and discovery – and other discovery issues, I'm going to expect the parties to confer more than you have so far to resolve your disputes before presenting them to the Court. But if there's going to be any intended slippage of any dates in the case, you're at risk of having that be denied if you don't present it in a stipulation or motion to the Court. So we're getting into a tight curve before trial. Everything needs to be done on time in order for us to have an efficient and fair trial.

(Ex. 3 at 25.) The same day, the Court denied EDD's request for further discovery holding that "Enplas did not meet the January 6 deadline to request further discovery." (Dkt. 290 at 1.)

### C. Without Conferring With SSC And Seeking Leave Of Court, EDD Served A Supplemental Pollock Report That Goes Well Beyond The Scope Of The Limited Corrections To Prof. Moore's Report

On Tuesday, January 19, 2016—days before the January 22, 2016 deadline for pretrial disclosures under Fed. R. Civ. P. 26(a)(3)—EDD served the Supplemental Pollock Report. The report was served by EDD's paralegal without explanation or a cover email. (Ex. 4.) Despite the Court's express instructions at the January 13, 2016 status conference, EDD failed to confer with SSC or seek leave of Court before serving the report.

Although the Supplemental Pollock Report purports to respond to Prof. Moore's Corrected Expert Report, the supplemental report is directed almost in its entirety to (1) reiteration or elaboration upon opinions already raised in Pollock's original rebuttal report and unrelated to the ray tracing corrections (*see* Dtk. 177 at Ex. 1), (2) opinions that could have been

raised in Pollock's original rebuttal report but were not included (also unrelated to the ray tracing corrections), and (3) opinions responding to arguments SSC raised during the *Daubert* and motion to strike briefing (again, unrelated to the ray tracing corrections). These include, for example: (1) paragraphs 16-17, 27-29, 57-66 of the Supplemental Pollock Report criticizing Prof. Moore's LED-to-lens gap measurements and providing new opinions and arguments based upon information purportedly recently obtained from EDD's in-house employee, Mr. Akiyama, in an attempt to rehabilitate Dr. Pollock's own flawed gap analysis (which subject matter was previously addressed in Prof. Pollock's rebuttal report and in the *Daubert* briefing); (2) paragraphs 30-33 of the Supplemental Pollock Report directed to the LED emission points (previously addressed in Prof. Pollock's rebuttal report and in EDD's pre-correction *Daubert* briefing); (3) paragraph 34 of the Supplemental Pollock Report directed to reliance on non-TIR surfaces (previously addressed in Prof. Pollock's rebuttal expert report); (4) paragraphs 6-7, 15, 23-24, 26, 35-37, 52-56 directed to Prof. Moore's purported failure to rely on EDD's produced data and to disclose underlying BRO or ACT data (previously addressed in Prof. Pollock's rebuttal report and in EDD's pre-correction *Daubert* briefing); and (5) paragraphs 8-11, 38-44, 47-51 directed to the profiles of the #9879 and #9845 lenses allegedly being identical (which profiles were provided with Prof. Moore's original report, were unchanged in Prof. Moore's corrected report, and were simply not addressed in Dr. Pollock's original rebuttal report). The remainder of the report is directed primarily either to background, repetition of previous opinions and/or other new opinions untethered to Prof. Moore's corrections and expanding upon subject matters previously addressed in Pollock's original rebuttal report or in the *Daubert* briefing served months ago and after the close of expert discovery.

After SSC's counsel returned from an overseas trip, they reached out to EDD's counsel to meet and confer regarding the Supplemental Pollock Report on January 26, 2016. The parties met and conferred on January 27, 2016. EDD, however, declined to withdraw the Supplemental Pollock Report, thus necessitating this motion to strike.

## III. LEGAL STANDARD

"Supplementing an expert report pursuant to Rule 26(e) means 'correcting inaccuracies, or

filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Gerawan Farming, Inc. v. Rehig Pacific Co.*, 2013 WL 1982797, at *5 (E.D. Cal. May 13, 2013); *see also* Advisory Comm. Notes to Rule 26(e) 1993 Amendments ("Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, **and with special promptness as the trial date approaches**.") (emphasis added).

