UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENPLAS DISPLAY DEVICE CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SEOUL SEMICONDUCTOR COMPANY, LTD., <br><br> Defendant. | Case No. 13-cv-05038 NC <br><br> **ORDER DENYING SUMMARY JUDGMENT ON INEQUITABLE CONDUCT DEFENSE** <br><br> Re: Dkt. No. 161 |

In this patent infringement suit, plaintiff Enplas argues that the '209 patent is unenforceable because its inventor, Dr. Pelka, engaged in inequitable conduct. Enplas argues that Dr. Pelka supervised Dr. Gleckman, inventor of the '354 patent, so Dr. Pelka was aware of the '354 patent and its materiality to his own '209 patent. As a result, Dr. Pelka should have disclosed the '354 patent to the PTO, but did not.

Defendant SSC moves for summary judgment, arguing that Enplas cannot meet the clear and convincing threshold to demonstrate inequitable conduct. The Court finds that, drawing all inferences in favor of Enplas, Enplas has presented enough evidence that the Court could reasonably conclude that Dr. Pelka engaged in inequitable conduct. Thus, SSC's motion is DENIED.

//

Case No. 13-cv-05038 NC

## I. BACKGROUND

In 1992, Dr. Pelka co-founded TIR Technologies, Inc. ("TIR"). Pelka Decl. ¶ 9.[1] TIR was a research company that developed technology for LED lighting systems and LCD backlights. *Id.* At TIR, Dr. Pelka had administrative responsibilities including making decisions about whether to file patent applications. *Id.* at ¶ 11.

Dr. Gleckman worked at TIR Technologies, and submitted two relevant patents to the PTO: the '354 patent and the '197 patent. In 1994, Dr. Pelka approved Dr. Gleckman's filing a patent application that claimed priority to the application for the '197 patent. Pelka Decl. ¶¶ 20-21. In October 1994, Gleckman filed the patent application, which would become the '354 patent. Pelka Decl. ¶ 20-21. Gleckman left TIR shortly after. *Id.* ¶ 31.

Dr. Pelka filed the application for the '209 patent on March 19, 1997. In May 1997, the patent attorneys submitted the '197 patent, which had issued in 1995, for consideration by the PTO as a prior art reference to the '209 patent. In April 1997, Teledyne, Inc. acquired TIR, including all of TIR's pending patent applications. Pelka Decl. ¶ 29. Dr. Pelka became an employee of Teledyne. *Id.* ¶ 30. In November 1997, Gleckman's application issued as the '354 patent, a continuation-in-part of the '197 patent. The parties dispute whether Dr. Pelka had administrative responsibilities in Teledyne between April and November 1997. On December 28, 1999, the '209 patent issued.

### A. The Gleckman '354 Patent

The Gleckman patent (No. 5,684,354) is a continuation-in-part of the '197 patent entitled, "Backlighting Apparatus For Uniformly Illuminating A Display Panel." The invention relates to a "backlighting apparatus for displays, particularly for small-area liquid-crystal displays (LCDs), such as utilized in virtual reality headsets." The figures in the Gleckman patent show a light source mounted on the side walls of the cavity, generally outside the "viewing aperture portion" (the portion of the cavity that lies directly beneath

---

[1] The Court considers Dr. Pelka's declaration solely for the background information provided. The Court does not rely on Dr. Pelka's declaration in evaluating the facts that Enplas intends to present on its substantive claim.

Case No. 13-cv-05038 NC          2

the aperture).

### B. The Pelka '209 Patent

Dr. Pelka's patent (No. 6,007,209) is entitled a "Light Source for Backlighting." The invention relates to "a light source for a display panel of the type used in notebook computers." Figures 3 and 4 of the '209 patent are substantially similar to figures 12 and 13 of the Gleckman patent, but the '209 patent has light sources on the bottom of the cavity in addition to the side walls. The '209 patent discloses the Gleckman '197 patent.

### C. Procedural History

Enplas brings this declaratory judgment action, alleging non-infringement of the '209, invalidity of the patent as anticipated, and a defense of inequitable conduct, among others. SSC alleges that Enplas' LCD screens infringe the '209 patent.

Shortly after the close of discovery, Enplas moved to add inequitable conduct as a defense to the '209 patent. The Court granted the motion. Dkt. No. 119. SSC now moves for summary judgment, arguing that Enplas cannot meet its burden to demonstrate inequitable conduct by clear and convincing evidence.

