UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENPLAS DISPLAY DEVICE CORPORATION, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>SEOUL SEMICONDUCTOR COMPANY, LTD.,<br><br>   Defendant. | Case No. 13-cv-05038 NC<br><br>**ADDITIONAL PRETRIAL RULINGS ON DISPUTED LEGAL ISSUES** |

In reviewing the parties' proposed jury instructions and verdict form, the Court concludes that there are additional legal rulings it must make before trial begins. The final jury instructions and verdict form will reflect the Court's rulings below.

## I.   Which Actions Must Occur Within the United States

The parties dispute whether to include instructions on which actions should occur within the United States, and the Court asked for further briefing on the topic. Dkt. No. 368. The parties agree that the law is clear that the direct infringement must occur within the United States; however, the parties debate which actions of inducement could occur outside the United States.

The Federal Circuit's guidance in *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012), is instructive: "In short, where a foreign party, with the requisite knowledge and intent, employs extraterritorial means to actively induce acts of direct

Case No. 13-cv-05038 NC

1   infringement that occur within the United States, such conduct is not categorically exempt
2   from redress under § 271(b)." In *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305-06
3   (Fed. Cir. 2006) (en banc in relevant part), the Federal Circuit approved of a jury
4   instruction that read: "Unlike direct infringement, which must take place in the United
5   States, induced infringement does not require any activity by the indirect infringer in this
6   country, so long as the direct infringement occurs here."
7       The Court has found no contrary case law, and EDD does not point to a case
8   suggesting such a jury instruction is improper. The Court adopts the jury instruction
9   approved in *DSU* and will incorporate it into the final jury instructions.

10  **II.   Whether SSC Needs to Specify the Direct Infringer**

11      In its proposed verdict form, EDD provides a section on direct infringement, which
12  requires the jury to state the direct infringer. The parties debate whether SSC must identify
13  a direct infringer with specificity.
14      Generally, SSC bears the burden of demonstrating that EDD induced another to
15  directly infringe the patent, which requires proof of direct infringement. *Takeda Pharm.*
16  *U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015). The
17  Supreme Court has clarified that an alleged induced infringer "cannot be liable for
18  inducing infringement that never came to pass." *Limelight Networks, Inc. v. Akamai*
19  *Techs., Inc.*, 134 S. Ct. 2111, 2118 (2014). Proof of direct infringement by a single actor is
20  a necessary prerequisite for induced infringement liability. *Id.*; *see also Metro-Goldwyn-*
21  *Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940 (2005) ("the inducement theory of
22  course requires evidence of actual infringement by recipients of the device"). Thus, SSC
23  must point to a particular direct infringer in establishing EDD's liability.
24      However, EDD relies on SSC's argument in the *Nichia* case and the complexity of
25  its supply chain to suggest that SSC could not prove direct infringement in the United
26  States because EDD does not know its downstream customers. Although this is an
27  argument better suited for summary judgment, the Court now provides a ruling on this
28  legal issue that will be incorporated into the relevant jury instruction.

Case No. 13-cv-05038 NC         2

The Court finds that while SSC must demonstrate direct infringement, and in so doing, must identify a direct infringer, SSC does not need to demonstrate that EDD knew of that particular direct infringer. "Inducement can be found where there is evidence of active steps taken to encourage direct infringement, which can in turn be found in advertising an infringing use or instructing how to engage in an infringing use." *Takeda*, 785 F.3d at 630-31 (citing *Grokster*, 545 U.S. at 936). The case law does not require proof that the induced infringer knows of the direct infringement, or intends to induce a specific infringer. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) (finding that "*[l]iability* for either active inducement of infringement or contributory infringement is dependent upon the existence of direct infringement.")(emphasis added).

Although such facts would certainly be useful in proving inducement, they are not required to demonstrate the requisite intent for active inducement. Rather, the case law provides that an individual can be liable for active inducement if they encourage direct infringement through an advertisement or instruction booklet. *Takeda*, 785 F.3d at 630-31. These activities are directed at a general audience of people—buyers, sellers, and users of the product. Thus, the inducer does not need to have the intent to induce a particular person or entity, but rather, can be liable for encouraging direct infringement to the wider public, or a class of people or entities.

As applied to this case, SSC does not need to demonstrate that EDD knew its downstream users, or that EDD knew who bought and sold its lenses. Rather, SSC must demonstrate that (1) direct infringement occurred, and (2) that EDD took active steps to encourage direct infringement.

**III. Dr. Pelka's Testimony**

The Court already ruled that Dr. Pelka may not offer expert testimony in this case, but deferred further explanation of how to properly apply the Court's ruling. Dkt. No. 384. The parties agree that Dr. Pelka may act as a fact witness and can testify about his own patents. The parties disagree whether Dr. Pelka can give testimony regarding the scope of the claims in prior art patents to which he is not an inventor. The Court will instruct the

jury that Dr. Pelka is not an expert witness.

A fact witness may not opine on what a hypothetical person skilled in the art would know or what is disclosed by the claims of the patent. *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. 12-cv-1971 CW, 2014 WL 4090550, at *8 (N.D. Cal. Aug. 19, 2014). In *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1375 (Fed. Cir. 2008), the Federal Circuit approved of the district court's decision to confine the inventor's testimony to the actual words and content of the patent and patent application. Courts in this district have found that an inventor can explain how he developed the claimed invention, the process of obtaining the patent, research of which he was personally aware, and the authenticity, if disputed, of documents related to the patent application. *See Digital Reg*, 2014 WL 4090550, at *8; *Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. 09-cv-1201 RMW, 2011 U.S. Dist. LEXIS 117281, at *3-4 (N.D. Cal. Oct. 11, 2011). The Court finds such guidance is appropriate and applicable in this case.

Therefore, as applied to Dr. Pelka's expected testimony, Dr. Pelka may testify to the patents that he authored. He may discuss the process of obtaining the patent, the words and content of the patent and patent application, and the research of what he was personally aware. He may not opine as to the scope of the Gleckman patent claims. However, he may testify as to whether he was aware of the Gleckman patent or any other reference, and whether he considered disclosing any particular reference (if he has knowledge of such facts). As to the other documents that SSC believes that EDD will ask Dr. Pelka to introduce, the Court expects EDD to lay a proper foundation for Dr. Pelka's personal knowledge of any document he is asked to authenticate or discuss.

**IT IS SO ORDERED.**

Dated: March 7, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 13-cv-05038 NC         4