1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ENPLAS DISPLAY DEVICE
CORPORATION, et al.,

            Plaintiffs,

        v.

SEOUL SEMICONDUCTOR
COMPANY, LTD.,

            Defendant.

Case No.13-cv-05038 NC

**[ANNOTATED] FINAL JURY
INSTRUCTIONS**

        The Court has reviewed the parties' stipulated final jury instructions and the

contested jury instructions.  The following is a draft of the final jury instructions, annotated

with the Court's commentary.  The parties should review the jury instructions, and the

Court's commentary.  In a few instances, the parties may submit further proposed

instructions.  In particular, the Court notes that on page 9, the parties recommended that

the Court alter the preliminary jury instructions to state that SSC seeks a judgment of

infringement on claims 1, 6, and 33-35 of the '554 patent, which are fewer claims than

SSC has listed on the verdict form.

        The parties must submit these instructions and notify the Court which infringement

claims are in the case by March 11, 2016, at 12:00 p.m.

Case No.13-cv-05038 NC

United States District Court
Northern District of California

## I.   Introduction

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## II.   Burden of Proof

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. On other issues, you must use a higher standard and decide whether it is highly probably that something is true.

You should base your decision on all of the evidence, regardless of which party presented it.

## III.  Evidence

### A.   Evidence You May Consider

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which are received into evidence; and

(3) any facts to which the lawyers have agreed.

### B.    Things You May Not Consider

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

### C.    Taking Notes

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your  notes or those of your fellow jurors.

### D.    Stipulations of Fact

The parties have agreed to certain facts that have been read to you.  You should therefore treat these facts as having been proved.

### E.    Charts and Summaries Not Received in Evidence

Certain charts and summaries not received in evidence may be shown to you in order to help explain that contents of books, records, documents, or other evidence in the

1   case.  You may hear these charts and summaries referred to as "demonstratives" or

2   "demonstrative evidence."  They are not themselves evidence or proof of any facts.  If they

3   do not correctly reflect the facts or figures shown by the evidence in the case, you should

4   disregard these charts and summaries and determine the facts from the underlying

5   evidence.

6   **F.    Charts and Summaries in Evidence**

7       Certain charts and summaries may be received into evidence to illustrate

8   information brought out in the trial.  Charts and summaries are only as good as the

9   underlying evidence that supports them.  You should, therefore, give them only such

10   weight as you think the underlying evidence deserves.

11   **G.    Types of Evidence**

12       Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact,

13   such as testimony by a witness about what that witness personally saw or heard or did.  For

14   example, direct evidence that it was raining would be a photo showing that it was raining

15   on a given day.  Circumstantial evidence is proof of one or more facts from which you

16   could find another fact.  For example, circumstantial evidence that it was raining would be

17   testimony of a witness who said they believed it was raining, not because they saw the

18   rain, but because they saw a person entering the building with a wet umbrella.  You should

19   consider both kinds of evidence.  The law makes no distinction between the weight to be

20   given to either direct or circumstantial evidence.  It is for you to decide how much weight

21   to give, if any, to any evidence.

22   **H.    Use of Interrogatories of a Party**

23       Evidence may be presented to you in the form of answers of one of the parties to

24   written interrogatories submitted by the other side.  These answers were given in writing

25   and under oath, before the actual trial, in response to questions that were submitted in

26   writing under established court procedures.  You should consider the answers, insofar as

27   possible, in the same way as if they were made from the witness stand.

28

United States District Court
Northern District of California

### I.     Use of Request for Admission of a Party

Before trial, each party has the right to ask another party to admit in writing that certain facts are true.  If the other party admits those facts, you must accept them as true and conclusively proved in this case.

### J.     Evidence for a Limited Purpose

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

### K.     Use of Physical Evidence During Deliberations

Certain physical exhibits have been admitted for demonstrative purposes so that you can better understand and appreciate the products that are at issue in this case.  You may hold and view the physical exhibits.  However, you  must not alter or modify the physical exhibits in any way, and you  must not attempt to put them into operation, or perform any testing or analysis on them to test, prove, or disprove any theory or principle that was discussed at trial.

