NAGASHIMA & HASHIMOTO
MARC R. LABGOLD (*pro hac vice*)
mlabgold@labgoldlaw.com
PATRICK J. HOEFFNER (*pro hac vice*)
phoeffner@labgoldlaw.com
12005 Sunrise Valley Drive, Suite 203
Reston, Virginia 20191
Telephone: 877-401-8855
Facsimile: 877-401-8855

NAGASHIMA & HASHIMOTO
TAKAAKI NAGASHIMA (*pro hac vice*)
nagashima@nandhlaw.com
Hirakawa-cho, KS Bldg., 2nd Floor
2-4-14, Hirakawa-cho, Chiyoda-ku
Tokyo 102-0098 Japan
Telephone: +81-3-3239-5750
Facsimile: +81-3-3239-8538

SHAW KELLER LLP
JOHN W. SHAW (*pro hac vice*)
jshaw@shawkeller.com
JEFFREY CASTELLANO (*pro hac vice*)
jcastellano@shawkeller.com
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
Telephone: 302-298-0700

SEILER EPSTEIN ZIEGLER &
  APPLEGATE LLP
MARK W. EPSTEIN (SBN 143202)
GEORGE M. LEE (SBN 172982)
gml@sezalaw.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415-979-0500
Facsimile: 415-979-0511

*Attorneys for Plaintiff Enplas Display Device Corp.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ENPLAS DISPLAY DEVICE CORPORATION; ENPLAS TECH SOLUTIONS, INC.; and ENPLAS (U.S.A.), INC.,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>SEOUL SEMICONDUCTOR CO., LTD.,<br><br>Defendant/Counterclaim Plaintiff. | **CASE NO. 3:13-cv-05038-NC**<br><br>**JURY TRIAL DEMANDED**<br><br>**EDD'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Assigned to Hon. Nathanael M. Cousins<br><br>Trial Date: March 14, 2016 |

Plaintiff Enplas Display Devices Corporation ("EDD") moves for judgment as a matter of law of non-infringement under Federal Rule of Civil Procedure 50(a). EDD respectfully submits that no reasonable jury could find in favor of defendant Seoul Semiconductor Company, Ltd. ("SSC") on following issues because no legally sufficient evidentiary basis exists to find for SSC on these issues.

### A.   No Direct Infringement

The #9854D, #9854E, and #9879 lenses do not directly infringe claims 1, 6, 33, 34 or 35 of U.S. Patent No. 6,473,554 ("the 554 Patent"), alone or in combination with an LED or any other components or products, for at least the following reasons.

    1.    Lenses #9854D, #9854E, and #9879 do not infringe **claims 1 or 6** because no legally sufficient evidentiary basis exists for a reasonable jury to find that these lenses "direct light between generally parallel top and bottom surfaces outside said interior region." No reasonable jury could find this fact in favor of SSC because Dr. Moore's ray traces all show the light rays terminating at the bottom surface before they enter the area between the two surfaces that SSC identifies as the generally parallel top and bottom surfaces.

    2.    Lenses #9854D, #9854E, and #9879 do not infringe **claims 1 or 6** because no legally sufficient evidentiary basis exists for a reasonable jury to find that these lenses contain a "refractive index interface . . . configured to reflect light rays emitted by the point source." No reasonable jury could find this fact in favor of SSC because the undisputed testimony from Dr. Moore is that the lens surface is configured to refract and emit light rays over the vast majority of its surface, and that light rays emitted from the vast majority of point sources on the surface of the LED do so.

