UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENPLAS DISPLAY DEVICE CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SEOUL SEMICONDUCTOR COMPANY, LTD.,<br><br>Defendant. | Case No.13-cv-05038 NC<br><br>**ORDER GRANTING MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO INEQUITABLE CONDUCT** |

On April 8, 2016, the Court held a bench trial on EDD's defense that the '209 patent is invalid and unenforceable due to the inventor's inequitable conduct. According to EDD, Dr. Pelka, the inventor of the '209 patent, intentionally failed to disclose to the PTO a material prior art reference, the Gleckman '354 patent. After EDD presented its case, SSC moved for judgment as a matter of law. The Court granted the motion, finding that EDD failed to meet its burden on both the materiality and intent elements of inequitable conduct. The Court now further elaborates on that ruling.

I.  **FINDINGS OF FACT**

Dr. David Pelka is the inventor of U.S. Patent No. 6,007,209 ('209 patent). DTX 1001. In 1992, Dr. Pelka co-founded the company TIR Technologies. Tr. 10. Dr. Pelka's responsibilities at TIR included deciding whether or not an idea was good enough to pursue a patent. Tr. 11. In discharging those duties, Dr. Pelka evaluated the value of the

Case No.13-cv-05038 NC

United States District Court
Northern District of California

1  technology, and assessed whether it was worth taking to a patent attorney, filing a
2  provisional application, or filing a full application. Tr. 11-12. In 1997, TIR Technologies
3  was acquired by Teledyne, Inc. Tr. 10. At that time, Dr. Pelka remained involved in
4  research and development, but no longer had administrative duties related to patents. Tr.
5  12.

6  Phillip Gleckman was an employee of TIR Technologies and the inventor of the
7  '197 and '354 patents. Tr. 14-15. Sometime before October 1993, Dr. Pelka gave
8  Gleckman permission to file the '197 patent (Patent No. 5,440,197). Tr. 16. Gleckman
9  filed the '197 patent on October 5, 1993. PX 30. Later, Dr. Pelka gave Gleckman
10 permission to file a related application. Tr. 17. On October 3, 1994, Gleckman filed the
11 application for the '354 patent (No. 5,684,354). PX 20. The '354 patent was a
12 continuation-in-part of the '197 patent. PX 20. Sometime in 1994, Gleckman left TIR
13 Technologies, and Dr. Pelka would have been consulted on the scientific issues related to
14 Gleckman's outstanding patent applications with TIR Technologies. Tr. 36.

15 On March 19, 1997, Dr. Pelka filed the application for the '209 patent. DTX 1001.
16 The '209 patent issued on December 28, 1999. DTX 1001.

17 The '354 patent and the '209 patent have a number of similarities. Both patents are
18 related to methods of backlighting displays. DTX 1001, PX 20. Additionally, Dr. Pelka
19 admitted that the patent attorneys used figures 12 and 13 of the '354 patent as the basis for
20 figures 3 and 4 of the '209 patent. Tr. 19.

21 Dr. Pelka testified that he never became aware that the '354 patent had issued while
22 the '209 application was pending. Tr. 22. Dr. Pelka testified that he was not aware of the
23 contents of the '354 application. Tr. 22. Dr. Pelka admitted that if he had known of the
24 '354 patent and its contents, he would have disclosed it to the PTO in the '209 application.
25 Tr. 22.

26 On April 13, 1995, TIR Technologies filed a foreign patent application for the
27 Gleckman '354 patent. PX 210. Dr. Pelka testified that he was not aware of the foreign
28 patent applications for the '354 patent. Tr. 27-28. Dr. Pelka stated that TIR Technologies

Case No. 13-cv-05038 NC                     2

1  patent counsel at Knobbe Martens, Bill Neiman, was entrusted with authority to do
2  whatever was in the best interest of the company. Tr. 26-27.
3      Dr. Pelka's other patent, the '554 patent, issued in October 2002. Tr. 37. In that
4  application, the Gleckman '354 patent is disclosed. Tr. 38. Dr. Pelka testified that either
5  he or the patent attorneys were aware of the '354 patent, but Dr. Pelka was unsure who
6  specifically included the '354 patent as a prior art reference in the '554 application. Tr.
7  38-39.
8      Dr. Pelka also testified that another patent, the Stine '706 patent, had almost
9  identical architecture to the Gleckman '354 patent. Tr. 40. The Stine '706 patent was
10 disclosed in the '209 patent application. DTX 1001.

## II. CONCLUSIONS OF LAW

"To prove inequitable conduct, the challenger must show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012); *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013). Because inequitable conduct is an equitable remedy, there is no right to a jury, and the Court will be the fact finder. *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1110 (Fed. Cir. 2003). "[E]ven if this elevated evidentiary burden is met as to both elements, the district court must still balance the equities to determine whether the applicant's conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).

