UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENPLAS DISPLAY DEVICE CORPORATION, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SEOUL SEMICONDUCTOR COMPANY, LTD.,<br><br>    Defendant. | Case No. 13-cv-05038 NC<br><br>**ORDER ON POST-TRIAL MOTIONS**<br>Re: Dkt. Nos. 484, 486, 529 |

On March 24, 2016, the jury returned a verdict in this patent infringement case that Enplas Display Device Corporation ("EDD") willfully infringed the '554 and '209 patents, and awarded Seoul Semiconductor Company, Ltd. ("SSC") $4,070,000. The jury also found that the patents were not invalid. After the trial, the Court determined that claim 2 of the '554 patent was not invalid. The Court also ruled that EDD did not prove that the '209 patent inventor, Dr. Pelka, engaged in inequitable conduct.

Now, the parties each move for further post-trial relief. EDD moves for judgment as a matter of law, a new trial, and to alter the judgment. SSC moves for the Court to award enhanced damages and attorneys' fees. The Court finds that no further relief is necessary. The Court DENIES EDD's motion. The Court concludes that although EDD willfully infringed the patents, there is no evidence of egregious behavior and this case does not warrant enhanced damages or attorneys' fees.

Case No. 13-cv-05038 NC

## I. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Under Federal Rule of Civil Procedure 50(b), a court may grant a renewed motion for judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." "A renewed motion for judgment as a matter of law is properly granted 'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)); *see also Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1314 (Fed. Cir. 2006) ("A motion for judgment as a matter of law is properly granted only if no reasonable juror could find in the non-movant's favor.").

A jury's verdict must be upheld if supported by substantial evidence, even if contrary findings are also possible. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008). In considering the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, disregard all evidence favorable to the moving party that the jury is not required to believe, and ask whether the nonmoving party has presented sufficient evidence to support the jury's conclusion. *Id.*; *Escriba*, 743 F.3d at 1242-43. "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

EDD moves for judgment as a matter of law, for a new trial, and relief from the judgment on (A) improper claim construction; (B) infringement and invalidity verdicts; (C) the jury's finding of induced infringement; (D) the amount of damages; (E) inequitable conduct; and (F) a handful of additional issues.

### A. Claim Construction

EDD moves for a new trial under Rule 59(a) because it argues that the Court did not construe claims that were in dispute. Dkt. No. 484 at 7-9. Specifically, EDD argues that the Court failed to construe the terms "illumination coupler," "such that light rays which

Case No. 13-cv-05038 NC                    2

1  would otherwise pass out of said waveguide are captured for propagation between said top
2  and bottom surfaces," "leaky," and "leakage," for the '554 patent; and "around the
3  perimeter of the aperture" and "directing" for the '209 patent.

4  Northern District of California Patent Local Rule 4-4 requires litigants to identify
5  all disputed terms, then jointly identify the 10 most significant terms to be presented at the
6  *Markman* hearing. The Federal Circuit requires a litigant to identify terms for claim
7  construction before post-trial motions: "As we have repeatedly explained, litigants waive
8  their right to present new claim construction disputes if they are raised for the first time
9  after trial." *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376
10 (Fed. Cir. 2010). In *SanDisk v. Memorex Products, Inc.*, 415 F.3d 1278, 1292 (Fed. Cir.
11 2005), the Federal Circuit affirmed the district court's refusal to entertain claim
12 construction arguments made "after relevant cut-off dates under [the Northern District of
13 California's Patent Local Rules] and the trial court's scheduling order."

14 EDD requested claim construction of the term "illumination coupler embedded in
15 an interior region of said waveguide" during the *Markman* hearing, and the Court
16 determined that construction was not necessary. Dkt. No. 81 at 14. Prior to the *Markman*
17 hearing, EDD requested construction for the '209 patent terms "around the perimeter of the
18 aperture" and "directing light rays," but did not identify these terms as significant. Dkt.
19 No. 74. When the Court did not include them in its *Markman* order, EDD never renewed
20 its request or clarified for the Court that these terms were significant. *Cf. Apple, Inc. v.
21 Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1079 (N.D. Cal. 2013) (finding that Samsung
22 had not waived construction of a term, noting that "Samsung has continued to raise the
23 issue, first in invalidity contentions and later in arguing for a jury instruction."). Finally,
24 EDD never identified the '554 patent terms "such that light rays which would otherwise
25 pass out of said waveguide are captured for propagation between said top and bottom
26 surfaces," "leaky," and "leakage," for the Court or requested construction of them.

27 The Court finds that EDD's request is too late and DENIES the motion for a new
28 trial on the basis that the Court did not construe the above terms.

Case No. 13-cv-05038 NC          3

### B. Infringement and Invalidity Verdict

The Court addresses the infringement and invalidity verdicts together, as both are based on expert testimony. Each side had one expert to discuss both infringement and invalidity. SSC's expert was Dr. Duncan Moore, and EDD's expert was Dr. Clifford Pollock. Both experts testified that they were persons of ordinary skill in the art relevant to the patents in suit. No party objected to the expert's qualifications to testify as to those topics.

Each expert testified fully that it was his expert opinion that his side won on infringement and invalidity. Both SSC and EDD walked their own expert and the jury through each element of each claim and used demonstratives to emphasize that their expert opined on all relevant aspects of all claims at issue. As to invalidity, each expert testified about prior art and the theories of invalidity consistent with his party's position. At times, opposing counsel was able to obfuscate an expert's opinion by forcing the expert to admit to the possibility of a contradictory opinion. However, neither expert omitted information necessary to a prima facie case of infringement or invalidity.

Thus, the jury's assessment of infringement and invalidity required the jury to find one expert more credible than the other. "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. The Court will not second-guess the jury's credibility determination. The jury's verdict that SSC proved by a preponderance of evidence that EDD infringed the patents-in-suit, and that EDD did not prove by clear and convincing evidence that the patents were invalid, is supported by substantial evidence. EDD's motion for judgment as a matter of law is DENIED.

### C. Induced Infringement

EDD challenges the jury finding that it induced infringement, arguing that EDD did not know its downstream users. Prior to the start of trial, the Court ruled that SSC did not need to prove that EDD knew its downstream users with specificity. Dkt. No. 389 at 3.

The Court previously ruled that while SSC must demonstrate direct infringement,

and in so doing, must identify a direct infringer, SSC does not need to demonstrate that EDD knew of that particular direct infringer.  "Inducement can be found where there is evidence of active steps taken to encourage direct infringement, which can in turn be found in advertising an infringing use or instructing how to engage in an infringing use." *Takeda Pharm. v. West-Ward Pharm.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015).  The case law does not require proof that the induced infringer knows of the direct infringement, or intends to induce a specific infringer.  *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) (finding that "*[l]iability* for either active inducement of infringement or contributory infringement is dependent upon the existence of direct infringement.")(emphasis added).

The case law provides that an individual can be liable for active inducement if they encourage direct infringement through an advertisement or instruction booklet. *Takeda*, 785 F.3d at 630-31.  These activities are directed at a general audience of people—buyers, sellers, and users of the product.  Thus, the inducer does not need to have the intent to induce a particular person or entity, but rather, can be liable for encouraging direct infringement to the wider public, or a class of people or entities.  *Id.*

At trial, SSC demonstrated that EDD knew its products would be used in televisions, and EDD knew that some of those televisions would likely be sold in the United States.  Tr. 937-939.  The Court finds that the jury's determination that EDD induced infringement in the United States is based on substantial evidence.

### D.  Damages

EDD moves for judgment as a matter of law under Rule 50(b), arguing that SSC presented no evidence supporting their damages request of $4,000,000 for the '554 patent. SSC's expert, Julie Davis, testified about the hypothetical negotiation between the parties for a license to the two patents.  EDD objected to Davis' testimony in a *Daubert* motion, which the Court rejected at that time.  Dkt. No. 281.  EDD then moved to exclude Davis' testimony based on infringement of "other Enplas lenses" that were not part of this case. The Court granted that request in part, but stated, "Consistent with this Court's prior rulings, Davis cannot assume that infringement can be proven for the lenses not in this

Case No. 13-cv-05038 NC           5

case. However, Davis may present evidence that under a lump-sum royalty negotiation, EDD would seek to cover all of its potentially infringing products. As long as Davis' ultimate damages determination is adequately adjusted to only recover for those lenses in the case, her testimony is permitted." Dkt. No. 384 at 3.

Davis testified that "if the license is limited only to the accused lenses, I think the reasonable royalty for the '554 patent is $500,000, and for the '209 patent $70,000." Tr. 722: 3-5. However, Davis also testified that if EDD wanted a freedom-to-operate license, which would be the most pragmatic, "they would be willing to pay $2 to 4 million in order to ensure that they'd never have to worry about testing these products and negotiating other licenses for those products in the future." Tr. 720: 22-25. EDD did not have a damages expert and did not present any evidence to rebut Davis' opinion. Thus, the Court finds that Davis' testimony complied with its prior orders and that substantial evidence supported the jury's award of $4 million for the '554 lens.

### E. Inequitable Conduct

EDD argues that the Court provided inadequate analysis in its ruling that EDD could not prove Dr. Pelka's inequitable conduct. The Court issued an order describing its findings of fact and conclusions of law. Dkt. No. 478. There, the Court found that EDD failed to present sufficient evidence to demonstrate inequitable conduct on both the materiality and intent elements. Both elements must be met by clear and convincing evidence in order to prove inequitable conduct and for the Court to award the extraordinary remedy of the unenforceability of the '209 patent. The Court is not persuaded by EDD's arguments that EDD should be entitled to new findings or a new hearing.

### F. Other Issues

EDD argues that the verdict form is inconsistent with controlling law because it did not provide a claim-by-claim finding for direct infringement. Dkt. No. 447. The Court finds this argument unpersuasive because the jury instructions require the jury to find both direct and induced infringement on each claim for each product. Dkt. No. 441 at 10-12.

Additionally, EDD argues that it was unfairly blocked from rebutting "other lenses"

evidence. The Court dealt with this issue extensively prior to the start of trial and made evidentiary rulings during trial to remain consistent with its rulings, while fairly giving each party an opportunity to present its narrative. Dkt. Nos. 280, 384, 388. The Court is not persuaded that its rulings deprived EDD of a fair trial.

### G. Rule 60 and 59(e) motion to amend the judgment

EDD moves for the Court to amend the judgment to cover the non-infringement of the '554 patent claims 2, 31, 36, and 37 by the #9854D, #9854E, and #9879 lenses, and the non-infringement of any claim of the '554 patent by the #9853A lens. Fed. R. Civ. P. 60. The Court omitted this part of the parties' stipulation because the Court was not involved in adjudicating these claims. SSC chose not to pursue some claims before trial, and the Court did not make any determinations as to the infringement of these claims. Thus, it would be inappropriate to include them in the judgment.

EDD also requests that this Court amend its judgment as to claim 2 of the '554 patent but provides no reasons why. The Court ruled that claim 2 was not invalid and finds no reason to disturb that ruling. Dkt. No. 467.

Finally, EDD requests that the Court amend the judgment to remove the statement that damages "are to be enhanced by an amount which will be determined upon the anticipated post-trial motions." Dkt. No. 484 at 31. The Court addresses willful infringement and the significance of the jury finding in the following sections.

## II. WILLFULNESS AND ENHANCED DAMAGES

SSC moves for a finding of willful infringement and enhanced damages. Section 284 of the Patent Act provides that, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.

Under prior Federal Circuit law, *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), the Court evaluated willful infringement under a two-part test: first, a jury decided whether the infringement was willful under a clear and convincing standard; second, the Court assessed the objective reasonableness of the infringement. Then, if the Court concluded that the infringement was willful, the Court weighed the *Read* factors to

Case No. 13-cv-05038 NC                    7

determine the amount of enhanced damages.

In *Halo Electronics v. Pulse Electronics*, 579 U.S. __ (2016), the Supreme Court rejected *Seagate*'s two-part test, finding it overly rigid. Instead, the Supreme Court emphasized that "Section 284 permits district courts to exercise their discretion in a manner free from the inelastic constraints of the *Seagate* test." *Id.* at 11. Awards of enhanced damages are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," such as behavior that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 8. Additionally, the Supreme Court held that the determination of enhanced damages should be made under a preponderance of evidence standard, not a clear and convincing one. *Id.* at 12.

This Court finds itself in the unique situation that a jury has already made a determination that SSC proved by clear and convincing evidence that EDD willfully infringed, or acted with reckless disregard to the likelihood of infringing SSC's patents. EDD challenges this finding, arguing that the change in law necessitates a new trial because the jury instructions were incorrect.

Thus, the Court addresses (1) the sufficiency of the jury instructions; (2) the Court's assessment of willful infringement; and (3) enhanced damages.

**A. Jury Instructions**

At trial, the Court gave the following jury instruction:

> In this case, SSC argues that EDD willfully infringed SSC's patents.
>
> To prove willful infringement, SSC must first persuade you that EDD induced infringement of a valid and enforceable claim of SSC's patent. The requirements for proving such infringement were discussed in my prior instructions.
>
> In addition, to prove willful infringement, SSC must persuade you that it is highly probable that EDD acted with reckless disregard of the claims of SSC's patents.
>
> To demonstrate such "reckless disregard," SSC must persuade you that EDD actually knew, or it was so obvious that EDD should have known, that its actions would result in the direct

Case No. 13-cv-05038 NC                8

> infringement of a valid patent.
>
> In deciding whether EDD acted with reckless disregard for SSC's patents, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.
>
> Factors that may be considered as evidence that EDD was not willful include whether EDD acted in a manner consistent with the standards of commerce for its industry."

Dkt. No. 441 at 12-13; Tr. 1287.

EDD argues that this instruction was improper and warrants a new trial for three main reasons. First, EDD argues that this instruction was improper because "the jury should be instructed to view EDD's subjective intent and knowledge at the time of the alleged infringement." Dkt. No. 529 at 7. Second, EDD argues that the Supreme Court rejected "reckless disregard" as a basis for willful conduct. *Id.* at 8. Third, EDD argues that it was prejudiced by the jury instruction because at trial, EDD emphasized the evidence about its state of mind, but it could have presented other relevant evidence that SSC reversed its position on whether the EDD lenses infringe. *Id.* The Court finds these arguments unpersuasive for three reasons.

First, *Halo* does not limit the Court to considering only willful infringement. Rather, "Section 284 allows district courts to punish the full range of culpable behavior." *Halo*, 579 U.S. __ at 11.

Second, in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007), the Supreme Court considered whether "willful" liability includes "reckless disregard." There, the Court stated, "This construction reflects common law usage, which treated actions in 'reckless disregard' of the law as 'willful' violations." *Id.* at 57. Further, in *Halo*, the Supreme Court cited *Safeco* and noted that "a person is reckless if he acts '*knowing* or *having reason to know* of facts which would lead a reasonable man to realize' his actions are unreasonably risky." *Halo*, 579 U.S. ___ at 11 (quoting *Safeco*, 551 U.S. at 69).

Third, the jury made a finding of willful infringement by the higher clear and convincing standard. *Halo* reduced the burden of proof in determining enhanced damages to preponderance of the evidence. *Halo*, 579 U.S. ___ at 12-13. Thus, the jury in this case

Case No. 13-cv-05038 NC           9

determined that SSC demonstrated that it was highly probable that EDD actually knew, or it was so obvious that EDD should have known, that its actions would result in the direct infringement of a valid patent.

In conclusion, the Court finds that the instruction given at trial is in line with the law as it stands today, post-*Halo*, so a new trial is not warranted. Fed. R. Civ. P. 59(a).

### B. Willful Infringement

The Court approaches the jury finding as an advisory finding. See Fed. R. Civ. P. 39(c) ("In an action not triable of right by a jury, the court, on motion or on its own: may try any issue with an advisory jury"). When a jury makes an advisory finding, the Court is free to accept or reject that finding. *Huser v. Santa Fe Pomeroy, Inc.*, 513 F.2d 1298, 1299 (9th Cir. 1975).

The following facts are relevant:

1. EDD is a lens manufacturer and creates highly precise and technical design specifications for each lens that it manufactures.
2. EDD manufactures lenses for customers based on the customer's requests and needs. Tr. 859.
3. EDD's design specifications and business model of testing and re-designing are intended to perfect the coupling of mass produced lenses with their intended purpose. Tr. 977; 1192.
4. In order to create a lens for a particular customer, EDD needs to know the composition of various surfaces and the ultimate use of the product. PX 126.
5. EDD's lenses are used for backlighting display devices, including LCD televisions. Tr. 798-799; 932.
6. In September 2010, SSC and Enplas Corporation met about creating a lens to use with SSC's light bars for use in an LCD television. DTX 1016.
7. In the course of that relationship, SSC informed Enplas Corporation of the '554 patent. Tr. 429.
8. EDD did not present any evidence that it tested its lenses for TIR or seek the

Case No. 13-cv-05038 NC          10

1      opinion of counsel on the patents. Tr. 432-433.
2   9. Mr. Yamaguchi testified that he intended to create diffusion lenses and does not
3      believe that his lenses exhibit TIR. Tr. 823.
4   10. TIR was found in the lenses by both experts, in varying degrees. DTX 1045;
5      DTX 1055; DTX 1078; Tr. 1159.
6   11. The patents-in-suit aim to solve the problem of uniform LCD backlighting for
7      large screens.
8   12. EDD supplied SSC with lenses for LCD screens. Tr. 391.
9   13. EDD supplied SSC's competitors and others in the same market with lenses.
10  14. In October 2013, SSC sent a cease and desist letter to EDD, notifying EDD of
11     the patents and SSC's belief that EDD was infringing the patents. PX 142.
12  15. EDD did not discuss licensing or a royalty with SSC. Tr. 417.
13  16. EDD did not seek the opinion of counsel. Tr. 432-433.
14  17. EDD did not stop producing the accused products. Tr. 391-393.
15  18. EDD filed suit in district court.
16  19. One week after receiving the cease and desist letter, EDD stopped supplying
17     lenses to SSC. Tr. 391-392.
18  20. A few months later, EDD began re-supplying SSC at twice the price. Tr. 393.

EDD argues that it had a good faith belief of its non-infringement of the patents and in the invalidity of the patents. However, EDD did not present any evidence at trial to demonstrate that it designed around the patents or that it believed the patents were invalid.

It is rare for a witness to testify to his intentional misconduct, as EDD itself recognized in its own inequitable conduct argument. Instead, the Court and the fact finder must infer intent from the evidence presented. Here, the Court infers from the facts presented that it is more likely than not that EDD knew of the patents, used the technology disclosed in the patents, and acted with reckless disregard to the likelihood that EDD was infringing the patents.

In conclusion, the Court finds that the jury instruction on willful infringement was

Case No. 13-cv-05038 NC                11

1  not improper and DENIES EDD's request for a new trial on that basis. The Court adopts
2  the advisory jury opinion and concludes that SSC has demonstrated by a preponderance of
3  evidence that EDD willfully infringed the patents. Next, the Court addresses whether and
4  by how much to enhance the damages in this case.

### C. Enhanced Damages

"[A] finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages." *Read Corp. v. Portec, Inc.*, 970 F.3d 816, 826 (Fed. Cir. 1992). In assessing whether and by how much to enhance damages, the Court has discretion to consider a variety of factors. While doing away with the *Seagate* test in *Halo*, the Supreme Court did not clearly articulate the appropriate standard to follow, except for advocating a trial judge's discretion. However, "in a system of laws discretion is rarely without limits." *Flight Attendants v. Zipes*, 491 U.S. 754, 758 (1989). The parties advocate for various sources of guidance for the Court to follow in considering whether enhanced damages are appropriate.[1]

Both parties agree that that *Read* factors should still be used by the Court to assess the amount of enhanced damages. "Although a finding of willfulness is a prerequisite for enhancing damages under § 284, the standard for deciding whether—and by how much— to enhance damages is set forth in *Read*, not *Seagate*." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010). The Court agrees that the *Read* factors offer a guidepost for enhanced damages.

The *Read* factors are: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) closeness of the case; (6) duration of the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation

---

[1] The Court has considered supplemental authority submitted by both parties. Dkt. Nos. 538, 541, 544, 545, 546.

Case No. 13-cv-05038 NC        12

1   for harm.  *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006);

2   *Read Corp. v. Portec, Inc*., 970 F.3d 816, 826-27 (Fed. Cir. 1992).  The Court agrees with

3   Judge Saris that, "[w]hile the *Read* factors remain helpful to this Court's analysis, the

4   touchstone for awarding enhanced damages after *Halo* is egregiousness."  *Trustees of*

5   *Boston University v. Everlight Electronics Co., Ltd.*, Case No. 12-cv-12326 PBS, 2016 WL

6   3976617, at * 2 (D. Mass. July 22, 2016).

7         Under SSC's version of the facts, SSC and EDD worked together to form an

8   improved lens that would give the companies together a competitive advantage, by

9   combining SSC's patents with EDD's technical capabilities.  EDD then took the

10  competitive advantage offered by the protection of SSC's patents, used it to its own

11  advantage, refused to license with SSC or abide by any exclusive agreement, and then

12  charged SSC more for products infringing on SSC's own patents.  SSC made EDD aware

13  of its patents several times and offered to license the patents, or enter into an exclusive

14  supplier agreement, on multiple occasions.  Following this interpretation, EDD's actions

15  are egregious and in great disregard for the legal protections that a patent offers.  This

16  interpretation of the facts would lead the Court to enhance damages to the full extent,

17  finding that such conduct is akin to a "pirate."

18        Under EDD's version of the facts, EDD filled SSC's orders and requests for lenses

19  as it would any other customer.  EDD intended to and believed it had produced lenses that

20  were based on the principle of refraction and were thus distinctly different from the TIR

21  lenses in SSC's patents.  EDD considered the value of SSC's patents, but assessed that

22  those patents were not relevant to EDD's lenses, or that the patents may be invalid.  When

23  SSC threatened EDD's business with a lawsuit, EDD followed common business sense by

24  filing suit and discontinuing supply to its adversary.  This interpretation of the facts would

25  lead the Court to find that even though the infringement was done with reckless disregard,

26  EDD's subsequent actions are no different than any business might react.

27        The Court finds that the egregiousness of EDD's conduct falls somewhere in

28  between these two versions.  There is no doubt that EDD knew that SSC had these patents

and that SSC intended to use the technology in the patents to optimize the pairing of EDD's lenses with SSC's LEDs for LCD screens. There is also no doubt that SSC was willing to license the patents or enter into an exclusive distribution agreement with EDD. Instead of following either approach, EDD filed suit. To be clear, the Court will not penalize EDD for asserting its legal rights to declaratory judgment of non-infringement and a determination of the validity of the patents. However, there is little evidence in the record that EDD made any good faith efforts to license the product, to investigate the likelihood of its own infringement, or to discontinue production of the offending lenses.

On the other hand, the case was hard fought and a close call. Significantly, EDD survived a motion to dismiss and a motion for summary judgment on inequitable conduct, which would have rendered the '209 patent unenforceable. As to the '554 patent, EDD advanced several theories of invalidity, all of which appeared to be reasonable at trial. In addition, SSC dropped a number of claims and products from the case along the way, concluding either that there was no TIR in those products, or that the arguments were not strong enough to pursue at trial.

Finally, "[i]n the totality of facts and circumstances, the Court may consider the size of the damages award upon ruling of enhancement." *Informatica Corp. v. Business Objects Data Integration, Inc.*, 489 F. Supp. 2d 1075, 1085 (N.D. Cal. 2007) (citing *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1314 (Fed. Cir. 2002)).

The Court finds that on balance, enhanced damages are not warranted because this case does not present clear evidence of EDD's egregious conduct and because in totality, SSC recovered for the full range of EDD's culpable conduct. SSC's expert, Julie Davis, testified that a license limited only to the accused lenses would be $500,000 for the '554 patent and $70,000 for the '209 patent. Tr. 722: 3-5. However, Davis also testified that if EDD wanted a freedom-to-operate license, which would be the most pragmatic, "they would be willing to pay $2-4 million in order to ensure that they'd never have to worry about testing these products and negotiating other licenses for those products in the future." Tr. 720: 22-25. The jury awarded the maximum amount that Davis testified to

Case No. 13-cv-05038 NC         14

and that SSC sought.  SSC has recovered the full value of its requested relief.

### D. Conclusion

The Court finds that, considering the totality of the circumstances, although EDD willfully infringed the patents, this case does not merit enhanced damages. *See Informatica Corporation v. Business Objects Data Integration, Inc.*, 527 F. Supp. 2d 1076, 1083 (N.D. Cal. 2007); *Funai Elec. Co. Ltd. v. Daewoo Electronics Corp.*, 593 F. Supp. 2d 1088 (2009) (finding willful infringement but declining to enhance damages).

## III. ATTORNEYS' FEES

SSC moves for $6,838,985.56 in attorneys' fees, arguing that this is an exceptional case. Title 35 U.S.C. § 285 provides that "the court in exceptional cases may award reasonable attorneys' fees to the prevailing party." The Supreme Court has defined exceptional as "uncommon, rare, or not ordinary." *Octane Fitness, LLC v. ICONHealth & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* In addition, the Court can consider factors such as frivolousness, motivation, objective unreasonableness, and the need to advance considerations of compensation and deterrence. *Id.* at 1756 n.6.

For the same reasons as stated above in the enhanced damages conclusion, the Court finds that this is not an exceptional case. EDD did not adopt an objectively unreasonable litigation position. SSC dropped a number of claims throughout the litigation, some of which resulted in judgment of non-infringement in favor of EDD. EDD advanced reasonable claims of invalidity and presented them at trial.

Attorneys' fees are not awarded simply because one party wins at trial. The only misconduct that SSC points to is EDD's alleged misrepresentation that it would be burdensome to produce information on its other similar lenses. However, the Court excluded those lenses on the basis that SSC's request for the information came too late. Dkt. No. 90. The Court concludes that this case is not exceptional, so attorneys' fees are

Case No. 13-cv-05038 NC              15

not appropriate. *See Aylus Networks, Inc. v. Apple Inc.*, Case No. 13-cv-04700 EMC, 2016 WL 1243454, at *7 (N.D. Cal. Mar. 30, 2016) (finding the case is not exceptional and denying attorneys' fees); *Site Update Solutions, LLC v. Accor North America, Inc.*, Case No. 11-cv-3306 PSG, 2015 WL 581175 (N.D. Cal. Feb. 11, 2015) (finding the case not exceptional) *aff'd*, *Site Update Sols., LLC v. CBS Corp.*, 639 F. App'x 634, 636 (Fed. Cir. 2016).

## IV. CONCLUSION

In conclusion, the Court finds that no further relief is appropriate. The court DENIES EDD's post-trial motions. The Court also DENIES SSC's motions to enhance damages or award attorneys' fees. The Court will amend the judgment to reflect that the Court has found willfulness but that no further damages or fees will be awarded.

**IT IS SO ORDERED.**

Dated: August 10, 2016      

NATHANAEL M. COUSINS
United States Magistrate Judge