Unlike a supplemental expert report that merely corrects an inadvertent error, a "supplemental" expert report is improper under Rule 26(e) when it introduces new opinions, theories, and facts that could have been included in the original report. *See Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) (affirming that expert declarations did not fall under Rule 26(e) because the "new declarations asserted a new theory of causation [that] did not correct an inaccuracy in the Plaintiff's original disclosures [or] fill in a gap based on information previously unavailable to the Plaintiffs"); *Holzhauer v. Golden Gate Bridge, Highway & Transportation Dist.*, Case No. 13-cv-02862-JST (N.D. Cal. June 11, 2015) (holding that "report is not truly 'supplemental,' but rather an entirely new report, resembling a rebuttal report to the report [of the opposing party]"); *Levinson v. Westport Nat. Bank*, 2013 WL 3280013, at *5 (D. Conn. June 27, 2013) (holding that new reports were not "supplemental" reports under Rule 26(e) because they "improperly contain new content" that was not "previously unknown or unavailable" to the expert); *Coles v. Perry*, 217 F.R.D. 1, 3 (D. D.C. 2003) (holding that defendant's report "addressing a new matter" was not a supplemental report under Rule 26(e), especially where defendant did not even claim that the report corrected any information); *Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont. 1998) (holding that new expert disclosure did not involve supplementation under Rule 26(e) but was instead a dramatically different rebuttal report disguised as a supplemental report); *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-CV-04967-WHO, 2014 WL 1899616, at *3 (N.D. Cal. May 12, 2014) ("Rule 26(e) do[es] not permit a party to introduce new opinions after the disclosure deadline under the guise of a 'supplement.'")

## IV. ARGUMENT

### A. Despite The Court's Instructions, EDD Failed To Meet And Confer And Seek The Court's Permission To Serve A Supplemental Expert Report

Trial is rapidly approaching and the Court has made clear to the parties that further discovery in the case needs to be approved by the Court in order to avoid conflicts with the current pretrial schedule. For example, the Court's December Orders required EDD to submit a stipulation or request for further discovery by January 6, 2016 after conferring with SSC. (Dkt. 277 at 2; 281 at 8.) Similarly, the Court indicated at the January 13, 2016 status conference that if EDD planned to serve a supplemental expert report, EDD needed to first confer with SSC and seek leave of Court through a stipulation or motion. (Ex. 3 at 25.) As the Court noted, "[e]verything needs to be done on time in order for us to have an efficient and fair trial." (*Id.*)

Just as EDD ignored the January 6 deadline, EDD ignored the Court's instructions in relation to serving the Supplemental Pollock Report. EDD never reached out to SSC to meet and confer on the objections to the report raised in SSC's January 11, 2016 status report to the Court. And EDD never informed SSC of the expected content of the supplemental report. Instead, on January 19th — six days after the status conference—EDD's paralegal simply served the Supplemental Pollock Report by email on SSC's counsel, without a cover letter, explanation, prior notice, or a request to meet and confer. (Ex. 4.) Since then, EDD never sought to meet and confer (although requesting to meet and confer on other matters), and never sought leave of Court. Consequently, SSC reached out to EDD regarding the improper Supplemental Pollock Report, and followed up with this motion.

As explained below, the Supplemental Pollock Report is not a proper supplementation under Rule 26(e) and SSC would be severely prejudiced in addressing the new arguments raised in this report on the eve of trial. But even if it were a proper supplementation and trial were delayed to ameliorate the prejudice to SSC, it is undisputed that EDD again simply ignored the Court's instructions and showed little interest in ensuring that everything is "done in time for us to have an efficient and fair trial."

Thus, because EDD failed again to follow this Court's direction, the Supplemental

Pollock Report should be stricken as untimely. *Cf., e.g.*, *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981) ("This court has specifically encouraged dismissal [as a sanction under Rule 37 for discovery violations] where the district court determines 'that counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules or orders.'")

**B. EDD's Supplemental Expert Report Is Not A Proper Supplementation Under Rule 26(e)**

Unlike SSC's supplementation of Prof. Moore's original infringement report involving the correction of a minor, clerical error in the thickness of the lens diagrams in some ray traces, the new opinions in the Supplemental Pollock Report go well beyond the proper scope of Rule 26(e). Indeed, the Supplemental Pollock Report does not even purport to be a Rule 26(e) supplementation. Instead, recognizing the deficiencies in Dr. Pollock's original rebuttal report, EDD seeks—under the guise of "responding" to Prof. Moore's corrected report—to submit a new expert report seeking to introduce new evidence and opinions to rehabilitate flaws and failures from Dr. Pollock's report that were exposed during the *Daubert* briefing. Neither Rule 26(e), nor this Court's Orders, permits such supplementation without leave of Court.[2]

The Supplemental Pollock Report begins with six sections (*i.e.*, Section I – VI) primarily directed to restating background and prior opinions and summarizing later sections of the report. These sections are followed by five sections directed primarily to new rebuttal that could and should have been provided previously and is almost entirely unrelated to Prof. Moore's corrections.

In the first such section (*i.e.*, Section VII), Dr. Pollock criticizes the Corrected Moore Report for not addressing and rebutting arguments raised in Dr. Pollock's original rebuttal report.

---

[2] Even had the Supplemental Pollock Report been limited to the corrections made by Prof. Moore, it would have been untimely since such corrections were made 2 ½ months ago, on November 11, 2015, and EDD was required to meet and confer and seek leave before serving any such supplement. There is, however, no plausible justification for the broad rebuttal and expansion of opinions contained the Supplemental Pollock Report, which as discussed herein, relates to subjects that could have been addressed previously, are not tied to Prof. Moore's corrections, and are based upon information that was available at the time of Dr. Pollock's original rebuttal report.

(Ex. 1 at 6-8.) This, of course, is not a response to any correction by Prof. Moore, but rather is a re-hash and expansion of prior arguments that Dr. Pollock himself admits are *not* changed by Prof. Moore's corrected report. Indeed, Prof. Moore scrupulously limited his report to correction of his error – rather than introduce new rebuttal opinions. Nothing in this section was triggered by Prof. Moore's correction. The entirety of this section relates to subject matters that could have been included in Dr. Pollock's original rebuttal report. Prof. Moore's narrow correction was not a "blank check" for Dr. Pollock to introduce new rebuttal that could and should have been timely provided in his original report, or at the very least, months ago, when SSC would have had a chance to prepare accordingly.

In the second and third such sections (*i.e.,* Sections VIII and IX), Dr. Pollock argues that Prof. Moore should have recognized that the profiles for the #9879 and #9845 lenses were identical when he made his original report. (*Id.* at 9-13) Of course, the profiles for these lenses are not in fact identical as SSC has shown elsewhere. (Dkt. 241-1 at 5.) But nevertheless, this is a new opinion from Dr. Pollock that he could have included in his original rebuttal report and has nothing to do with the limited corrections in the Corrected Moore Report. Indeed, the similarity of the profiles was addressed by EDD in Prof. Moore's deposition, as EDD noted in its *Daubert* briefs. Yet, Dr. Pollock's supplementation regarding this issue appears only now in his supplement, several months later.

In the fourth such section (*i.e.,* Section X), Dr. Pollock parrots arguments raised by EDD's counsel in its *Daubert* motion and motion to strike briefing. (*Cf.* Ex. 1 at 13-14 *with* Dkt. 174 at 5-14; Dkt. 225 at 22-23; Dkt. 227 at 10-11.) This section reads as attorney argument, not an expert opinion. Regardless, EDD has been aware of these arguments since at least November of last year but never indicated before serving the report last week that it planned to include them in a supplemental expert report. EDD has provided no excuse for this delay. Most certainly, these arguments were not prompted by Prof. Moore's thickness correction.

In the fifth and final such section (*i.e.,* Section XI), Dr. Pollock responds not to Prof. Moore but to a declaration submitted by SSC's counsel during the briefing on EDD's *Daubert* motion. (Ex. 1 at 14-16.) In this section, Dr. Pollock introduces new opinions and alleged facts,

including details on a conversation he had with EDD employee "Mr. Akiyama" on EDD's design. This is a desperate attempt to justify the inaccurate data in Dr. Pollock's original expert report and introduce new evidence without Dr. Pollock admitting that he made an error. This attempt to supplement comes after EDD claimed there was no need to supplement Dr. Pollock's original expert report to correct errors. Moreover, such new and expanded opinions are entirely unrelated to Prof. Moore's corrections.

**C. SSC Would Be Prejudiced By EDD's Late And Improper Supplementation**

If permitted to stand, SSC will be greatly prejudice by the Supplemental Pollock Report. Because EDD never informed SSC before the January 6th deadline that it intended to supplement Dr. Pollock's expert report, SSC did not have the opportunity to request a deposition of Dr. Pollock or other discovery before the January 6th deadline. Given the expansive scope of the new rebuttal opinions and new evidence, offered without justification or explanation, weeks before trial, SSC is prejudiced in its ability to prepare to meet this new testimony under the current pretrial schedule, as there is simply not enough time. *Levinson*, 2013 WL 3280013 at *5 ("To permit [the expert] to add this new material now would not be harmless as the Defendant would suffer prejudice in having to prepare to meet this new testimony."). For example, SSC has been deprived of the opportunity to prepare for trial by deposing Dr. Pollock, evaluating his testimony, gathering responsive evidence, and filing motions concerning this new testimony. *Rodman v. Safeway, Inc.*, 2015 WL 5315940, at *2 (N.D. Cal. Sept. 11, 2015) ("Safeway has been deprived of the opportunity to prepare for trial by deposing [the expert], evaluating his testimony, gathering responsive evidence, and filing motions concerning [his] testimony. That prejudices Safeway."). SSC is deeply immersed in the intense and rigorous pretrial submissions, witness preparation and the like. Moreover, the delay in serving the Supplemental Pollock Report, and the associated prejudice to SSC, is completely of EDD's making. Virtually nothing contained in the Supplemental Pollock Report could not have been presented months ago.

**D. EDD Cannot Show Good Cause To Modify The Scheduling Order To Allow Its Untimely Rebuttal Report**

Because the Supplemental Pollock Report is not a proper Rule 26(e) supplementation in response to the Corrected Moore Report, EDD was required to seek leave of Court to amend the Scheduling Order in order to serve a rebuttal report not provided for by the Scheduling Order and long after the close of expert discovery. A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-10 (9th Cir. 1992). "Good cause" requires both diligence by the party seeking to modify the scheduling order, and an absence of prejudice to the party opposing the modification. *Johnson*, 975 F.2d at 609 (holding that "[i]f [the] party was not diligent, the inquiry should end," but that "the existence or degree of prejudice to the party opposing the modification" can "supply additional reasons to deny [a] motion [to supplement]"). As shown in the prior section, SSC would clearly be prejudiced if the Court were to allow the Supplemental Pollock Report at this late stage of the case. Thus, the Court should exclude the Supplemental Pollock Report.

## V. CONCLUSION

For the foregoing reasons, the Court should strike the untimely and improper Supplemental Pollock Report and preclude Dr. Pollock from testifying with regard to the expanded subject matters of the Supplemental Pollock Report to the extent not previously disclosed in Dr. Pollock's original rebuttal report.

Dated: January 27, 2016

LATHAM & WATKINS LLP

By: */s/ Ryan R. Owens*

Ryan R. Owens
Attorneys for Defendant-Counterclaim Plaintiff

*Seoul Semiconductor Co., Ltd.*