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving

1    party must go beyond the pleadings, and, by its own affidavits or discovery, set forth
2    specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c);
3    *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v.*
4    *Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however,
5    must be drawn in the light most favorable to the nonmoving party. *Tolan*, 134 S. Ct. at
6    1863 (citing *Liberty Lobby*, 477 U.S. at 255).

**III. DISCUSSION**

Inequitable conduct is an equitable defense to patent infringement. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). "To prove inequitable conduct, the challenger must show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012); *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013). Because inequitable conduct is an equitable remedy, there is no right to a jury, and the Court will be the fact finder. *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1110 (Fed. Cir. 2003). Thus, the Court considers Enplas' evidence as to (1) materiality; and (2) Dr. Pelka's intent.

**A. Materiality**

Information is material if "the PTO would not have allowed the claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291. "This means that to assess materiality, the court must look to the standard used by the PTO to allow claims during examination." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1189 (Fed. Cir. 2014). Thus, the Court applies the preponderance of the evidence standard used by the PTO. *Therasense*, 649 F.3d at 1291-92. "[E]ven if a district court does not invalidate a claim based on a deliberately withheld reference, the reference may be material if it would have blocked patent issuance under the PTO's different evidentiary standards." *Id.*

Here, the Court dismissed Enplas' invalidity defense as to the '209 patent because

Case No. 13-cv-05038 NC            4

the Court concluded that Enplas' evidence did not meet the clear and convincing threshold for invalidity. Dkt. No. 321. However, that ruling does not automatically lead to the conclusion that the Gleckman patent is immaterial. Instead, the Court reviews the evidence now to determine if it meets the preponderance of the evidence threshold used by the PTO.

The Court finds persuasive that Dr. Pelka disclosed the Gleckman '197 patent in his patent application, presumably because he believed it to be material. In his deposition, Dr. Pelka admitted that he made a decision that the '197 patent was sufficiently relevant that it should be brought to the examiner's attention. Pelka Dep. at 34. The '354 Gleckman patent was a continuation-in-part of the '197 patent. Taken in the light most favorable to Enplas, the Court finds this alone sufficient to establish that there is a dispute of material fact, and that the Court could conclude that the '354 patent is material.

### B. Intent

Inequitable conduct requires that the patentee acted with specific intent to deceive the PTO. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Id.* "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Therasense*, 649 F.3d at 1290. "We recognize instead that because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence, provided that such intent is the single reasonable inference." *Am. Calcar*, 768 F.3d at 1190-91.

Here, Dr. Pelka appears to have been aware of the '354 patent. Pelka Decl. at 32. The Court acknowledges that many of the figures and claims from the '209 and '354 patent are substantially similar, as the Court analyzed in its invalidity order. Dkt. No. 321. SSC relies on Dr. Pelka's testimony that he discovered the similarity between the two patents recently, when he reviewed his 40 or so issued patents. Pelka Decl. at 12. However, the '354 patent was not one of Dr. Pelka's patent, so this statement suggests that

Case No. 13-cv-05038 NC            5

perhaps Dr. Pelka knew of the similarity between the patents at the time that he filed the '209 patent. Dr. Pelka also testified that the figures were copied from the '354 patent because the attorneys were being cost effective. Pelka Decl. at 26.

SSC also relies on the fact that Dr. Pelka gave up administrative duties in the company once TIR was bought by Teledyne to demonstrate that Dr. Pelka would not have known of the issuance of the '354 patent. At the motion hearing, the parties debated over whether Dr. Pelka remained in a position to know of and be aware of the issuance of the '354 patent from April to November 1997. This is a question of material fact that the Court could resolve at a full evidentiary hearing.

The Court finds that, drawing all inferences in favor of Enplas, the Court could reasonably conclude that Dr. Pelka knew of the '354 patent, copied from the '354 patent, and intentionally withheld its disclosure for fear that the '209 patent would not be granted.

## IV. CONCLUSION

The Court concludes that there is a dispute of material fact. Additionally, drawing all inferences in the light most favorable to Enplas, the Court finds that Enplas could demonstrate that '354 patent is material, that Dr. Pelka knew of the '354 patent and its materiality, and that he intentionally did not disclose the '354 patent to the PTO.

Thus, the Court DENIES SSC's motion for summary judgment on inequitable conduct.

**IT IS SO ORDERED.**

Dated: February 8, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 13-cv-05038 NC        6