### L.     The Court's Ruling on Objections

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been or what the document might have said.  My rulings are not intended to influence your decision.  Your decisions must be based entirely on the testimony and documents received into evidence.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

M.    **Bench Conferences and Recesses**

From time to time during the trial, it may have been necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess.  The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

I may not have always granted an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**IV.   Witnesses**

A.    **Evaluation of Witness Testimony**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

B.    **Impeachment Evidence**

The evidence that a witness lied under oath or gave different or inconsistent testimony on a prior occasion may be considered, along with all other evidence, in

1  deciding whether or not to believe the witness and how much, if any, weight to give to that
2  witness's testimony.

3  **C.    English Translation**

4  Languages other than English were used during this trial.  Each witness has the
5  right to testify in his or her native language.  In this case, some witnesses testified in
6  Japanese and some testified in Korean, through the use of an official court interpreter.

7  When a witness testifies in a language other than English, the evidence to be
8  considered by you is only that provided through the official court interpreters.  Although
9  some of you may know Japanese, Korean, or other languages used in this case, it is
10  important that all jurors consider the same evidence.  Therefore, you must accept the
11  English interpretation provided by the official court interpreter.  You must disregard any
12  different meaning.

13  You must not make any assumptions about a witness or a party based upon their use
14  of an interpreter to assist that witness or party.

15  **D.    Expert Witnesses**

16  Some witnesses, because of education or experience, are permitted to state opinions
17  and the reasons for those opinions.

18  Opinion testimony should be judged just like any other testimony.  You may accept
19  it or reject it, and give it as much weight as you think it deserves, considering the witness's
20  education and experience, the reasons given for the opinion, and all the other evidence in
21  the case.

22  **E.    Deposition Testimony**

23  A deposition is the sworn testimony of a witness taken before trial.  The witness is
24  placed under oath to tell the truth and lawyers for each party may ask questions.  The
25  questions and answers are recorded by written transcript and sometimes video recording.
26  When a person is unavailable to testify at trial, the deposition of that person may be used at
27  the trial.

28  You should consider deposition testimony, presented to you in court in lieu of live

Case No. 13-cv-05038 NC            7

United States District Court
Northern District of California

1    testimony, in the same way as if the witness had been present to testify.

2         If testimony is read, rather than played back from a recording, do not place any

3    significance on the behavior or tone of voice of any person reading the questions or

4    answers.

5         You will be hearing or viewing only a portion, or series of portions, of the

6    depositions taken by the parties in this case.  Do not make any inferences about the fact

7    that you are not hearing or seeing the deposition in its entirety or that what you are hearing

8    or viewing has been edited.

9         **F.  Impeachment Evidence**

10        The evidence that a witness lied under oath on a prior occasion may be considered,

11   along with all other evidence, in deciding whether or not to believe the witness and how

12   much weight to give to the testimony of the witness and for no other purpose.

13   **V.   Summary of Contentions**

14        I will first give you a summary of each side's contentions in this case.  I will then

15   tell you what each side must prove to win on each of its contentions.

16        As I previously told you, EDD seeks a declaration that it does not infringe any valid

17   claim of the '554 or '209 patent and that the claims of the patents are invalid.

18        SSC seeks monetary damages from EDD for actively inducing infringement by

19   others of claims 1, 6, and 33-35 of the '554 patent and claim 20 of the '209 patent.

20        The products that are alleged to infringe the '554 patent are Enplas Light Enhancer

21   Cap Lenses with the model numbers #9854D, #9854E, and #9879.  The products that are

22   alleged to infringe the '209 patent are Enplas Light Enhancer Cap Lenses with model

23   numbers #9854D, #9854E, #9879, #9853A, and #4922.

24        If you decide that any asserted claim of the patents-in-suit has been infringed and is

25   not invalid, you will then need to decide any money damages to be awarded to compensate

26   for the infringement.

27        You will also need to make a finding as to whether the infringement was willful.  If

28   you decide that any infringement was willful, that decision should not affect any damage

United States District Court
Northern District of California

1    award you make.  I will take willfulness into account later.

2          Although the parties may have referred to other claims or lenses, you will only be

3    asked to decide on infringement and/or invalidity of the claims and lenses listed above.

4          **[Note:** In the joint final jury instructions, the parties stated that SSC seeks a

5    determination of claims 1, 2, 6, 30, 31, and 33-37.  In the summary of the case in the

6    preliminary instructions, the parties recommended that the Court edit this statement of the

7    case to only claims 1, 6, and 33-35.  If this is an error, the parties should notify the Court

8    as soon as possible.**]**

9    **VI.  Interpretation of Claims**

10          Before you decide whether EDD has infringed the claims of the '554 or '209

11    patents or whether the claims are invalid, you will need to understand the patent claims.

12    As I mentioned, the patent claims are numbered sentences at the end of the patent that

13    describes the boundaries of the patent's protection.  It is my job as judge to explain to you

14    the meaning of any language in the claims that needs interpretation.

15    I have interpreted the meaning of some of the language in the patent claims involved in

16    this case.  You must accept those interpretations as correct.  My interpretation of the

17    language should not be taken as an indication that I have a view regarding the issues of

18    infringement and invalidity.  The decisions regarding infringement and invalidity are yours

19    to make.

20          You should apply the following constructions to the claims of the '554 patent:

21          • The term "total internal reflection" means "the total reflection that occurs

22               when light strikes an interface at an angles of incidence (with respect to the

23               normal) greater than the critical angle"

24          • The term "the critical angle of total internal reflection" means "the angle of

25               incidence (with respect to the normal) above which total internal reflection

26               occurs"

27          • The term "cusp" means "an area where two curves meet"

28          • The term "totally internally reflecting" means "reflecting by total internal

United States District Court
Northern District of California

reflection"

- The term "illumination coupler embedded in an interior region of said
  waveguide" does not require a construction
- The term "TIR surface" means "a surface angled with respect to a light
  source to produce total internal reflection within a device"
- The term "waveguide" means "an optical device that redirects light
  propagating between its surfaces"

For claim language where I have not provided you with any meaning, the claim language's plain and ordinary meaning to a person of ordinary skill in the art at the time of the invention applies.

For all claim language of the '209 patent you should apply the claim language's plain and ordinary meaning to a person of ordinary skill in the art at the time of the invention.

## VII. Infringement

### A.   Burden of Proof

I will now instruct you on the rules you must follow in deciding whether SSC has proven that EDD has actively induced infringement of one or more of the asserted claims of the patents-in-suit.  To prove induced infringement of any claim, SSC must persuade you that it is more likely than not that EDD has actively induced another to directly infringe that claim.

**[Note:** Court adopts EDD's modification to clarify that SSC is proving *induced* infringement.  Court rejects EDD's proposal to include "in the United States" because the parties agree that the induced infringement need not occur in the United States, only the direct infringement.  See Court's Order, dkt. no. 389.**]**

### B.   Inducing Patent Infringement

SSC argues that EDD has actively induced another to infringe the '554 and '209 patents.  In order for EDD to have induced infringement of the '554 patent, EDD must have induced the direct infringement of a claim of the '554 patent.  In order for EDD to

United States District Court
Northern District of California

1  have induced infringement of the '209 patent, EDD must have induced the direct

2  infringement of a claim of the '209 patent.  If there is no direct infringement by anyone,

3  there can be no induced infringement.

4     In order to be liable for inducing infringement of the '554 patent, EDD must:

5     • have intentionally taken action that actually induced direct infringement;

6     • have been aware of the '554 patent; and

7     • have known that the acts it was causing would infringe the '554 patent.

8     In order to be liable for inducing infringement of the '209 patent, EDD must:

9     • have intentionally taken action that actually induced direct infringement;

10    • have been aware of the '209 patent; and

11    • have known that the acts it was causing would infringe the '209 patent.

12    EDD may be considered to have known that the acts it was causing would infringe

13 the '554 patent and/or the '209 patent if it subjectively believed there was a high

14 probability of direct infringement and nevertheless deliberately took steps to avoid

15 learning that fact, in other words, willfully blinded itself to the direct infringement.

16    Induced infringement does not require any activity by the indirect infringer in the

17 United States, as long as the direct infringement occurs in the United States.

18    **[Note:** The Court finds it appropriate to place the jury instruction for induced

19 infringement first.  The Court agrees with the parties that the jury should be focused on the

20 type of infringement actually at issue, induced infringement.  For that reason, the Court

21 finds that placing direct infringement first may lead to confusion, where the jury

22 erroneously believes that it should determine whether EDD directly infringed the patents.

23    The Court adopts the Northern District model, modified to have separate liability

24 statements for each patent.  The Court disagrees with EDD's interpretation of which

25 actions must be directed at the United States, but adds the final sentence to address this

26 issue, consistent with its order in docket number 389.]

27  **C.    Direct Infringement**

28    A patent's claims define what is covered by the patent.  A product or method

directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. For those terms that I have not provided a definition, you are to rely upon the evidence presented concerning the plain and ordinary meaning to persons of ordinary skill in the relevant technologies.

The second step is to decide whether an individual or entity has made, used, sold, offered for sale, or imported within the United States a product covered by any of the asserted claims of SSC's patents, or performed a method within the United States covered by one or more claims of the SSC's patent. If it has, it infringes. You, the jury, make this decision. Whether or not the direct infringer knew its product infringed or even knew of SSC's patents does not matter in determining direct infringement. Here, SSC asserts that EDD induced infringement, not that EDD directly infringed. Therefore, EDD cannot be the direct infringer.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether the accused products or methods infringe that claim. The one exception to considering claims individually concerns dependent claims. An independent claim is one that stands alone without reference to any other claim. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both SSC's commercial products and the accused products. However, in deciding the issue of infringement you may not compare the accused products to SSC's commercial products. Rather, you must compare the accused

United States District Court
Northern District of California

1    product to the claims of the patents-in-suit when making your decision.

2        [Note: The Court has adopted SSC's jury instructions with some alteration.  The

3    Court agrees with EDD that the jury instruction should reflect the fact that EDD cannot be

4    the direct infringer; however, EDD's proposed instructions are at odds with SSC's motion

5    in limine #3 and are prejudicial.  The Court proposes the above alternative language:

6    "Here, SSC asserts that EDD induced infringement, not that EDD directly infringed.

7    Therefore, EDD cannot be the direct infringer."

8        The Court also rejects EDD's suggestion to specifically list the dependent claims,

9    this is unnecessarily long, and should be presented as part of the evidence in the case.

10       Finally, the Court finds the Northern District model jury instructions to sufficiently

11   explain that direct infringement must occur within the United States.]

12   **D.    Literal Infringement**

13       To decide whether a direct infringer's product or method literally infringes a claim

14   of the '554 or '209 patents, you must compare that product or method with the patent

15   claim and determine whether every requirement of the claim is included in that product or

16   method.  If so, a direct infringer's product or method literally infringes that claim.  If,

17   however, a direct infringer's product or method does not have every requirement in the

18   patent claim, a direct infringer's product or method does not literally infringe that claim.

19   You must decide literal infringement for each asserted claim separately.

20       If the patent claim uses the term "comprising," that patent claim is to be understood

21   as an open claim.  An open claim is infringed as long as every requirement in the claim is

22   present in a direct infringer's product or method. The fact that a direct infringer's product

23   or method also includes other parts or steps will not avoid infringement, as long as it has

24   every requirement in the patent claim.

25       [Note: The Court sees no reason to deviate from the Northern District model jury

26   instruction.  Where, in the model jury instructions, the Court would input the name of the

27   "alleged infringer," the Court instead states, "a direct infringer."  The Court agrees with

28   EDD's concern that the jury could erroneously assume that literal infringement applies to

United States District Court
Northern District of California

Case No. 13-cv-05038 NC            13

1    EDD.  Since SSC has not identified the direct infringer (and need not), the Court uses the

2    phrase "a direct infringer" in place of the specific entity.]

3        **E.    Willful Infringement**

4            In this case, SSC argues that EDD willfully infringed SSC's patents.

5            To prove willful infringement, SSC must first persuade you that EDD induced

6    infringement of a valid and enforceable claim of SSC's patent.  The requirements for

7    proving such infringement were discussed in my prior instructions.

8            In addition, to prove willful infringement, SSC must persuade you that it is highly

9    probable that EDD acted with reckless disregard of the claims of SSC's patents.

10           To demonstrate such "reckless disregard," SSC must persuade you that EDD

11   actually knew, or it was so obvious that EDD should have known, that its actions would

12   result in the direct infringement of a valid patent.

13           In deciding whether EDD acted with reckless disregard for SSC's patents, you

14   should consider all of the facts surrounding the alleged infringement including, but not

15   limited to, the following factors.

16           Factors that may be considered as evidence that EDD was not willful include

17   whether EDD acted in a manner consistent with the standards of commerce for its industry.

18           **[Note:** The Court adopts the Northern District model rule with modifications made

19   to clarify that EDD is accused of induced infringement.

20           The Court rejects EDD's additional instruction regarding a good faith belief, finding

21   that this instruction is not present in the Northern District's model rules.  The notion of a

22   good faith belief is present in the Federal Circuit Bar Association's model rule 3.10, which

23   states that one factor of reckless disregard can include: "Whether or not [alleged infringer]

24   made a good-faith effort to avoid infringing the [ ] patent, for example, whether [alleged

25   infringer] attempted to design around the [ ] patent."  This instruction has a different

26   meaning and implication than EDD's proposed language, which is vague, and suggests that

27   a good faith *belief* of noninfringement is sufficient.  If EDD intends to present evidence of

28   a good faith effort to avoid infringing, the Court is willing to include the Federal Circuit

United States District Court
Northern District of California

Bar Association's instruction <u>in full</u>, which includes all suggested factors the jury can consider.]

## VIII.   Invalidity

### A.   Burden of Proof

I will now instruct you on the rules you must follow in deciding whether EDD has proven that claims 30-31, 36-39, 41-43, and 45-48 of the '554 patent and claim 20 of the '209 patent are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, EDD must persuade you that it is highly probable that the claim is invalid.

During this case, EDD has submitted prior art that was not considered by the United States Patent and Trademark Office ("PTO") during the prosecution of the patents-in-suit. EDD contends that such prior art invalidates certain claims of the patents.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the patents-in-suit.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make EDD's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

[**Note:**  The Court adopts the Northern District model patent rule.  The Court addresses SSC's concern for clarifying the burden of proof by instructing the jury separately on this topic.  Additionally, the model patent rule contains a statement of the relevant burden of proof.]

### B.   Anticipation ('554 Patent Only)

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new, we say it is "anticipated" by a prior art reference.

United States District Court
Northern District of California

1

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of the invention looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that EDD can show that a claim of the '554 patent was not new:

- if the claimed invention was already patented or described in a printed publication anywhere in the world before September 24, 1997. A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

- if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before September 24, 1997.

**[Note:** The Court adopts EDD's proposed instructions. The Court sees no reason to deviate from the model instructions.**]**

**C.   Obviousness**

Not all innovations are patentable. A claim of the '554 patent is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field as of September 24, 1997. A claim of the '209 patent is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field as of March 19, 1997. This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

**1.   Level of Ordinary Skill in the Art**

First, you must decide the level of ordinary skill in the field that someone would

have had as of the effective filing date of the claimed invention. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

- the levels of education and experience of persons working in the field;
- the types of problems encountered in the field; and
- the sophistication of the technology.

SSC contends that the level of ordinary skill in the field of both the '554 and '209 patents would be someone with an undergraduate degree in optical engineering, electrical engineering, or physics with at least three years of relevant experience in optical design for LEDs. EDD contends that the level of ordinary skill in the field of the '554 patent would be someone with a Master's degree in physics, optics or electrical engineering and five years of experience in waveguide research or design; or a Ph.D. in physics, optics or electrical engineering and three years of experience in waveguide research or design and the level of ordinary skill in the field of the '209 patent would be someone with at least a Master's degree in optics, electrical engineering, or physics with at least three years of relevant experience in design of optical systems.

### 2. Scope and Content of the Prior Art

Second, you must decide the scope and content of the prior art. In order to be considered as prior art patent, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

### 3. Difference Between Claimed Invention and Prior Art

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

### 4. Secondary Considerations

Finally, you should consider any of the following factors that you find have been shown by the evidence:

1. commercial success of a product due to the merits of the claimed invention;

United States District Court
Northern District of California

2. a long felt need for the solution provided by the claimed invention;

3. unsuccessful attempts by others to find the solution provided by the claimed invention;

4. copying of the claimed invention by others;

5. unexpected and superior results from the claimed invention;

6. acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

7. other evidence tending to show nonobviousness;

8. independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

9. other evidence tending to show obviousness.

The presence of any of factors 1-7 as appropriate may be considered by you as an indication that the claimed invention would not have been obvious as of the effective filing date of the claimed inventions—September 24, 1997 for the '554 patent and March 19, 1997 for the '209 patent— and the presence of the factors 8-9 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

### 5.    Obviousness Guidance

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether EDD has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces

or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.  However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field as of the effective filing date of the claimed inventions—September 24, 1997 for the '554 patent and March 19, 1997 for the '209 patent— and you should not consider what is known today or what is learned from the teaching of the patent.

     **[Note:** The Court adopts SSC's proposed instructions because they track the Northern District model instructions.  However, the Court agrees with EDD's objection that the instructions are long and complex.  To assist the reader, the Court has added sub-headings.  The Court agrees that the final paragraph is burdensome and is willing to consider a different model instruction with a more succinct instruction.  SSC should propose its own shorter instruction or state its objections.**]**

## IX.  Damages

### A.    Burden of Proof

     I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that EDD induced infringement of any valid claim of the '554 and/or '209 patent, you must then determine the amount of money damages to be awarded to SSC to compensate it for the infringement.

The amount of those damages must be adequate to compensate SSC for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

SSC has the burden to persuade you of the amount of its damages.  You should award only those damages that SSC more likely than not suffered.  While SSC is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  SSC is not entitled to damages that are remote or speculative.

**[Note:** The Court adopts the Northern District model instructions, but clarifies that the jury would need to find that EDD induced infringement.]

**B.    Reasonable Royalty Entitlement**

SSC seeks a reasonable royalty in the form of a one-time lump sum for all past and future infringement of its patents.  If you find that SSC has established induced infringement, SSC is entitled to at least a reasonable royalty to compensate it for that infringement.

**[Note:** The Court finds that the Northern District model instructions on the reasonable royalty are not well suited for this case.  Instead, the Court adopts the Federal Circuit Bar Association's jury instruction B.6, 6.5.]

**C.    Reasonable Royalty- Definition**

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid

United States District Court
Northern District of California

United States District Court
Northern District of California

1   and infringed.  Your role is to determine what the result of that negotiation would have

2   been.  The test for damages is what royalty would have resulted from the hypothetical

3   negotiation and not simply what either party would have preferred.

4          One way to calculate a royalty, as SSC has contended is appropriate here, is to

5   determine a one-time lump sum payment that the infringer would have paid at the time of

6   the hypothetical negotiation for a license covering all sales of the licensed product, both

7   past and future. When a one-time lump sum is paid, the infringer pays a single price for a

8   license covering both past and future infringing sales.

9          It is up to you, based on the evidence, to decide what type of royalty is appropriate

10  in this case for the life of the patent.

11         [**Note:** The Court adopts the Northern District patent instructions, tailored to the

12  lump-sum royalty.  The Court does not include the instruction on licenses because those

13  instructions are for when the patent covers only one component of the product.  The Court

14  is not aware that SSC intends to advance this argument.]

15     **D.     Reasonable Royalty - Relevant Factors**

16         In determining the reasonable royalty, you should consider all the facts known and

17  available to the parties at the time the infringement began.  Some of the kinds of factors

18  that you may consider in making your determination are:

19         1.   The royalties received by the patentee for the licensing of the patent-in-suit,

20              proving or tending to prove an established royalty.

21         2.   The rates paid by the licensee for the use of other patents comparable to the

22              patent-in-suit.

23         3.   The nature and scope of the license, as exclusive or nonexclusive, or as

24              restricted or nonrestricted in terms of territory or with respect to whom the

25              manufactured product may be sold.

26         4.   The licensor's established policy and marketing program to maintain his or

27              her patent monopoly by not licensing others to use the invention or by

28              granting licenses under special conditions designed to preserve that

monopoly.

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if

United States District Court
Northern District of California

both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

[**Note:** The Court has adopted the parties' stipulated instruction, based on Federal Circuit Model Rule 6.7.]

### E.    Calculating Damages in Cases of Inducement

[**Note**: The Court is inclined to agree with SSC that that the Northern District model jury instructions appear to be inconsistent with the case law.  However, the Court is concerned that the jury could confuse damages from all instances of infringement, versus damages causally related to EDD's inducement of infringement.  SSC should propose a jury instruction on damages in cases of inducement.]

### F.    Date of Commencement of Damages

[**Note:** The Court has not found a model jury instruction that appears to be applicable to the facts of this case on the date of commencement of damages.  The parties should be prepared to further discuss this issue.]

## X.   Conduct of the Jury During Deliberations

### A.   Use of Electronic Technology To Conduct Research on or Communicate About A Case

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.  I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the internet or available through social media might be wrong, incomplete, or inaccurate.  You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have.  In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom.  Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case.  This would unfairly and adversely impact the judicial process.

You will be given a computer that has access only to files containing admitted evidence in this case.  You should not use the computer for any other purpose.

[Note: The Court has added the last sentence under the assumption that the parties will provide spreadsheets and possibly other evidence to the jurors on a computer.  The parties must specifically request this computer at the start of trial to ensure the appropriate technical assistance is available.]

### B.    Duty To Deliberate

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

### C.    Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case (including the parties, evidence, witnesses or the lawyers) in person, in writing, by phone or electronic means, via email, text messaging, social media or any Internet chat room, blog, website or other feature.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

1    Do not read, watch, or listen to any news or media accounts or commentary about

2    the case or anything to do with it (including the parties, evidence, witnesses or the

3    lawyers); do not do any research, such as consulting dictionaries, searching the Internet or

4    using other reference materials; and do not make any investigation or in any other way try

5    to learn about the case on your own.

6    The law requires these restrictions to ensure the parties have a fair trial based on the

7    same evidence that each party has had an opportunity to address.  A juror who violates

8    these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to

9    any outside information, please notify the court immediately.

10   **D.    Communication with the Court**

11   If it becomes necessary during your deliberations to communicate with me, you

12   may send a note through the Courtroom Deputy, signed by your presiding juror or by one

13   or more members of the jury.  No member of the jury should ever attempt to communicate

14   with me except by a signed writing; I will communicate with any member of the jury on

15   anything concerning the case only in writing, or here in open court.  If you send out a

16   question, I will consult with the parties before answering it, which may take some time.

17   You are not to conclude from any time delays that the question is difficult to answer and

18   you are not to speculate that the time delay gives any indication as to what the answer is.

19   You may continue your deliberations while waiting for the answer to any question.

20   Remember that you are not to tell anyone—including me—how the jury stands,

21   numerically or otherwise, until after you have reached a unanimous verdict or have been

22   discharged.  Do not disclose any vote count in any note to the court.

23   **E.    Return of Verdict**

24   A verdict form has been prepared for you. After you have reached unanimous

25   agreement on a verdict, your presiding juror will fill in the form that has been given to you,

26   sign and date it, and advise the court that you are ready to return to the courtroom.

27   **IT IS SO ORDERED**

28

*United States District Court*
*Northern District of California*

Dated:  March 8, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28