    3.    Lenses #9854D, #9854E, and #9879 do not infringe **claims 1 or 6** because no legally sufficient evidentiary basis exists for a reasonable jury to find that these lenses "capture . . . light rays which would otherwise pass out of said waveguide . . . <u>for</u>

propagation between said top and bottom surfaces." No reasonable jury could find this fact in favor of SSC for three reasons. First, there is no evidence of "propagation" of the light rays. Dr. Moore admitted the claim required more than one reflection. (Tr. 646:01-04). Yet, Dr. Moore admitted SSC has not provided any ray trace with more than reflection. (Tr. 647:04-05). SSC has only presented evidence of a single reflection, not propagation as that term is used in the '554 Patent. Second, the "top and bottom surfaces" identified by SSC's expert Dr. Moore are not part of the waveguide, but rather are surfaces of the non-optical flange surface, not the optical portion of the lens, as Dr. Moore admitted. Third, none of the ray traces presented by Dr. Moore show propagation "between" the identified surfaces. Rather, the ray traces all show the light rays terminating at the bottom surface before they enter the area between the two surfaces that SSC identifies as the generally parallel top and bottom surfaces.

4. Lenses #9854D, #9854E, and #9879 do not infringe **claims 30, 33, 34, or 35** because no legally sufficient evidentiary basis exists for a reasonable jury to find that these lenses do not include a "TIR surface extending **from a point above the LED**." No reasonable jury could find this fact in favor of SSC because no portion of the surface of the lens identified by SSC as being a location where TIR occurs is, in fact, located above the LED. Under SSC's infringement analysis, all TIR portions of the lenses are outside the center portion of the lens that is situated directly above the LED. The evidence shows *all* light emitted from the LED from *all* angles of emission are refracted by the lens surface above the LED – thus, there is no "TIR surface" at any point "above the LED."

5. Lenses #9854D, #9854E, and #9879 do not infringe **claims 30, 33, 34, or 35** because no legally sufficient evidentiary basis exists for a reasonable jury to find that the portion of the lens surface identified by SSC's expert Dr. Moore as the "TIR surface" is "angled . . . to produce total internal reflection within" the accused lenses. On the contrary, as Dr. Moore admitted, the entire central portion of what he identifies as the "TIR surface" emits and refracts light, and does not totally internally reflect any light

emitted from any point on the LED at any angle.  Thus, the broad "TIR surface" identified by Dr. Moore cannot be a "TIR surface" according to the Court's construction, which requires that such as surface be "angled . . . to produce total internal reflection."

6.     Lenses #9854D, #9854E, and #9879 do not infringe **claims 30, 33, 34, or 35** because no legally sufficient evidentiary basis exists for a reasonable jury to find that these lenses have a "curving TIR surface totally internally reflecting light rays such that reflected light rays propagate from the TIR surface towards the edge of the optical element."  No reasonable jury could find this fact in favor of SSC because even what little light is totally internally reflected in the ray traces relied upon by Dr. Moore is reflected downward toward the bottom of the lens, not toward the edge of the lens.  Thus, even assuming an light is reflected, it is not reflected "towards the edge of the optical element."

7.     Lenses #9854D, #9854E, and #9879 do not infringe claim 33 because no legally sufficient evidentiary basis exists for a reasonable jury to find that the surfaces of the accused lenses are "leaky" as that term is used in the '554 Patent.  No reasonable jury could find this fact in favor of SSC because the accused lenses emit the vast majority of light that is emitted by the LED.

8.     Lenses #9854D, #9854E, and #9879 do not infringe **claim 34** because no legally sufficient evidentiary basis exists for a reasonable jury to find that these lenses have a cusp that is "contoured to permit leakage of light through said TIR surface."  No reasonable jury could find this fact in favor of SSC because the "cusp" of the accused lens emits all of the light from the LED.

9.     Lenses #9854D, #9854E, and #9879 do not infringe **claim 35** because no legally sufficient evidentiary basis exists for a reasonable jury to find that these lenses have a cusp that is "rounded to permit leakage of light through said TIR surface."  No reasonable jury could find this fact in favor of SSC because the "cusp" of the accused lens emits all of the light from the LED.

The #4922, #9853A, #9854D, #9854E, and #9879 lenses do not infringe claim 20 of U.S. Patent No. 6,007,209 ("the '209 Patent"), alone or in combination with an LED or any other components or products, when used in a backlight for an LCD display for at least the following reasons:

10. With respect to all accused products other than those allegedly containing the #9854D lens, no legally sufficient evidentiary basis exists for a reasonable jury to find that any direct infringement of **claim 20** exists because SSC failed to present or prove infringement of the '209 Patent on an element-by-element basis. Instead, for each of these products, SSC's expert showed a single demonstrative slide and then summarily stated that he found all elements of the claim. *See CCC Group, Inc. v. Martin Eng'g Co.*, No. 05-cv-00086-RPM-MJW, 2008 WL 4277764, at *8 (D. Colo. Sept. 17, 2008) (granting JMOL because "oversimplified" summary testimony by an expert does not "satisfy the plaintiff's burden of proof of infringement"); *see also Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998) ("wholly conclusory" expert declarations will not avoid summary judgment of noninfringement); *Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997).

11. Lenses #4922, #9853A, #9854D, #9854E, and #9879 do not infringe **claim 20** because no legally sufficient evidentiary basis exists for a reasonable jury to find that any direct infringer performed the claimed "method of backlighting a display panel." Claim 20 is a method claim. To prove infringement, SSC must prove that all steps of the "method of backlighting" were performed in the United States. No reasonable jury could find this fact in favor of SSC because SSC failed to present such evidence, and instead presented evidence of purchasing televisions and shipping them to South Korea. SSC presented no evidence of using the accused products in any location or of performing the accused method in any location, let alone in the United States.

12. Lenses #4922, #9853A, #9854D, #9854E, and #9879 do not infringe **claim 20** because no legally sufficient evidentiary basis exists for a reasonable jury to find that

any direct infringer performed the claimed "step of producing illumination . . . such that the light exiting the aperture is substantially uniform in intensity and color." Dr. Moore admitted that he had no evidence that this step had been performed, because no one could know that light exiting the aperture was substantially uniform in light and color without turning on the television. (Tr. 658:24-659:15).

13. Lenses #4922, #9853A, #9854D, #9854E, and #9879 do not infringe **claim 20** because no legally sufficient evidentiary basis exists for a reasonable jury to find that any television accused of directly infringing by SSC includes a "substantially lambertian light source comprising a cavity with internal side walls, an internal bottom wall, and an aperture." No reasonable jury could find this fact in favor of SSC because SSC has offered no evidence that the televisions were turned on or used, and thus there is no evidence that the accused backlights exhibited lambertian emission.

14. Lenses #4922, #9853A, #9854D, #9854E, and #9879 do not infringe **claim 20** because no legally sufficient evidentiary basis exists for a reasonable jury to find that any television accused of directly infringing by SSC performs a "step of producing illumination comprising the step of directing light rays emitted by plural light sources mounted on said internal bottom wall and around the perimeter of the aperture." No reasonable jury could find this fact in favor of SSC because the '209 patent requires that the light sources be mounted outside the perimeter of the aperture and the accused backlights do not have any light sources outside the perimeter of the aperture. Dr. Moore admitted that he identified bottom-mounted lights, rather than lights outside the perimeter of the aperture, to satisfy the "around the perimeter" limitation.

**B.     No Inducement of Infringement**

SSC has failed to prove inducement of infringement by EDD for at least the following reasons:

1.    EDD has not induced infringement because no legally sufficient evidentiary basis exists for a reasonable jury to find that EDD assisted or encouraged any direct infringer to infringe either patent-in-suit.  No reasonable jury could find this fact in favor of SSC because SSC presented no evidence that showed EDD in any way assisted or encouraged any direct infringer to infringe either patent-in-suit.  Further, SSC presented no evidence that EDD had any contact with any direct infringer.

2.    EDD has not induced infringement because no legally sufficient evidentiary basis exists for a reasonable jury to find that EDD lacked a good faith, reasonable belief in non-infringement.

3.    EDD has not induced infringement because, for the reasons set forth above, no legally sufficient evidentiary basis exists for a reasonable jury to find that EDD had knowledge of any acts of direct infringement in the United States.

4.    EDD has not induced infringement because, for the reasons set forth above, no legally sufficient evidentiary basis exists for a reasonable jury to find that EDD had an intent to cause any direct infringer to infringe either patent-in-suit.

5.    EDD has not induced infringement because no legally sufficient evidentiary basis exists for a reasonable jury to find that EDD induced infringement of the '209 Patent before EDD had knowledge of the '209 Patent on October 16, 2013.

6.    SSC has EDD has not induced infringement because, for the reasons set forth in Section A above ("No Direct Infringement"), SSC has failed to prove any direct infringement in the United States.

**C.     No Willful Infringement**

SSC has failed to prove willful infringement by EDD of either the '554 or '209 Patents for at least the following reasons:

1.     There is no legally sufficient evidentiary basis exists for a reasonable jury to find that EDD acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  Based on testimony of Dr. Moore alone, the Court should find that as a matter of law that EDD's non-infringement positions with respect to the '554 and '209 Patents were not objectively baseless.  For example, SSC's failure of proof with regard to "propagation" in claim 1 of the '554 patent, "TIR surface" in claim 30 of the '554 patent, "method of backlighting" of claim 20 of the '209 patent, and lights "around the perimeter of the aperture" in claim 20 of the '209 patent, establish conclusively that EDD's corresponding non-infringement positions were objectively reasonable.  Thus as a matter of law, EDD could not have willfully infringed either of the patents-in-suit.  *See Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, 561 F. App'x 934, 943 (Fed. Cir. 2014) (reversing finding of willfulness where district court had improperly concluded that the accused infringer's defenses were objectively unreasonable); *Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1377-78 (Fed. Cir. 2012) (affirming summary judgment of no willfulness where defendant's "assertions of invalidity and noninfringement were, at minimum, objectively reasonable defenses to [plaintiff's] charge of infringement" based partly on defendant's "compelling non-infringement and invalidity arguments").

2.     There is no legally sufficient evidentiary basis exists for a reasonable jury to find that EDD had knowledge of any risk of infringement.

3.     There is no legally sufficient evidentiary basis exists for a reasonable jury to find that EDD lacked a good faith reasonable belief of non-infringement of the '554 and '209 Patents.

**D.     No Damages**

SSC has failed to prove that it is entitled to damages for any infringement by EDD of either the '554 or '209 Patents for at least the following reasons:

1.     There is no legally sufficient evidentiary basis exists for a reasonable jury to find that SSC is entitled to a lump sum damages award above $500,000 for the '554 Patent because SSC presented no evidence that its expert's higher proposed damages amount is based on infringement of just the three lenses accused of infringing the '554 Patent.  Rather, SSC and its expert expressly and explicitly stated that such an award would represent an "insurance" policy against infringement by lenses other than the three lenses accused of infringing the '554 Patent.  Such an award is contrary 35 U.S.C. § 284, under which the Court may award damages "adequate to compensate *for the infringement*, but in no event less than a reasonable royalty *for the use made of the invention by the infringer*."  35 U.S.C. § 284 (emphasis added).  *See also Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333-34 (Fed. Cir. 2009) (reversing damages award because record was "conspicuously devoid of any data about how often consumers use the patented date-picker invention," and explaining that "[t]he damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers."); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015) (reversing damages award based on hypothetical negotiation that included non-infringing activity after patent expiration); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention . . . . Thus, the trial court must carefully tie proof of damages to the claimed invention's footprint in the market place. . . . Any evidence unrelated to the claimed invention does not support compensation for infringement but *punishes beyond the reach of the statute*." (emphasis added)).

1
2  Dated:  March 21, 2016
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted by,

NAGASHIMA & HASHIMOTO

/s/ *Marc R. Labgold*
Marc R. Labgold, Ph.D.
Attorneys for Plaintiff / Counterclaim
Defendant *Enplas Display Device Corp.*