### A. Materiality

Information is material if "the PTO would not have allowed the claim had it been aware of the undisclosed prior art." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011). "This means that to assess materiality, the court must look to the standard used by the PTO to allow claims during examination." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1189 (Fed. Cir. 2014). Thus, the Court applies the

preponderance of the evidence standard used by the PTO. *Therasense*, 649 F.3d at 1291-92. "[E]ven if a district court does not invalidate a claim based on a deliberately withheld reference, the reference may be material if it would have blocked patent issuance under the PTO's different evidentiary standards." *Id.* "It is well-established, however, that information is not material if it is cumulative of other information already disclosed to the PTO." *Star Sci.*, 537 F.3d at 1367.

Here, Dr. Pelka admitted that if he had known of the '354 patent and its contents, he would have disclosed it to the PTO. Tr. 22. Dr. Pelka also testified that another patent, the Stine '706 patent, had almost identical architecture to the Gleckman '354 patent. Tr. 40. The Stine '706 patent was disclosed in the '209 patent. DTX 1001. EDD presented no further evidence to support its assertion that the '354 patent is material to the '209 patent.

The Court previously determined that claim 20 of the '209 patent is not invalid as anticipated by the '354 patent because the '354 patent fails to teach placing lights in the back wall of the display cavity. Dkt. No. 321. Additionally, the jury found that claim 20 of the '209 patent was not invalid as obvious, in light of the '354 patent. Dkt. No. 447.

Those determinations were made by the higher clear and convincing standard for invalidity, so do not automatically dispose of the question of materiality. However, EDD has presented no further evidence, beyond Dr. Pelka's admission that he would have disclosed the '354 patent, to suggest that the PTO would not have issued the '209 patent if it was aware of the '354 patent. Additionally, Dr. Pelka's testimony that the Stine '706 patent disclosed the same information as the Gleckman '354 patent suggests that the '354 patent was likely cumulative of other information already disclosed to the PTO.

The Court concludes that EDD did not meet its burden to demonstrate that the PTO would not have allowed claim 20 or the issuance of the '209 patent if the '354 patent had been disclosed.

**B.   Intent**

Although the Court concludes that EDD did not meet the materiality element so the defense of inequitable conduct fails, the Court proceeds to analyze the intent element, in an

Case No. 13-cv-05038 NC                 4

abundance of caution.

Inequitable conduct requires that the patentee acted with specific intent to deceive the PTO. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Id.* "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Therasense*, 649 F.3d at 1290. "We recognize instead that because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence, provided that such intent is the single reasonable inference." *Am. Calcar*, 768 F.3d at 1190-91.

Here, the evidence shows that (1) Dr. Pelka was in charge of patent applications at TIR Technologies; (2) he was aware of the '197 application; (3) he authorized Gleckman to file a continuation-in-part application, which resulted in the '354 patent; (4) figures from the '209 patent were substantially similar to and likely copied from the '354 patent; and (4) at some point after the issuance of the '354 patent and before Dr. Pelka filed his '554 patent application, either he or his patent attorney was aware of the '354 patent. Dr. Pelka also testified that he granted his patent attorneys significant authority to add references, complete the patent application, correspond with the PTO, and notify him of issued patents.

Here, the single most reasonable inference is that Dr. Pelka simply was unaware of '354 patent when the '209 application was pending. Dr. Pelka stated unequivocally that he was unaware of the '354 patent, and that if he had seen the patent, he would have disclosed it to the PTO. Even if the Court assumes that Dr. Pelka should have known of the patent or likely did know of it, there is no evidence in the record to support the assertion that Dr. Pelka had a specific intent to deceive. Even then, the most reasonable inference is that Dr. Pelka made an administrative error in failing to disclose the '354 patent. Dr. Pelka's testimony points to the same conclusion, as he stated that he would have disclosed the patent if he had been aware of it.

Case No. 13-cv-05038 NC              5

1   The Court observed Dr. Pelka testify on the stand twice, once at the jury trial, and
2   once during the bench trial. In both instances, Dr. Pelka gave direct answers to questions
3   and did not contradict his prior deposition testimony. Overall, Dr. Pelka presented himself
4   as a credible, trustworthy, and forthcoming witness. He placed emphasis on the level of
5   trust he had in his patent attorneys to follow the appropriate procedures, and he appeared
6   concerned that his attorneys failed to properly disclose a relevant reference. In sum, the
7   Court does not agree with EDD that the single most reasonable inference here is that Dr.
8   Pelka is lying about his level of knowledge of the '354 patent, or that he deliberately
9   withheld the reference with the intent to deceive the PTO.

## III. CONCLUSION

EDD failed to present clear and convincing evidence to support its defense that the '209 patent is unenforceable because of Dr. Pelka's inequitable conduct. The Court concludes that EDD did not establish that the '354 patent was material, or that Dr. Pelka intentionally withheld the reference, intending to deceive the PTO.

SSC's motion for judgment as a matter of law is GRANTED.

**IT IS SO ORDERED.**

Dated: April 18, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge